# EXHIBIT A

Ian S. Landsberg, Esq. (SBN: 137431)
**LANDSBERG & ASSOCIATES**
**A Professional Law Corporation**
5950 Canoga Avenue, Suite 605
Woodland Hills, CA. 91367
Telephone: (818) 855-5900
Facsimile: (818) 855-5910
Email: ilandsberg@landsberg-law.com

Attorneys for Debtor and Debtor in Possession

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:12-bk-10986-AA |
| | Chapter 11 |
| ALLANA BARONI, | **SECOND AMENDED DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION FOR ALLANA BARONI** |
| Debtor and Debtor in Possession. | |
| | Date:  April 3, 2013 |
| | Time:  10:00 a.m. |
| | Ctrm: "303" |

# Table of Contents

I.      Introduction ………………………………………………………………………….      2

II.     General Disclaimer and Voting Procedure ………………………………………………      2

III.    Who May Object to Confirmation of the Plan ……………………………………………      3

IV.     Who May Vote to Accept or Reject the Plan ……………………………………………..      4

V.      Votes Necessary to Confirm the Plan ……………………………………………………      6

VI.     Information Regarding Voting in This Case ……………………………………………...      6

VII.    Description of Debtor's Past and Future Business and Events Precipitating Bankruptcy

        Filing …………………………………………………………………………………...      7

VIII.   Pre-Confirmation Requirements of Debtor …………………………………………………      11

IX.     Critical Plan Provisions ………………………………………………………………..      11

X.      Description of Treatment of Claims ………………………………………………………      12

        a.   Overview of Plan Payments ……………………………………………………      12

        b.   Wholly and Partially Unsecured Liens to be Stripped from Rental Properties …..      15

        c.   Disputed Claims Reserve …………………………………………………………      17

        d.   Administrative Expenses …………………………………………………………      18

             Administrative Expense #1……………………………………………………….      19

             Administrative Expense #2………………………………………………………...      19

             Administrative Expense #3………………………………………………………...      19

             Administrative Expense #4………………………………………………………...      19

             Administrative Expense #5………………………………………………………...      19

        e.   Unsecured Tax Claims …………………………………………………………      20

        Tax Claim #1…………………………………………………………………………      20

        f.   Class One ………………………………………………………………………..      20

        g.   Class Two ………………………………………………………………………...      21

        h.   Class Three ………………………………………………………………………      21

        i.   Class Four ………………………………………………………………………..      22

        j.   Class Five…………………………………………………………………………      24

k. Class Six …………………………………………………………… 26

l. Class Seven…………………………………………………………. 28

m. Class Eight …………………………………………………………… 30

n. Class Nine …………………………………………………………… 31

XI.    Source of Money to Pay Claims …………………………………………… 32

XII.    Financial Records to Assist in Determining Whether Proposed Payment is Feasible …… 33

XIII.    Assessts and Liabilities of the Estate …………………………………………... 33

a. Assets ………………………………………………………………... 33

b. Liabilities ……………………………………………………………. 33

c. Summary ……………………………………………………………. 33

XIV.    Treatment of Nonconsenting Classes ……………………………………… 34

XV.    Treatment of Nonconsenting Members of Consenting Class (Chapter 7 Liquidation
Analysis) ………………………………………………………………… 35

XVI.    Future Debtor ……………………………………………………………… 36

a. Management of Debtor ……………………………………………... 36

b. Disbursing Agent …………………………………………………… 36

c. Future Financial Outlook …………………………………………… 36

XVII.    Sale or Transfer of Property; Assumption of Contracts and Leases; Other Provisions ….. 38

XVIII.    Bankruptcy Proceedings ………………………………………………… 38

XVIX.    Tax Consequences of Plan ……………………………………………… 39

XX.    Effect of Confirmation of Plan ………………………………………… 39

a. General Comments ………………………………………………… 39

b. Discharge of liability for payment of debts; status of liens; equity security
holders ……………………………………………………………… 40

c. Modification of the Plan …………………………………………… 41

d. Post-Confirmation Causes of Action ……………………………... 41

e. Final Decree ………………………………………………………… 41

XXI.    Declaration in Support of Disclosure Statement and Plan ………………………… 42

# I.    INTRODUCTION

On February 1, 2012, Allana Baroni, debtor and debtor in possession ("Debtor") filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code ("Code").  On February 29, 2012, the case was converted to Chapter 11.  The document you are reading is <u>both</u> the Plan of Reorganization ("Plan") and the Disclosure Statement. Debtor ("Proponent") has proposed the Plan to treat the claims of the Debtor's creditors and, if applicable, the interests of shareholders or partners and to reorganize the Debtor's business affairs.  A disclosure statement describes the assumptions that underlie the Plan and how the Plan will be executed.  The Bankruptcy Court ("Court") has approved the form of this document as an adequate disclosure statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  The Court has not yet confirmed the Plan, which means the terms of the Plan are not now binding on anyone.

The Proponent has reserved April 3, 2013 at 10:00 a.m. in Courtroom 1375 for a hearing to determine whether the Court will confirm the Plan.

Any interested party desiring further information should contact: Ian S. Landsberg at Landsberg & Associates, A Professional Law Corporation, 5950 Canoga Avenue, Suite 605, Woodland Hills, California 91367.(818) 855-5900.


# II.    GENERAL DISCLAIMER AND VOTING PROCEDURE

PLEASE READ THIS DOCUMENT, INCLUDING THE ATTACHED EXHIBITS, CAREFULLY. IT EXPLAINS WHO MAY OBJECT TO CONFIRMATION OF THE PLAN.  IT EXPLAINS WHO IS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.  IT ALSO TELLS ALL CREDITORS AND ANY SHAREHOLDERS OR PARTNERS WHAT

2    Case No.  1:12-bk-10986-AA

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

Case 1:12-bk-10986-MB    Doc 381    Filed 03/20/17    Entered 03/20/17 19:30:45    Desc
Exhibit A    Doc 376 Second Amended Disclosure Statement and Plan of Reorganization    Page 6 of 45
Main Document    Page 5 of 44    Page 6 of 45

TREATMENT THEY CAN EXPECT TO RECEIVE UNDER THE PLAN, SHOULD THE PLAN

BE CONFIRMED BY THE COURT.

THE SOURCES OF FINANCIAL DATA RELIED UPON IN FORMULATING THIS

DOCUMENT ARE SET FORTH IN THE DECLARATION IN SECTION XXI BELOW.  ALL

REPRESENTATIONS ARE TRUE TO THE PROPONENT'S BEST KNOWLEDGE.


NO REPRESENTATIONS CONCERNING THE DEBTOR THAT ARE INCONSISTENT WITH

ANYTHING CONTAINED HEREIN ARE AUTHORIZED EXCEPT TO THE EXTENT, IF AT

ALL, THAT THE COURT ORDERS OTHERWISE.

After carefully reviewing this document and the attached exhibits, please vote on the

enclosed ballot and return it in the enclosed envelope.

The Proponent has reserved a hearing date for a hearing to determine whether the Court will

confirm the Plan.  Please refer to Section I above for the specific hearing date.  If, after receiving

the ballots, it appears that the Proponent has the requisite number of votes required by the Code,

the Proponent will file a motion for an order confirming the Plan.

The Motion shall at least be served on all impaired creditors and partners or shareholders

who reject the Plan and on the Office of the United States Trustee.  Any opposition to the Motion

shall be filed and served on the Proponent no later than fourteen days prior to the hearing date.

Failure to oppose the confirmation of the Plan may be deemed consent to the Plan's confirmation.


**III.    WHO MAY OBJECT TO CONFIRMATION OF THE PLAN**

Any party in interest may object to confirmation of the Plan, but as explained below not

everyone is entitled to vote to accept or reject the Plan.

Case 1:12-bk-10986-MB   Doc 361   Filed 03/05/13   Entered 03/05/13 19:30:45   Desc
Exhibit A    Doc 376 Second Amended Disclosure Statement and Plan of Reorganization    Page 7 of 45

Main Document    Page 7 of 44

## IV.    WHO MAY VOTE TO ACCEPT OR REJECT THE PLAN

It requires both an allowed and impaired claim or interest in order to vote either to accept or reject the Plan.  A claim is defined by the Code to include a right to payment from the Debtor. An interest represents an ownership stake in the Debtor.

In order to vote a creditor or interest-holder must first have an <u>allowed claim or interest</u>. With the exceptions explained below, a claim is allowed if proof of the claim or interest is properly filed before any bar date and no party in interest has objected, or if the court has entered an order allowing the claim or interest.  Please refer to Section VI below for specific information regarding bar dates in this case.

Under certain circumstances a creditor may have an allowed claim even if a proof of claim was not filed and the bar date for filing a proof of claim has passed.  A claim is deemed allowed if the claim is listed on the Debtor's schedules and is not scheduled as disputed, contingent, or unliquidated.  **Exhibit "1"** contains a list of claims that are not scheduled as disputed, contingent, or unliquidated.

Similarly, an interest is deemed allowed if it is shown on the list of equity security holders filed by the Debtor with the court and is not scheduled as disputed.

In order to vote, an allowed claim or interest must also be impaired by the Plan.

<u>Impaired creditors</u> include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the creditor.  A contract provision that entitles a creditor to accelerated payment upon default does not, however, necessarily render the claimant impaired, even if the Debtor defaulted and the Plan does not provide the creditor with accelerated payment.  The creditor is deemed unimpaired so long as the Plan cures the default, reinstates the

4                        Case No. 1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

maturity of such claim as it existed before default, compensates for any damages incurred as a result of reasonable reliance upon the acceleration clause, and (except for a default arising from failure to operate a nonresidential lease subject to 11 U.S.C.A. § 365 (b)(1)(A) (West Supp. 2006)) compensates for any actual pecuniary loss incurred as a result of any failure to perform a non-monetary obligation.

Impaired interest-holders include those whose legal, equitable, and contractual rights are altered by the Plan, even if the alteration is beneficial to the interest holder.

There are also some types of claims that the Code requires be treated a certain way. For that reason they are considered unimpaired and therefore holders of these claims cannot vote.

To summarize, there are two prerequisites to voting: a claim or interest must be both allowed and impaired under the Plan.

If a creditor or interest-holder has an allowed and impaired claim or interest, then he or she may vote either to accept or reject the Plan (unimpaired claimants or interest-holders are deemed to have accepted the Plan). Impaired claims or interests are placed in classes and it is the class that must accept the Plan. Members of unimpaired classes do not vote, although as stated above, they may object to confirmation of the Plan. Even if all classes do not vote in favor of the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code. Please refer to Section VI below for information regarding impaired and unimpaired classes in this case.

Section IX sets forth which claims are in which class. Secured claims are placed in separate classes from unsecured claims. Fed. R. Bankr. P. 3018(d) provides: "A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim shall be entitled to accept or reject a plan in both capacities."

## V.      VOTES NECESSARY TO CONFIRM THE PLAN

The Court may confirm the Plan if at least one noninsider impaired class of claims has

accepted and certain statutory requirements are met as to both nonconsenting members within a

consenting class and as to dissenting classes.  A class of claims has accepted the Plan when more

than one-half in number and at least two-thirds in amount of the allowed claims actually voting,

vote in favor of the Plan.  A class of interests has accepted the Plan when at least two-thirds in

amount of the allowed interests of such class actually voting have accepted it.  It is important to

remember that even if the requisite number of votes to confirm the Plan are obtained, the Plan will

not bind the parties unless and until the Court makes an independent determination that

confirmation is appropriate.  That is the subject of any upcoming confirmation hearing.

## VI.     INFORMATION REGARDING VOTING IN THIS CASE

The bar date for filing a proof of claim in this case was September 17, 2012.

The bar date for objecting to claims has not yet been set by the Court.

In this case the Proponent believes that classes one through nine are impaired and therefore

entitled to vote.  There are no unimpaired who are not entitled to vote.  A party that disputes the

Proponent's characterization of its claim or interest as unimpaired may request a finding of

impairment from the Court in order to obtain the right to vote.

Ballots must be received by the Proponent, addressed to Summer Saad, Landsberg &

Associates, A Professional Law Corporation, 5950 Canoga Avenue, Suite 605, Woodland Hills,

California by February 6, 2013 by 5:00 p.m.

//

---

6                              Case No.  1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

**VII.   DESCRIPTION OF DEBTOR'S PAST AND FUTURE BUSINESS AND EVENTS PRECIPITATING BANKRUPTCY FILING**

The Debtor is an individual. The Debtor is not a small business debtor as defined in 11 U.S.C.A. § 101(51D) (West Supp. 2006).

Debtor conducts 100% of her business activity in the state of California.  Although, Debtor's business includes much travel to locations outside the state of California.

What follows is a brief summary of the dates and circumstances that led Debtor to file bankruptcy.

Debtor has three rental properties.  Due to the economic downturn, she has been forced to lower the rent due from tenants in each of the rentals in order to keep each property occupied.  For example, Debtor's rental property in Carmel, California initially rented for $4,500 per month but had to be reduced to as low as $2,800.  This was insufficient to cover the mortgage on the property.  Also, Debtor's rental property in Henderson, Nevada used to rent for $3,500 per month but now only rents for $2,000 per month. It is insufficient to cover the mortgage.  Finally, Debtor's rental property in Camarillo, California used to rent for $5,400 per month but now only rents for $4,500 per month.  The rental income cannot service the debt.  Pre-petition, Debtor received communications from parties purporting to be able to restructure the debt on each property and Debtor engaged in discussions in hopes of obtaining a restructure that could turn the properties around such that they could service the debt and pay the HOA, taxes, insurance and other maintenance expenses.  However, Debtor encountered problems reaching the entity that had the authority to restructure the debt.  In attempting to reach that entity, Debtor discovered that much trouble existed with respect to the mortgages. Debtor has since hired special litigation counsel whose investigation reveals that the alleged lenders utilized the then prevailing technique of loan

Case 1:12-bk-10986-MB    Doc 361    Filed 03/20/13    Entered 03/20/13 19:36:25    Desc
Exhibit A    Doc 376 Second Amended Disclosure Statement and Plan of Reorganization    Page 11 of 45

Case 1:12-bk-10986-MB    Doc 361    Filed 03/20/13    Entered 03/20/13 19:36:25    Desc
Main Document    Page 10 of 44

securitization and are not the persons entitled to enforce the claims. With just a cursory review, and consistent with industry practice, the alleged creditor banks have failed to disclose payments made as a result of the debt and further failed to disclose that they have pledged the same first position debt into multiple income streams fabricating notes and conveying them into numerous domestic and offshore failed trusts. By the alleged lenders conduct they have violated numerous state and federal statutory provisions and by then attempting to enforce these improper claims the bank (creditors) have breached their common law duties to Debtor. The potential causes of action arising from such facts are identified on **Exhibit 2** and may result in a setoff of various secured claims as described below. Debtor will seek to achieve through this Chapter 11 Plan what she attempted pre-petition -- to restructure secured debt on rental properties so that the rental income can service the debt and cover HOA dues, property taxes, insurance and other maintenance expenses. The Plan will also create reserve accounts where appropriate to ensure plan payments are not disbursed to the wrong party and will hold plan payments in trust for the allowed claim holder as described below.

After discovering the problems with her rental properties, Debtor began an investigation into whether payments on her home mortgage were being directed to the appropriate claimant. She engaged in multiple discussions with One West Bank, the most-recent entity to assert that it was the first trust deed holder. However, this created much confusion. For example, the One West Bank indicated that it was attempting to collect on a 30 year fixed rate note but Debtor had executed a 40 adjustable rate year note. Needless to say, Debtor was extremely troubled by this. One West Bank agreed that an investigation was appropriate and that during the investigation, Debtor would set aside mortgage payments instead of making them to One West and that during such period, no late fees would be assessed and no negative reporting to credit agencies would be

made.  However, One West breached that agreement and initiated foreclosure proceedings.  Debtor was forced to file for relief under the bankruptcy code to avoid the foreclosure.  Debtor is now presenting a Chapter 11 Plan of Reorganization which restructures debt on the rental properties and creates protections against paying the wrong party on the wrong note, while preserving all claims and rights to setoffs that may exist, which special counsel is pursuing.

What follows is a <u>brief</u> description of the Debtor's business and future business plans.  Further details relating to the Debtor's financial condition and post-confirmation operation of the Debtor are found in sections X, XI, XII, XVI, and XV.

Debtor has three sources of income.  The first is the compensation she earns from her personal services.  She performs such services by and through an entity wholly owned by Debtor and her spouse, Baroni Enterprises, LLC.  Debtor's average monthly income received from Baroni Enterprises is $5,884.55.  The second source of income is the regular contribution to household expenses from her spouse who also receives compensation for personal services performed by and through Baroni Enterprises. The average monthly income of Debtor's spouse received from Baroni Enterprises is $16,686.  Collectively, Debtor and Debtor's spouse will continue to perform such personal services and expect to earn the same collective average monthly income post-petition.

More specifically, and as disclosed in Debtor's Amended Schdule I, Debtor and her spouse earn income as follows:  Baroni Enterprises, LLC is a personal services corporation, which generates revenue solely from the personal services performed by Debtor and her spouse.   As such, it would have no value, if sold.  Debtor and her spouse perform personal services through Baroni Enterprises, LLC and receive from Baroni Enterprises, LLC the average monthly income reflected in Amended Schedule I, specifically, Debtor receives $5,884.55 for her personal services rendered as an author and spokeswoman; and Debtor's spouse receives an average of $16,686 per month for

his personal services rendered as a business aviation consultant.  These figures are disclosed in line

7  of Schedule I "Regular Income from operation of business or profession or farm."  Debtor and

her spouse also receive "Income from real property" in the amount of $9,800, which is also

disclosed in Amended Schedule I, line 8 (appearing in the right column).  This income is not

generated from Baroni Enterprises, LLC,  but instead is the rental income Debtor and her spouse

receive from the rental properties described below.   The total combined average monthly income

on line 16 of Amended Schedule I is "$32,370.55 (e.g., the sum of (1) Debtor's monthly income for

personal services rendered through Baroni Enterprises, LLC - $5,884.55;  (2) Debtor's spouse's

average monthly income received for personal services rendered through Baroni Enterprises, LLC -

$16,686; and (3) the monthly rental income Debtor and her spouse receive from the rental

properties described in this Disclosure Statement - $9,800).

      The rental income is derived  from 4 rental properties she owns, each of which is listed

below:

Carmel Rental:

1. Single family residence located at 3435 Rio Road, Carmel, California

2. 3700 square feet

3. 100% Occupancy Rate

4. Debtor will continue to lease this property.

Henderson Rental:

1. Condominium located at 2240 Village Walk Drive, Unit 2311, Henderson, Nevada

2. 1800 square feet

3. 100% Occupancy Rate

4. Debtor will continue to lease this property.

Camarillo Rental:

1. Single family residence located at 5390 Plata Rosa Court, Camrillo, California

2. 4834 square feet

3. 100% Occupancy Rate

4. Debtor will continue to lease this property.


**VIII.   PRE-CONFIRMATION REQUIREMENTS OF DEBTOR**

Debtor has provided her most recently filed tax documents with the Office of the United States Trustee.  Debtor does not have any domestic support obligations that she is required to pay or that have become payable post-petition.


**IX.   CRITICAL PLAN PROVISIONS**

Listed below are the sources of money earmarked to pay creditors.

a.  All or such portion of earnings from personal services performed by the Debtor after the commencement of the case or other future income of the Debtor as is necessary for the execution of the Plan.

b.  Income received from Debtor's rental properties.

c.  A portion of cash on hand on the Effective Date.


Most likely, general unsecured creditors can expect payment on:

a. the first business day of the sixth full month following the Effective Date

b. in the amount of $5,000

c. and continuing every six months for five years.

Debtor will make distributions every six months instead of monthly for two reasons: (1) to allow sufficient cash on hand to pay administrative claims in the first month of the plan; and (2) for the

administrative convenience of disbursing funds to classes containing numerous creditors in larger installment payments twice per year instead of smaller payments each month.

## X.    DESCRIPTON OF TREATMENT OF CLAIMS

a.    Overview of Plan Payments

Below is a summary of who gets paid what and when and from what source.  The identity of members within a particular class is explained beginning on the next page.  The second column lists two amounts.  First, the amount of each payment, or if only one is to be made, then that amount; second, the total amount that will be paid.  The Proponent is usually not required by law to pay an unsecured creditor or interest holder everything it would otherwise be entitled to, had a bankruptcy case not commenced.  The "Payment Due Date" column states the frequency with which payments will be made and the starting and ending dates.  Look at the starting date to figure out who will be paid before and after you and in what amount.  The "Source of Payment" column describes the expected source of payment.  Further details regarding the source of payment are found in sections XI and XII.

The timing of payments to many creditors is determined by the "Effective Date."  Administrative claims, unless otherwise stated, must be paid by the Effective Date.  The timing of payments to impaired creditors is measured from the Effective Date.  In this case, the Effective Date is May 1, 2013.

| Payment Recipient | Amount of each Payment | Payment Due Date | Source of Payment |
|---|---|---|---|
| | Total Claim | | |
| Landsberg & | $75,000 (estimated to | Effective Date | Cash on Hand on the |

| Associates, A Professional Law Corporation (general bankruptcy counsel) | be due on the Effective Date, could be more or less) | | Effective Date |
|---|---|---|---|
| Michael S. Riley (special counsel) | $75,000 (estimated to be due on the Effective Date, could be more or less) | Effective Date | Cash on Hand on the Effective Date |
| Law Offices of Linda M. Blank (prior general bankruptcy counsel) | $0 (estimated to be due on the Effective Date) | Effective Date | Cash on Hand on the Effective Date but if any unresolved issues exist on the Effective Date respecting allowance or disgorgement of fees, amounts will be held in an account for disputed administrative claims |
| Goodman Faith, LLP (prior general bankruptcy counsel) | $0 (estimated to be due on the Effective Date) | Effective Date | Cash on Hand on the Effective Date but if any unresolved issues exist on the Effective Date respecting allowance or disgorgement of fees, amounts will be held in an account for disputed administrative claims |
| Office of the United States Trustee | $ 975.00 (quarterly fees) | Effective Date | Cash on Hand on the Effective Date |
| Class One – Secured Claim of Ventura County | $1,627.01 $4,881.02 | 1st business day of the sixth full month following the Effective Date | Post-confirmation Income |
| Class Two – Secured Claim of Condos at the District HOA | $1,000 on Effective date, followed by monthly installments in the amount of | The Effective date, followed by monthly installments commencing the first | Cash on Hand on the Effective Date; and Post-confirmation Income |

13

| | | | |
|---|---|---|---|
| | $202.71<br><br>$6,899.15 | business day of the 2nd full month following the Effective Date | |
| Class Three -- Secured Claim of The District at Green Valley Ranch | $500 on Effective date, followed by monthly installments in the amount of $117.07<br><br>$1,886.05 | The Effective date, followed by monthly installments commencing the first business day of the 2nd full month following the Effective Date | Cash on Hand on the Effective Date; and Post-confirmation Income |
| Class Four – Secured Claim of 1st Trust Deed Holder secured by Debtor's Residence | $7,562.09<br><br>$1,860,964 (subject to dispute and setoff) | 1st business day day of the first full month following the Effective Date | Post-confirmation Income |
| Class Five – Secured Claim of 1st Trust Deed Holder secured by Henderson Rental Property | $880.13<br><br>$196,000 (subject to dispute and setoff) | 1st business day of the first full month following the Effective Date | Post-confirmation Income |
| Class Six – Secured Claim of 1st Trust Deed Holder secured by Carmel Rental Property<br><br>///<br><br>/// | $4,083.33for first 5 years, then $4,583.33 for the following 3 years; then $5,423.47for remaining term<br><br>$1,400,000 (subject to dispute and setoff) | 1st business day of the first full month following the Effective Date | Post-confirmation Income |
| Class Seven -- Secured Claim of 1st Trust Deed Holder secured by Camarillo Rental Property | $3,339.58for first 5 years, then $3,839.58for next 3 years; then $4,435.63for remaining term)<br><br>$1,145,000 (subject to | 1st business day of the first full month following the Effective Date | Post-confirmation Income |

14

Case No. 1:12-bk-10986-AA

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

| | dispute and setoff) | | |
|---|---|---|---|
| Class Eight – Undisputed General Unsecured Claims | Pro-rata share of a total of $50,000 distributed to Classes 8 and 9 in $5,000 installments every six months<br><br>$27,000 | 1st business day of the 6th full month following the Effective Date | Post-confirmation Income |
| Class Nine – Disputed General Unsecured Claims | Pro-rata share of a total of $50,000 distributed to Classes 8 and 9 in $5,000 installments every six months<br><br>$1,078,275.30 (subject to dispute and setoff)(all but $135,395.60 subject to 1111(b)(Election) | 1st business day of the 6th full month following the Effective Date | Post-confirmation Income |

     b.    <u>Wholly and Partially Unsecured Liens to be Stripped from Rental Properties</u>

     The current fair market value of each of Debtor's rental properties are exceeded by the claims of trust deed holders.  Appraisals establishing the value of each rental property are attached hereto as **Exhibits 4, 5, and 6**.  The claim of the second trust deed holder secured by the Henderson Property is wholly unsecured and will therefore be avoided upon plan confirmation and will no longer be a lien or encumbrance on the property.  The party determined to be the allowed claim holder of such junior lien will receive a distribution as a general unsecured creditor in Class Nine.  Only allowed claims will receive a distribution under the Plan.

     Each of the first trust deed holders (herein after "senior lienholders") is partially unsecured.  The plan bifurcates the claims of such allowed senior lienholders into secured and unsecured claims.  Specifically, the plan provides each allowed senior lienholder with a secured claim in the

1   amount of the value of the property, established by the attached appraisal respecting such property,

2   and an unsecured claim for the balance.  Accordingly, to the extent of their allowed claims, they

3   will receive two distributions:  one pursuant to the secured portion of the claim and one pursuant to

4   the unsecured portion of the claim.  They will have the right to vote in two classes, their own

5   secured class and Class Nine.  However, senior lienholders may elect different treatment as

6   described below.

7        Senior lienholders have the right to make an "1111(b) Election."  This election is premised

8   on Bankruptcy code section 1111(b)(2, which states:  "[i]f such an election is made, then . . . such

9   claim is a secured claim to the extent that such claim is allowed." 11 U.S.C. § 1111(b)(2).  In other

10  words, making the election indicates that the creditor elects to have both the unsecured and secured

11  portions of its claim treated as a secured claim and to relinquish its right to vote on the plan as a

12  general unsecured creditor and share in the distribution to general unsecured creditors.  It will also

13  permit the creditor to retain its lien in the full amount of its claim.  Making an 1111(b) election will

14  result in the entire claim being paid at 0% interest as opposed to the interest rate proposed by the

15  Plan for payment of the secured portion of the claim.  This is because, irrespective of whether the

16  creditor makes an 1111(b) election, the present value of the distribution to senior lienholders is

17  equal to the value of the property securing their claim.

18       Debtor proposes a Plan to bifurcate the secured portion of the claim (which is equal to the

19  value of the collateral) from the unsecured portion of the claim.  The Plan proposes to restructure

20  each loan so as to pay the secured portion of the claim the highest interest rate feasible for that

21  particular property, given the net income derived by the property.  The goal of the restructure is to

22  make each rental property cash flow positive.  Currently, the rent generated by each property is

23  insufficient to cover the first mortgage on each property.  Other expenses including taxes,

24  insurance, HOA dues and maintenance associated with each such property further drain the

25  Debtor's resources.  A certain monthly payment was reached when calculating the selected interest

26  rates designed to make each property cash flow.  If the creditor makes an 1111(b) Election, the

27  monthly installment payment will be the same amount.  However, because the monthly installment

28

16

Case No. 1:12-bk-10986-AA

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

payment is reflective of present value, the creditor will not be paid any interest on a restructured

loan of an amount larger than present value of the property, as that would exceed the payment to

which the secured creditor is entitled. Senior lienholders may determine that it is in their best

interest to decline to make the 1111(b) Election so that they can earn interest on the secured portion

of their claim.  Senior lienholders must decide between earning interest on the secured portion of

their claim and retaining their liens for the full amount of the claim without earning interest on any

portion of the claim.

      c.    <u>Disputed Claims Reserve</u>

      Certain claims listed below are disputed.  For such disputed claims, as identified below, on

each installment payment date provided for the treatment of such class, the Disbursing Agent will

deposit into a segregated account ("Reserve Account") earmarked for such disputed claim, an

amount of cash equal to the installment payment due on such date. The cash in each Reserve

Account with the interest accruing thereon will be held in trust for the benefit of the holder of the

disputed claim.

      A separate Reserve Account will be held for each disputed priority, administrative, and

secured claim.  When a disputed priority, administrative, or secured claim becomes allowed, the

Disbursing Agent will distribute to the holder thereof an amount equal to the amount in the Reserve

Account held for such claimant, within 10 business days of entry of an order identifying the

allowed claim holder.  The Disbursing Agent will thereafter distribute directly to the allowed claim

holder all future installment payments due under the Plan on such claim, on such future installment

due date,  if any.  If a surplus arises from the fact that not all claims are allowed, then that money

shall revert back to the Debtor.  If the disputed claim is disallowed, all funds in the Reserve

Account held for that claim holder will revert back to the Debtor upon entry of an order

disallowing the claim.

17              Case No.  1:12-bk-10986-AA

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

A single Reserve Account will be held for all disputed general unsecured claims ("General Unsecured Reserve Account").  The Disbursing Agent will distribute to the Reserve Account all amounts representing the total pro-rata distribution representing the pool of disputed claims on the date an installment payment is due to general unsecured creditors.  The Disbursing Agent will keep an accounting of which amounts represent the pro-rata share for each disputed claimant.  When a disputed general unsecured claim becomes allowed, the Disbursing Agent will distribute to the holder thereof an amount equal to funds in the General Unsecured Reserve Account earmarked for such allowed claim holder.  The Disbursing Agent will thereafter distribute directly to such allowed claim holder their pro-rata share of all future installment payments due under the Plan on such claim, on such future installment due date, if any.  If a surplus arises from the fact that not all claims are allowed, then that money shall revert back to the Debtor who will first distribute such surplus to general unsecured creditors to share in a pro-rata distribution until such funds are exhausted or until unsecured creditors are paid in full, in which case any excess would revert back to Debtor.  If the disputed claim is disallowed, all funds earmarked for that claim holder will revert back to the Debtor who will first distribute such surplus to general unsecured creditors to share in a pro-rata distribution until such funds are exhausted or until unsecured creditors are paid in full, in which case any excess would revert back to Debtor.

Below is a detailed description and treatment of administrative expenses, claims and interests.

    d.    <u>Administrative Expenses</u>

        1.  These include the "actual, necessary costs and expenses of preserving the estate" as determined by the Court after notice to creditors of a request for payment and after a hearing thereon.

        2.  The Code requires that allowed administrative expenses be paid on the effective

date unless the party holding the administrative expense agrees otherwise.  The

claimant has not agreed otherwise.

<u>Administrative Expense #1</u>

Claimant: Landsberg & Associates, A Professional Law Corporation

$75,000 (estimated could be lower or higher), subject to court approval.

<u>Administrative Expense #2</u>

Claimant: Michael S. Riley $75,000 (estimated could be lower or higher), subject to

court approval.

<u>Administrative Expense #3</u>

Claimant: Law Offices of Linda M. Blank $0 (estimated could be lower or higher),

subject to court approval.

<u>Administrative Expense #4</u>

Claimant: Goodman Faith, LLP $0 (estimated could be lower or higher), subject to

court approval.

<u>Administrative Expense #5</u>

Claimant: Office of the United States Trustee $975 (estimated).

e.    <u>Unsecured Tax Claims</u>

1.    These include certain types of property, sales and income taxes.

2.    The Code requires that the holders of such claims receive regular installment

payments in cash over a period ending not later than five years after the date of the

order for relief, unless agreed otherwise.  The claimant has not agreed otherwise.

The total cash payments must have a present value equal to the amount of the

allowed claim.  The total cash payments must have a present value equal

19

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

Case No.  1:12-bk-10986-AA

to the amount of the allowed claim.  The treatment of this claim is in a manner not

less favorable than the most favored nonpriority unsecured claim provided in this

Plan (other than any cash payments to an administratively convenient class).  The

amount of the allowed claim includes the amount of tax owed plus interest of 4%.

The present value is calculated as of the Effective Date.

Tax Claim #1.

There are no Priority Tax Claims

f. Class One

Secured Claim of Ventura County Treasurer and Tax Collector

Total amount of allowed claim:  $4,881.02

Total amount of payments (over time) to satisfy the secured claim: $4,881.03

Interest rate (to compensate creditor because claim is paid over time): 0%

Impaired

First payment date: 1st day of the sixth full month following the Effective Date and

ontinue every six months thereafter until the third and final payment is made.

Amount of each installment: $1,627.01

Frequency of payments: Every Six Months

Total yearly payments: 2

Final payment date: November 1 1, 2015

Lien is not modified in any way by the Plan.

Description of Collateral: Real Property located at:  3339 via Verde Ct., Calabasas,

California.

Additional Comments: None

g. <u>Class Two</u>

    <u>Secured Claim of Condos at the District HOA</u>

    Total amount of allowed claim:  $6,899.15

    Total amount of payments (over time) to satisfy the secured claim: $7,081.23

    Interest rate (to compensate creditor because claim is paid over time): 2.5%

    Impaired

    First payment date: Effective Date

    Amount of each installment: 1-time $1,000 payment on the Effective Date followed by monthly installments of $202.71 commencing on the first business day of the 2nd full month following the Effective Date

    Frequency of payments: Monthly

    Total yearly payments: 12

    Final payment date: 1st business day of the 30th full month following the Effective Date

    Lien is not modified in any way by the Plan.

    Description of Collateral: Real Property located at 2240 Village Walk Dr., #2311, Henderson, Nevada.

Additional Comments:  This HOA lien has super priority pursuant to Nevada statues NRS 116.3116 and NRS 116.310312 and is therefore not modified and will not be subject to lien-stripping.

h. <u>Class Three</u>

    <u>Secured Claim of The District at Green Valley Ranch</u>

    Total amount of allowed claim:  $1,886.05

Total amount of payments (over time) to satisfy the secured claim: $1,904.89

Interest rate (to compensate creditor because claim is paid over time): 2.5%

Impaired

First payment date: Effective Date

Amount of each installment: 1-time $500 payment on the Effective Date followed by monthly installments in the amount of $117.07 commencing the 1st business day of the 2nd full month following the Effective Date

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date: 1st business day of the 12th full month following the Effective Date

Lien is not modified in any way by the Plan.

Description of Collateral:  Real Property located at 2240 Village Walk Dr., #2311, Henderson, Nevada.

Additional Comments:  This HOA lien has super priority pursuant to Nevada statues NRS 116.3116 and NRS 116.310312 and is therefore not modified and will not be subject to lien-stripping.

   i. Class Four

Secured Claim of the first deed of trust holder, First Federal Bank of California or its legitimate successor or assign established to be the allowed claim holder of Class Four.  This is a Disputed Claim for the reasons described in Section VII.  Proof of Claim number 3-1 filed by  One West Bank, FSB is duplicative of this claim and is subject to dispute and setoff by potential claims listed on **Exhibit 2**.  The Disbursing Agent will create a "Class Four Reserve Account" which will

be held in trust for the allowed claim holder as described above in Section X.  The allowed claim will be given the following treatment.

    Total amount of claim:  $1,860,964.23  (subject to dispute and setoff)

    Interest rate to compensate creditor because claims paid overtime: unaltered from note

    Impaired

    First payment date: The first business day of the first full month following the Effective Date.

    Amount of each installment: $7,562.09

    Frequency of payments: Monthly

    Total yearly payments: 12

    Final payment date: unaltered by note

    Lien is not modified in any way by the Plan.

    Description of Collateral:  Real Property located at:  3339 via Verde Ct., Calabasas, California.

Additional comments: The collateral is Debtor's primary residence.  The terms of the original note will not be modified in any way except.  As provided in Proof of Claim No. 3-1, the total amount of the claim includes arrears in the amount of $110,065.31 (subject to dispute and setoff).  The arrears will be cured within 5 years of the Effective Date as follows:  Debtor will make equal monthly installments in the amount of $2005.98 commencing on the first business day of the first full month following the Effective Date.  This amount includes interest at the current contract rate.

In the event claim objections and litigation result in a setoff against this claim, the setoff will apply first against the arrears, then against the principal balance and any remaining balance will be paid in regular monthly installments.

j. <u>Class Five</u>

<u>Secured Claim of the first deed of trust holder, Countrywide Home Loans, Inc., or its legitimate successor or assign established to be the allowed claim holder of Class Five.</u>  This is a Disputed Claim for the reasons described in Section VII.  Proof of Claim number 7-1 filed by Bank of America, N.A. is duplicative of this claim and is subject to dispute and setoff by potential claims listed on **Exhibit 2**.  The Disbursing Agent will create a "Class Five Reserve Account" which will be held in trust for the allowed claim holder as described above in Section X.  The allowed claim will be given the following treatment.

Entire Claim (subject to claim objection and setoff): $801,712.98

Secured Portion of Claim (subject to claim objection and setoff): $196,000

Unsecured Portion of Claim (subject to claim objection and setoff): $605,712.98 (See Class Nine for Treatment of Unsecured Portion of Claim)

Total amount of payments (over time) to satisfy the secured claim: $316,845.93

Interest rate (to compensate creditor because claim is paid over time): 3.5%

Impaired

First payment date: 1st business day of the first full month following the Effective Date

Amount of each installment:  $880.13

Frequency of payments: Monthly

Total yearly payments: 12

24
Case No.  1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

Final payment date: 1st business day of the 360th full month following the Effective Date, unless 1111(b) Election is made, in which case, not until final payment of the Entire Allowed Claim is made.

Lien is modified as follows: The amount secured by the lien is reduced to the value of the Property which according to the Appraisal attached hereto as **Exhibit 4** is $196,000.

Description of Collateral:  Real Property located at 2240 Village Walk Drive, Unit 2311, Henderson Nevada

Additional Comments: The secured portion of the claim could be as high as the Entire Amount of the Claim listed above, depending on the following factors: (1) If Debtor's claim objection is overruled and no setoffs are applied against the total amount in the proof of claim; and (2) The claim holder elects treatment under 11 U.S.C. §1111(b) and chooses to retain its lien for the entire amount of the claim (hereinafter referred to as the "1111(b) Election").

If the allowed claim holder does not make the 1111(b) Election, it will accrue interest and receive payments as described above in addition to receipt of a pro-rata distribution on the unsecured portion of its claim as provided in Class Nine, to the extent an allowed claim thereunder exists.  The allowed claim holder will also be entitled to cast a ballot as a Class Nine member in addition to voting in this class.  Upon Debtor's completion of payments of the secured portion of the claim, a reconveyance of the deed of trust securing the claim shall be made.

In the event the allowed claim holder makes the 1111(b) Election, it will <u>not</u> accrue any interest on its claim; it will not receive any distribution under Class Nine and it will not be entitled to vote in Class Nine.  The allowed claim holder will receive the same monthly installment payments described above in the until the entire amount of the allowed claim is paid in full, at

Case 1:12-bk-10986-MB    Doc 361    Filed 03/20/13    Entered 03/20/13 19:30:45    Desc
Exhibit A    Doc 376 Second Amended Main Document    Page 28 of 44    Page 29 of 45
Disclosure Statement and Plan of Reorganization

which time a reconveyance of the deed of trust shall be made. The maturity date shall be extended to accommodate such payments.

The allowed claim holder may make the 1111(b) Election at any time prior to the conclusion of the hearing on the Disclosure Statement or within such time as the court may fix.

In the event claim objections and litigation result in a setoff against this claim, the setoff will apply first against the principal balance and any remaining balance will be paid in regular monthly installments pursuant to the treatment prescribed herein.

k. Class Six

Secured Claim of the first deed of trust holder, Platinum Capital Group, or its legitimate successors or assigns established to be the allowed claim holder of Class Six. This is a Disputed Claim for the reasons described in Section VII. Proof of Claim number 9-1 filed by NationStar Mortgage, LLC, is duplicative of this claim and is subject to dispute and setoff by potential claims listed on **Exhibit 2**. The Disbursing Agent will create a "Class Six Reserve Account" which will be held in trust for the allowed claim holder as described above in Section X. The allowed claim will be given the following treatment.

Entire Claim (subject to claim objection and setoff): $1,480,705.83

Secured Portion of Claim (subject to claim objection and setoff): $1,400,000

Unsecured Portion of Claim (subject to claim objection and setoff): $80,705.83  (See Class Nine for Treatment of Unsecured Portion of Claim)

Total amount of payments (over time) to satisfy the secured claim: $2,603,267.26

Interest rate (to compensate creditor because claim is paid over time): 3.5%

Impaired

First payment date: 1st business day of the first full month following the Effective Date

26                    Case No. 1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

Amount of each installment: $4,083.33up through the 61st full month following the Effective Date (amount reflects interest-only); $4,583.33for the following 36 months (reflects interest only plus $500 principal payment); $5,423.47for the remaining term (reflects fully amortized payment).

Frequency of payments: Monthly

Total yearly payments: 12

Final payment date: 1st business day of the 481st full month following the Effective Date unless 1111(b) Election is made, in which case, not until final payment of the Entire Allowed Claim is made.

Lien is modified as follows:  The amount secured by the lien is reduced to the value of the Property which according to the Appraisal attached hereto as **Exhibit 5** is $1,400,000

Description of Collateral: Real Property located at 3435 Rio Road, Carmel, California

Additional Comments: The secured portion of the claim could be as high as the Entire Amount of the Claim listed above, depending on the following factors: (1) If Debtor's claim objection is overruled and no setoffs are applied against the total amount in the proof of claim; and (2) The claim holder elects treatment under 11 U.S.C. §1111(b) and chooses to retain its lien for the entire amount of the claim (hereinafter referred to as the "1111(b) Election").

If the allowed claim holder does not make the 1111(b) Election, it will accrue interest and receive payments as described above in addition to receipt of a pro-rata distribution on the unsecured portion of its claim as provided in Class Nine, to the extent an allowed claim thereunder exists.  The allowed claim holder will also be entitled to cast a ballot as a Class Nine member in addition to voting in this class.  Upon Debtor's completion of payments of the secured portion of the claim, a reconveyance of the deed of trust securing the claim shall be made.

27

Case No. 1:12-bk-10986-AA

DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

Case 1:12-bk-10986-MB   Doc 376   Filed 03/20/13   Entered 03/20/13 19:36:25   Desc
Exhibit A   Doc 376 Second Amended Disclosure Statement and Plan of Reorganization   Page 31 of 45

Main Document   Page 30 of 44

In the event the allowed claim holder makes the 1111(b) Election, it will <u>not</u> accrue any interest on its claim; it will not receive any distribution under Class Nine and it will not be entitled to vote in Class Nine.  The allowed claim holder will receive the same monthly installment payments described above until the entire amount of the allowed claim is paid in full, at which time a reconveyance of the deed of trust shall be made.  The maturity date shall be extended to accommodate such payments.

The allowed claim holder may make the 1111(b) Election at any time prior to the conclusion of the hearing on the Disclosure Statement or within such time as the court may fix.

In the event claim objections and litigation result in a setoff against this claim, the setoff will apply first against the principal balance and any remaining balance will be paid in regular monthly installments pursuant to the treatment prescribed herein.

l. <u>Class Seven</u>

<u>Secured Claim of the first deed of trust holder, Countrywide Home Loans, Inc., or its legitimate successors or assigns established to be the allowed claim holder of Class Seven.</u>  This is a Disputed Claim for the reasons described in Section VII.  Proof of Claim number 10-1 filed by The Bank of New York Mellon, et.al., is duplicative of this claim and is subject to dispute and setoff by potential claims listed on **Exhibit 2**.  The Disbursing Agent will create a "Class Seven Reserve Account" which will be held in trust for the allowed claim holder as described above in Section X.  The allowed claim will be given the following treatment.

Entire Claim (subject to claim objection and setoff): $1,401,460.91

Secured Portion of Claim (subject to claim objection and setoff): $1,145,000

Unsecured Portion of Claim (subject to claim objection and setoff): $256,460.90 (See Class Nine for Treatment of Unsecured Portion of Claim)

1   Total amount of payments (over time) to satisfy the secured claim: $2,129,100.72

2   Interest rate (to compensate creditor because claim is paid over time): 3.5%

3   Impaired

4   First payment date: 1st day of the first full month following the Effective Date

5   
6   Amount of each installment: $3,339.58up through the 61st full month following the

7   Effective Date (amount reflects interest-only); $3,839.58for the following 36 months (reflects

8   interest only plus $500 principal payment); $4,435.63for the remaining term (reflects fully

9   amortized payment).

10  Frequency of payments: Monthly

11  Total yearly payments: 12

12  
13  Final payment date:  1st business day of the 481st full month following the Effective Date

14  unless 1111(b) Election is made, in which case, not until final payment of the Entire Allowed

15  Claim is made.

16  Lien is modified as follows:  The amount secured by the lien is reduced to the value of the

17  Property which according to the Appraisal attached hereto as **Exhibit 6** is $1,145,000.

18  Description of Collateral: Real Property Located at 5390 Plata Rosa Court, Camarillo,

19  California

20  Additional Comments: The secured portion of the claim could be as high as the Entire

21  Amount of the Claim listed above, depending on the following factors: (1) If Debtor's claim

22  objection is overruled and no setoffs are applied against the total amount in the proof of claim; and

23  
24  (2) The claim holder elects treatment under 11 U.S.C. §1111(b) and chooses to retain its lien for the

25  entire amount of the claim (hereinafter referred to as the "1111(b) Election").

26  
27  
28

29                                                  Case No.  1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

If the allowed claim holder does not make the 1111(b) Election, it will accrue interest and receive payments as described above in addition to receipt of a pro-rata distribution on the unsecured portion of its claim as provided in Class Nine, to the extent an allowed claim thereunder exists. The allowed claim holder will also be entitled to cast a ballot as a Class Nine member in addition to voting in this class. Upon Debtor's completion of payments of the secured portion of the claim, a reconveyance of the deed of trust securing the claim shall be made.

In the event the allowed claim holder makes the 1111(b) Election, it will <u>not</u> accrue any interest on its claim; it will not receive any distribution under Class Nine and it will not be entitled to vote in Class Nine. The allowed claim holder will receive the same monthly installment payments as described above until the entire amount of the allowed claim is paid in full, at which time a reconveyance of the deed of trust shall be made. The maturity date shall be extended to accommodate such payments.

The allowed claim holder may make the 1111(b) Election at any time prior to the conclusion of the hearing on the Disclosure Statement or within such time as the court may fix.

In the event claim objections and litigation result in a setoff against this claim, the setoff will apply first against the principal balance and any remaining balance will be paid in regular monthly installments pursuant to the treatment prescribed herein.

m. <u>Class Eight</u>

<u>Undisputed General Unsecured Claims</u>

Total amount of allowed claims: $27,388.77

Total amount of payments (over time) to satisfy claims: Pro-rata share of $50,000 to be distributed between Classes 8 and 9 but not to exceed 100% of allowed claims.

Interest rate: 0%

Case 1:12-bk-10986-MB    Doc 361    Filed 03/20/13    Entered 03/20/13 19:36:05    Desc
Exhibit A    Doc 376 Second Amended Main Document    Page 33 of 44    Page 34 of 45

Case 1:12-bk-10986-MB    Doc 361    Filed 03/20/13    Entered 03/20/13 19:36:05    Desc
Main Document    Page 33 of 44    Disclosure Statement and Plan of Reorganization    Page 34 of 45

Impaired

First payment date: 1st business day of the 6th full month following the Effective Date

Amount of each installment: Pro-rata share of $5,000 to be distributed to Classes 8 and 9

Frequency of payments: Every 6 months

Total yearly payments: 2

Final payment date: 1st day of the 61st full month following the Effective Date

Additional Comments: In the event claim objections or 1111(b) Elections result in Debtor's ability to pay Class 8 claimants early on their pro-rata share of the total $50,000 to be distributed among Classes 8 and 9, Debtor may but is not required to do so and may thereafter seek entry of discharge early.

n.  Class Nine

Disputed General Unsecured Claims of Junior and Stripped Mortgage Holders where the identity of the legitimate claimholder is in dispute and claims are subject to setoff.

Total amount of claims (assuming no 1111(b) Elections are made):  1,078,275.30

Total amount of payments (over time) to satisfy claims: Pro-rata share of $50,000 to be distributed between Classes 8 and 9 but not to exceed 100% of allowed claims.

Interest rate: 0%

Impaired

First payment date: 1st business day of the 6th full month following the Effective Date

Amount of each installment: Pro-rata share of $5,000 to be distributed to Classes 8 and 9

Frequency of payments: Every 6 months

Total yearly payments: 2

Final payment date: 1st day of the 61st full month following the Effective Date

31

1   Additional Comments:  Class Nine includes the unsecured portion of Classes Five, Six and

2   Seven (including the duplicative proofs of claims identified therein) and the claim of a wholly

3   unsecured junior lienholder of a second positioned deed of trust encumbering the Henderson

4   Property in the amount of $135,395.60, which has been scheduled as the disputed secured claim of

5   Countrywide Home Loans, Inc., and for which a duplicative claim has been filed by Green Tree

6   Servicing, LLC in proof of claim number 4-1.  There will be protracted litigation and claim

7   objections relating to these claims which may result in setoffs against such claims.  For this reason,

8

9   they are separately classified from the undisputed general unsecured claims.   The Disbursing

10  Agent will open a "General Unsecured Reserve Account" which will be held in trust for allowed

11  claim holders as described above in Section X.

12

13

14  **XI.    SOURCE OF MONEY TO PAY CLAIMS**

15        The Plan cannot be confirmed unless the Court finds that it is "feasible," which means that

16  the Proponent has timely submitted evidence establishing that the Debtor will have sufficient funds

17  available to satisfy all expenses, including the scheduled creditor payments discussed above.

18  Attached as **Exhibit 8**  is a statement of projected cash flow for the duration of the Plan.  The focus

19  is on projected cash receipts and cash disbursements.  All non-cash items such as depreciation,

20

21  amortization, gains and losses are omitted.  A positive number reflects a source of cash; a (negative

22  number) reflects a use of cash.

23        SECTION XVI(c) states the assumptions and details surrounding the statement of

24  projected cash flow.

25        On the Effective Date, the Plan pays up to $150,000 in administrative claims; and

26

27  $1,500 in payment of certain secured claims.  The source of payments for administrative claims is:

28

cash on hand on the Effective Date.  The Debtor's current cash on hand is reflected in the most

recently filed Monthly Operating Report, which is attached hereto as **Exhibit 7**.  The total cash on

hand as of August 31, 2012 was $390,000.  See Exhibit 7, pg. 94-122.

## XII.    FINANCIAL RECORDS TO ASSIST IN DETERMINING WHETHER PROPOSED PAYMENT IS FEASIBLE

Attached as **Exhibit 7** are the Debtors' monthly operating reports filed with the Court,

which include three types of financial documents, including balance sheets, cash flow statements

and income and expense statements for the period commencing February 2012 to date.

## XIII.    ASSETS AND LIABILITIES OF THE ESTATE

a. Assets

The identity and fair market value of the estate's assets are listed in **Exhibit "3"** so that the

reader can assess what assets are at least theoretically available to satisfy claims and to evaluate the

overall worth of the bankruptcy estate.  Whether the Plan proposes to sell any of these assets is

discussed in **Section XVII.**

b. Liabilities

**Exhibit "1"** shows the allowed scheduled claims and the filed disputed and undisputed

claims against the estate, claims whose treatment is explained in detail by **Section X.**

c. Summary

The fair market value of all assets equals 5,589,711.  Total liabilities equal 5,794,769.

## XIV.        TREATMENT OF NONCONSENTING CLASSES

As stated above, even if all classes do not consent to the proposed treatment of their claims under the Plan, the Plan may nonetheless be confirmed if the dissenting classes are treated in a manner prescribed by the Code.  The process by which dissenting classes are forced to abide by the terms of a plan is commonly referred to as "cramdown."  The Code allows dissenting classes to be crammed down if the Plan does not "discriminate unfairly" and is "fair and equitable."  The Code does not define discrimination, but it does provide a minimum definition of "fair and equitable."  The term can mean that secured claimants retain their liens and receive cash payments whose present value equals the value of their security interest.  For example, if a creditor lends the Debtor $100,000 and obtains a security interest in property that is worth only $80,000, the "fair and equitable" requirement means that the claimant is entitled to cash payments whose present value equals $80,000 and not $100,000.  The term means that unsecured claimants whose claims are not fully satisfied at least know that no claim or interest that is junior to theirs will receive anything under the Plan, except where the Debtor is an individual, has elected to retain property included in the Estate under 11 U.S.C.A. § 1115 (West Supp. 2006) and has satisfied 11 U.S.C.A. § 1129(b)(2)(B)(ii) (West Supp. 2006).  "Fair and equitable" means that each holder of an interest must receive the value of such interest or else no junior interest is entitled to receive anything.

Therefore, if a class of general unsecured claims votes against the Plan, the Plan cannot be confirmed where the Debtor or a class of interest holders (e.g. shareholders or partners) will receive or retain any property under the Plan, unless the Plan provides that the class of general unsecured claims shall be paid in full with interest.  These are complex statutory provisions and the preceding paragraphs do not purport to state or explain all of them.

## XV.    TREATMENT OF NONCONSENTING MEMBERS OF CONSENTING CLASS (CHAPTER 7 LIQUIDATION ANALYSIS)

The Plan must provide that a nonconsenting impaired claimant or interest holder of a consenting class receive at least as much as would be available had the Debtor filed a Chapter 7 petition instead.

In a Chapter 7 case the general rule is that the Debtor's assets are sold by a trustee. Unsecured creditors generally share in the proceeds of sale only after secured creditors and administrative claimants are paid.  Certain unsecured creditors get paid before other unsecured creditors do.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the total amount of allowed claims.

A creditor would recover from the assets of the bankruptcy estate less under Chapter 7 than under Chapter 11 for the following reasons.   First, in a chapter 7 case a trustee is appointed and is entitled to compensation from the bankruptcy estate in an amount no more than 25% of the first $5,000 of all moneys disbursed, 10% on any amounts over $5,000 and up to $50,000, 5% on all amounts over $50,000 and up to $1,000,000, and such reasonable compensation no more than 3% of moneys over $1,000,000.  Also, a chapter 7 recovery may be less because an individual debtor is permitted to exempt a certain amount of the sales proceeds before unsecured creditors are paid anything.  Attached **Exhibit 3** provides a detailed description of the value of Debtor's assets, the encumbrances against such assets, the exemptions that could be asserted in a Chapter 7 liquidation and the administrative costs that would apply in a Chapter 7 liquidation.  It reveals that a Chapter 7 liquidation would result in no distribution to general unsecured creditors.

**XVI.    FUTURE DEBTOR**

    a.    <u>Management of Debtor</u>

        1.    Names of persons who will manage the Debtor's business affairs: The Debtor shall be the person responsible for managing her financial affairs.

        2.    Proposed compensation to persons listed above:  N/A

        3.    Qualifications: N/A

        4.    Affiliation of persons to Debtor: N/A

        5.    Job description: N/A

    b.    <u>Disbursing Agent</u>

The Debtor will serve as the Disbursing Agent and will be responsible for creating maintaining and administering all reserve accounts described herein; and for collecting money intended for distribution to allowed claim holders and transmitting it to them.  The Disbursing Agent's address is: 3339 Via Verde Ct., Calabasas, California.

        1.    Proposed compensation to person listed above: N/A

        2.    Qualifications: N/A

        3.    Affiliation of person to Debtor: N/A

        4.    Job description: Properly disbursing to allowed claimholders the plan payments provided for under this Plan, and regularly providing reports to the United States Bankruptcy Court, the creditors, and other interested parties as required by the Court or under the Plan.

    c.    <u>Future Financial Outlook</u>

The Proponent believes that the Debtor's economic health will improve from its prebankrutpcy state for the following reasons.  The plan will reduce mortgage payments on rental properties so that the rent generated from each property will be sufficient to service the debt and pay the property taxes, insurance, HOA dues and maintenance for each property.  Debtor does not

1  foresee any adverse changes in the compensation she or her spouse expect to receive from their

2  personal services and expect post-petition earnings for personal services to remain the same.

3      Section XI provides a summary of the projected cash flow of the Debtor for the duration of

4  the Plan.  The following assumptions underlie the projections.  Debtor will continue to lease each

5  rental property for at least the same amount of rent currently generated by each property for the

6  duration of the Plan.  Debtor and Debtor's spouse will continue to earn at least the some average

7  monthly income for the duration of the Plan.   Expenses will remain the same for the next 5 years

8  with the exception of decreasing plan payments as payments are made.

9

10     As previously stated, Plan payments will come from the continued collection of rent and

11  compensation for the personal services of Debtor and her spouse.  If such revenue is insufficient

12  funds to provide all of the Plan payments, then the Proponent will make up the shortfall under the

13  following conditions and subject to the following terms.  All cash currently being held for the

14  benefit of creditors whose claims are secured by the rental properties will revert to Debtor on the

15  Effective Date and will serve as a savings account for Debtor in the event of unexpected

16  emergencies and to cover shortfalls in Plan payments resulting therefrom or resulting from

17  unforeseen circumstances that adversely affect Debtor's revenue.  The Proponent's financial

18  solvency, which is relevant to her ability to honor her commitment to make up any shortfall, is

19  demonstrated by the following facts.  The most recently filed Monthly Operating Report reflects a

20  total of $256,030.59 of cash collateral which will revert to the Debtor upon the Effective Date.  All

21  cash collateral will revert to the Debtor on the Effective Date.

22

23  //

24  //

25

26

27

28

## XVII.  SALE OR TRANSFER OF PROPERTY; ASSUMPTION OF CONTRACTS AND LEASES; OTHER PROVISIONS

The Plan provides for the following:  Debtor will retain all assets and assume all executor contracts and unexpired leases.  Debtor is not in default of any executory contract or unexpired lease and therefore no cure payments are required.

The Court must make certain findings of fact before approving the aforementioned provisions as part of the Plan.  The Proponent will request that the Court make the appropriate findings at the confirmation hearing, based upon evidence submitted in support of the confirmation motion.

## XVIII.          BANKRUPTCY PROCEEDINGS

The following significant events occurred during the bankruptcy case.  The court approved the employment of general bankruptcy counsel who have been substituted for Landsberg & Associates, A Professional Law Corporation ("L&A") whose employment has also been approved by the Court.  L&A was employed by Debtor after prior counsel's performance resulted in the Court granting relief from the automatic stay respecting Debtor's home, at the request of One West Bank (who may not even have an allowed claim).  L&A filed an emergency motion for reconsideration which resulted in the Court reimposing the automatic stay just before a foreclosure of Debtor's home was scheduled.

The Court has also employed special counsel Michael S. Riley who will continue investigating and pursuing the claims described in attached **Exhibit 2**.

Debtor has also obtained authority to use cash collateral derived from rental income.

1  Debtor will be seeking disgorgement of fees from prior general bankruptcy counsel, Linda Blank

2  and Goodman Faith, LLP and will object to any further administrative claims sought by either of

3  them.

4  Through special counsel, Debtor will also be continuing the investigation and pursuit of all

5  claims identified on the attached **Exhibit 2** which will affect claim objections and setoffs described

6  in above.

7

8  **XVIX.        TAX CONSEQUENCES OF PLAN**

9

10  CREDITORS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX

11  LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORENYS,

12  AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely

13  for the purpose of alerting readers about possible tax issues the Plan may present to the Debtor.

14  The Debtor CANNOT and DOES NOT represent that the tax consequences contained below are

15  the only tax consequences of the Plan because the Tax Code embodies many complicated rules

16  which make it difficult to state completely and accurately all of the tax implications of any action.

17  The Debtor does not anticipate that confirmation of the Plan will have a significant or

18  material affect on her tax liability.  The Debtor makes no representations regarding the potential tax

19  consequences to creditors.

20

21  **XX.    EFFECT OF CONFIRMATION OF PLAN**

22  a.    General Comments

23  The provisions of a confirmed Plan bind the Debtor, any entity acquiring property under the

24  Plan, and any creditor, interest holder, or general partner of the Debtor, even those who do not vote

25  to accept the Plan.

26

27

28

39                          Case No.  1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

1    The confirmation of the Plan vests all property of the estate in the Debtor.

2    The automatic stay is lifted upon confirmation as to property of the estate.  However, the

3    stay continues to prohibit collection or enforcement of pre-petition claims against the Debtor or the

4    Debtor's property until the date the Debtor receives a discharge, if any.  If the Debtor does not seek

5    a discharge, the discharge is deemed denied, and the stay as to the Debtor and the Debtor's property

6    terminates upon entry of the order confirming the Plan.

7

8    b.    Discharge of liability for payment of debts; status of liens; equity security holders

9    Unless the Debtor is not entitled to receive a discharge pursuant to 11 U.S.C.A. 1141(d)(3)

10    (West 2004), the debtor may obtain a discharge only upon specific order of the Court.

11    A discharge does not discharge a debt excepted from discharge under 11 U.S.C.A. § 523

12    (West 2004 & Supp. 2006).  Additionally, confirmation of the Plan does not discharge any debt

13    provided for in the Plan until the Court grants a discharge on completion of all payments under the

14    Plan.  At any time after the confirmation of the Plan, and after notice and a hearing, the Court may

15    grant a discharge to the Debtor who has not completed payments under the Plan if – (i) the value,

16    as of the Effective Date of the Plan, of property actually distributed under the Plan on account of

17    each allowed unsecured claim is not less than the amount that would have been paid on such claim

18    if the estate of the debtor had been liquidated under Chapter 7 on such date; and (ii) modification of

19    the Plan under section 1127 is not practicable, unless the Court finds that there is no reasonable

20    cause to believe that – (i) section 522(q)(1) may be applicable to the Debtor; and (ii) there is

21    pending any proceeding in which the Debtor may be found guilty of a felony of the kind described

22    in section 522(q)(1)(A) or liable for a debt of the kind described in section 522(q)(1)(B).  *See* 11

23    U.S.C.A. § 522(q)(1)(A)-(B) (West Supp. 2006).

24

25

26

27

28

c.    Modification of the Plan

The Proponent may modify the Plan pursuant to 11 U.S.C.A. §1127 (West  2004 & Supp. 2006).

d.    Post-Confirmation Causes of Action

To the best knowledge of the Proponent, the estate has the causes of action listed on

**Exhibit 2** attached hereto.  The estate also has a claim for disgorgement of fees paid to prior

general bankruptcy counsel and potential malpractice claims identified in Schedule B.

Debtor is designated as representative of the estate under 11 U.S.C. 1123(b)(3) (West 2004)

and shall have the right to assert any or all of the above causes of action post-confirmation.  Post-

confirmation, all causes of action which will revert to the Debtor.  Debtor shall have the right to

assert any or all of the above causes of action post-confirmation in accordance with applicable law.

e.    Final Decree

Once the Plan has been consummated, a final decree may be entered upon motion of the

Proponent.  The effect of the final decree is to close the bankruptcy case.  After such closure, a

party seeking any type of relief relating to a Plan provision can seek such relief in a state court of

general jurisdiction.

41
Case No.  1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI

## XXI.    DECLARATION IN SUPPORT OF DISCLOSURE STATEMENT AND PLAN

I, Allana Baroni, declare under penalty of perjury under the laws of the United States of America that the following statements are true and based upon personal knowledge.

1.    Summer Saad, of Landsberg & Associates, A Professional Law Corporation, general bankruptcy counsel, is the individual who prepared this document from information provided by Allana Baroni.

2.    The source of all financial data is Allana Baroni's personal knowledge of her financial affairs and all information she keeps with respect thereto.

3.    All facts and representations in the Plan and Disclosure Statement are true to the best of my knowledge.

4.    No fact material to a claimant or equity security holder in voting to accept or reject the proposed Plan has been omitted.

5.    The name of the person who prepared the cash flow projections and the other financial documents is Debtor, Allana Baroni.

6.    The accounting method(s) used to prepare the cash flow projections and the other financial documents is cash basis.

Executed this 20th day of March 2012.


 _/s/ Allana Baroni_____
ALLANA BARONI

---

42                    Case No.  1:12-bk-10986-AA
DISCLOSURE STATEMENT AND PLAN OF ALLANA BARONI