| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| STEVEN T. GUBNER – Bar No. 156593<br>SUSAN K. SEFLIN – Bar No. 213865<br>JESSICA L. BAGDANOV – Bar No. 281020<br>BRUTZKUS GUBNER<br>21650 Oxnard Street, Suite 500<br>Woodland Hills, CA  91367<br>Telephone:  (818) 827-9000<br>Facsimile:   (818) 827-9099<br>Email:   sgubner@bg.law<br>  sseflin@bg.law<br>  jbagdanov@bg.law<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:*  David Seror, Chapter 7 Trustee | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION**

| In re:<br><br>ALLANA BARONI,<br><br><br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 1:12-bk-10986-MB<br><br>CHAPTER: 7<br><br>**NOTICE OF MOTION FOR:**<br><br>CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE WITH CERTAIN PREPETITION LENDERS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND SECTION 363 (m) OF THE BANKRUPTCY CODE<br><br>*(Specify name of Motion)*<br><br>DATE: 03/17/2020<br>TIME:  11:00 am<br>COURTROOM: 303<br>PLACE: 21041 Burbank Blvd.<br>    Woodland Hills, CA 91367 |

1. TO (*specify name*):  Debtor Allana Baroni and her counsel, and all other interested parties

2. NOTICE IS HEREBY GIVEN that on the following date and time and in the indicated courtroom, Movant in the above-captioned matter will move this court for an Order granting the relief sought as set forth in the Motion and accompanying supporting documents served and filed herewith. Said Motion is based upon the grounds set forth in the attached Motion and accompanying documents.

3. **Your rights may be affected**. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                  Page 1                  **F 9013-1.1.HEARING.NOTICE**

4. **Deadline for Opposition Papers:** This Motion is being heard on regular notice pursuant to LBR 9013-1. If you wish to oppose this Motion, you must file a written response with the court and serve a copy of it upon the Movant or Movant's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date.  If you fail to file a written response to this Motion within such time period, the court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.

5. **Hearing Date Obtained Pursuant to Judge's Self-Calendaring Procedure:** The undersigned hereby verifies that the above hearing date and time were available for this type of Motion according to the judge's self-calendaring procedures.

Date:   02/21/2020

Brutzkus Gubner
Printed name of law firm

/s/ Susan K. Seflin
Signature

Susan K. Seflin
Printed name of attorney

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                     Page 2                     **F 9013-1.1.HEARING.NOTICE**

1  STEVEN T. GUBNER – Bar No. 156593
   SUSAN K. SEFLIN – Bar No. 213865
2  JESSICA L. BAGDANOV – Bar No. 281020
   BRUTZKUS GUBNER
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA  91367
4  Telephone:  (818) 827-9000
   Facsimile:  (818) 827-9099
5  Email:      sgubner@bg.law
               sseflin@bg.law
6              jbagdanov@bg.law

7  Attorneys for David Seror, Chapter 7 Trustee

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO VALLEY DIVISION**

11  In re:                              Case No. 1:12-bk-10986-MB

12  ALLANA BARONI,                      Chapter 7

13                                      **CHAPTER 7 TRUSTEE'S MOTION FOR
                                        APPROVAL OF COMPROMISE WITH**
14                  Debtor.             **CERTAIN PREPETITION LENDERS
                                        PURSUANT TO FEDERAL RULE OF**
15                                      **BANKRUPTCY PROCEDURE 9019 AND
                                        SECTION 363(m) OF THE BANKRUPTCY**
16                                      **CODE; MEMORANDUM OF POINTS AND
                                        AUTHORITIES AND DECLARATION OF**
17                                      **DAVID SEROR IN SUPPORT THEREOF**

18

19                                      Hearing:

20                                      Date:   March 17, 2020
                                        Time:   11:00 a.m.
21                                      Place:  Courtroom 303
                                                United States Bankruptcy Court
22                                              21041 Burbank Boulevard
                                                Woodland Hills, CA 91367
23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND .....................................................................................3

      A.      The Debtor's Chapter 11 Case ......................................................................3

      B.      The Chapter 7 Estate .....................................................................................4

      C.      The Rental Lender Claims and Related Litigation .................................6

III.    SALIENT TERMS OF THE AGREEMENT ......................................................9

IV.    THE COURT SHOULD APPROVE THE AGREEMENT
PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE .............................................................................12

      A.      Legal Standard for Approval .......................................................................12

      B.      Application of the *A&C Properties* Factors Demonstrates that the
Agreement Should be Approved .................................................................13

V.     The Court Should Approve the Assignment and Grant the Rental
Lenders Protection Under 11 U.S.C. § 363(m) ...............................................19

VI.    CONCLUSION ..........................................................................................................20

DECLARATION OF DAVID SEROR ......................................................................................22

1

## TABLE OF AUTHORITIES

Page

2

3

**CASES**

4

*In re A&C Properties*,
    784 F.2d 1377 (9th Cir. 1986), *cert. denied*, 479 U.S. 854 S. Ct. 189 (1986).......12, 13, 20

5

*In re Baroni*,
    558 B.R. 916 (Bankr. C.D. Cal. 2016), *aff'd* 558 B.R. 916, 930 (Bankr. C.D. Cal.

6

    2016) ...................................................................................................................14

7

*In re Fitzgerald*,
    428 B.R. 872 (9th Cir. BAP 2010)......................................................................20

8

9

*In re Lahijani*,
    325 B.R. 282 (9th Cir. BAP 2005)......................................................................20

10

*In re Moore*,
    110 B.R. 924 (Bankr. C.D. Cal. 1990) (citing *Sierra Switchboard Co. v. Westinghouse

11

    Electric Corp.*, 789 F.2d 705, 707 (9th Cir. 1986)) .............................................8

12

*In re Morrison*,
    69 B.R. 586 (Bankr. E.D. Pa. 1987) ...................................................................12

13

14

*In re Pine Coast Enterprises, Ltd.*,
    147 B.R. 30 (Bankr. N.D. Ill. 1992) ...................................................................19

15

*In re T.C. Investors, et al. v. Joseph, et al. (In re M Capital Corp.)*,
    290 B.R. 743 (9th Cir. BAP 2003)......................................................................19

16

17

*In re W.T. Grant Co.*,
    699 F.2d 599 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1984) (quoting *Newman v.

18

    Stein*, 464 F.2d 689, 698 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972))..................13

19

*In re Walsh Construction, Inc.*,
    669 F.2d 1325 (9th Cir. 1982) ............................................................................12

20

*In re Woodson*,
    839 F.2d 610 (9th Cir. 1988) ..............................................................................12

21

22

*Kham and Nate's Shoes No.2 v. First Bank*,
    908 F.2d 1351 (7th Cir. 1990) ............................................................................19

23

*U.S. v. Whiting Pools, Inc.*
    462 U.S. 198 (1983).............................................................................................7

24

**STATUTES**

25

11 U.S.C. § 363(m)...............................................................................................19, 20

26

11 U.S.C. § 541(a)(1)...................................................................................................7

11 U.S.C. § 541(d)......................................................................................................16

27

11 U.S.C. § 704(a)(1)...................................................................................................6

28

1

<u>**RULES**</u>

2

Federal Rule of Bankruptcy Procedure 6009 .................................................................8

3

Federal Rule of Bankruptcy Procedure 9019 ....................................................9, 12, 20

4

Federal Rule of Bankruptcy Procedure 9019(a) ..........................................................12

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **TO THE HONORABLE MARTIN BARASH, UNITED STATES BANKRUPTCY JUDGE,**

2  **DEBTOR, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL OTHER**

3  **INTERESTED PARTIES:**

4        David Seror, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate (the "Estate") of

5  Allana Baroni (the "Debtor"), hereby moves this Court for entry of an order pursuant to Rule 9019

6  of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 363(m) of 11

7  U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), approving that certain Rental Lenders Settlement

8  Agreement and Release (the "Agreement"), substantially in the form as attached hereto as **Exhibit 1**,

9  entered into by and among the following parties (collectively, the "Parties"): Nationstar Mortgage

10  LLC ("Nationstar"), The Bank Of New York Mellon f/k/a The Bank Of New York Successor

11  Trustee To JPMorgan Chase Bank, N.A., As Trustee For The Structured Asset Mortgage

12  Investments II Trust, Mortgage Pass-Through Certificates, Series 2006-AR6 ("BoNYM"), Wells

13  Fargo Bank, N.A. as Trustee For Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-

14  Through Certificates, Series 2005-17 ("Wells Fargo"), (collectively, the "Rental Lenders"), and the

15  Trustee on behalf of the Estate.

16        In support of the Motion, the Trustee represents as follows:

17                    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

18  **I.      INTRODUCTION**

19        The Agreement, if approved by the Court, resolves all pending disputes and litigation

20  existing among the Parties, including the following adversary proceedings:

21      • *Baroni v. Nationstar Mortgage LLC*, Adv. No 1:13-ap-01069-MB (the "Nationstar

22        Adversary Proceeding"), for which the Trustee is the real party in interest on behalf of the

23        Estate;

24      • *Baroni v. The Bank of New York Mellon FKA The Bank OF New York, As Successor

25        Trustee, Etc.*, Adv. No. 1:13-ap-01072-MB (the "BoNYM Adversary Proceeding"), for

26        which the Trustee is the real party in interest on behalf of the Estate;

27      • *Baroni v. Wells Fargo Bank, N.A., as Trustee, etc.*, Adv. No. 1:13-ap-01071-MB (the

28        "Wells Fargo Adversary Proceeding"), for which the Trustee is the real party in interest

on behalf of the Estate; and

- *Baroni v. Specialized Loan Servicing, et al*, Adv. No. 1:19-ap-01037-MB (the "Second BoNYM Adversary Proceeding"), for which the Trustee is the real party in interest on behalf of the Estate.  The Nationstar, both BoNYM, and Wells Fargo Adversary Proceedings are collectively referred to herein as the "Lender Litigation."

In addition to resolving substantial pending litigation, the Agreement also provides for discounts on the secured claims of each Rental Lender, which discounts inure to the benefit of the Estate as a whole, and facilitates the liquidation of the Estate's real property assets.  The Agreement further provides for the Trustee to retain, for the benefit of the Estate, approximately 75% of certain funds turned over by the Debtor that the Debtor asserts were reserved for payments owed on the secured claims of Nationstar and BoNYM.

The Agreement provides a mechanism that not only allows the Trustee to liquidate Estate assets for the benefit of the Estate in an expeditious manner but it also resolves multiple pending adversary proceedings without the expenditure of Estate funds.  The Trustee is sensitive to his obligations to promptly administer assets, especially in light of the age of this bankruptcy case (2012).  As explained below, the Rental Properties are over-encumbered based on the current estimated amounts of the respective Rental Lenders' claims.  The Agreement provides certainty that the Trustee will be able to sell the Rental Properties such that net proceeds will be available for the benefit of the Estate.  Additionally, the tenants of the Carmel Property (defined below) recently vacated, thus the Trustee is presently faced with either re-letting the Carmel Property or selling the Carmel Property to avoid further increases to the secured obligation owed to Nationstar.  This Agreement also ensures that the Trustee will be able to sell the Camarillo Property (defined below) at the appropriate time and allow for net proceeds to remain with the Trustee for the benefit of the Estate. The Trustee believes it is prudent to settle simultaneously with all of the Rental Lenders, as opposed to settling in a piecemeal manner throughout the bankruptcy case.

The Agreement is the product of arm's length negotiations and the Trustee's analysis of the various pending disputes regarding the validity of the secured claims.  For the reasons set forth herein, the Trustee submits that the Agreement should be approved as a proper exercise of his

2257484

business judgment and as being in the best interests of this Estate, the Debtor's creditors and this Court.

## II.    FACTUAL BACKGROUND

### A.    The Debtor's Chapter 11 Case

1.    The Debtor commenced this case by filing a voluntary petition [Doc. #1] on February 1, 2012 under chapter 13 of the Bankruptcy Code.

2.    On February 10, 2012, the Debtor filed a motion to convert [Doc. #10] her case to one under chapter 11 of the Bankruptcy Code, which motion was approved pursuant to Court order entered on February 29, 2012 [Doc. #17].

3.    As of the petition date, property of the chapter 11 estate included, among other things, the following: (a) residential real estate located at 2240 Village Walk Drive Unit 2311, Henderson, Nevada 89052 (the "Henderson Property"); (b) residential real estate located at 3435 Rio Road, Carmel, California 92321 (the "Carmel Property"); (c) residential real estate located at 5390 Plata Rosa Court, Camarillo, California (the "Camarillo Property"); and (d) residential real estate located at 3339 Via Verde Ct., Calabasas, California 91302 (the "Calabasas Property" and collectively, with the Henderson Property, the Carmel Property and the Camarillo Property, the "Real Properties"). The Henderson, Carmel, and Camarillo Properties are referred to as the "Rental Properties" in this Motion.

4.    The Debtor filed her second amended plan [Doc. #376] (the "Plan") on March 20, 2013.  The order confirming the Plan was entered on April 15, 2013 [Doc. #423].

5.    Under the Plan, the Debtor disputed certain claims, including those of creditors holding secured claims against the Real Properties.  The Plan provided that the Debtor would make payments into a reserve account (the "Reserve Account Payments") pending litigation with the disputed secured creditors.  As a result, Nationstar and BoNYM have not been paid any amounts to reduce their claims during the pendency of this bankruptcy case (despite confirmation of the Plan in April of 2013).[1]

---

[1] The Henderson Property was sold and the secured portion of the claim against the Henderson Property was paid pursuant to the sale and prior to conversion of this case to chapter 7.

6.     On April 3, 2013, the Debtor filed separate adversary proceedings against Nationstar, Wells Fargo, and BoNYM, challenging each creditor's respective secured claim, described in further detail below (*i.e.*, the "Lender Litigation" defined above).

7.     The Debtor did not consummate the Plan, and did not receive a discharge.

8.     On March 11, 2019, the Debtor's secured creditor on the Camarillo Property, BoNYM, filed its motion to convert [Doc. #949] (the "Motion to Convert") this case from one under chapter 11 of the Bankruptcy Code to one under chapter 7.  The Motion to Convert was granted pursuant to Court order entered on April 29, 2019 [Doc. #967] (the "Conversion Order").  The Conversion Order is on appeal, however it has not been stayed.

9.     On April 30, 2019, the United States Trustee filed its *Notice of Appointment of Trustee and Fixing of Bond; Acceptance of Appointment as Interim Trustee* [Doc. #968] pursuant to which the Trustee was appointed as the chapter 7 Trustee of this case, in which capacity he continues to serve.

**B.     The Chapter 7 Estate**

10.     On June 19, 2019, the Debtor turned over $533,307.62 in funds she alleges were segregated under the Plan for the disputed secured creditors to the Trustee (the "Disputed Funds"). The Trustee is informed that the funds consist of $294,377.66 owed by the Debtor to Nationstar on the Carmel Property and $238,929.96 owed by the Debtor to BoNYM on the Camarillo Property. The Rental Lenders allege that under the Plan and as of the date of conversion, the Debtor owed $295,416.43 to Nationstar and $242,610.18 to BoNYM, and that they are entitled to payment of these arrears from the Disputed Funds (even though the Disputed Funds are less than the total amount the Rental Lenders allege that they are owed).

11.     The Henderson Property was listed on the Debtor's Schedule A [Doc. #19] as an asset of this Estate.  Post-conversion, the Debtor testified at the initial 341(a) meeting that she sold the Henderson Property to an unrelated party for $550,000 in March of 2019 (*i.e.,* at the same time BoNYM's Motion to Convert was pending, but prior to entry of the Conversion Order).  The Debtor further testified at the 341(a) meeting that there was approximately $350,000 in proceeds from the sale of the Henderson Property (the "Henderson Sale Proceeds") which were being held in her

4

1   husband's bank account.  Thereafter the Debtor testified that she spent certain of the Henderson Sale

2   Proceeds on various personal and living expenses.

3          12.     On June 26, 2019, the Trustee filed his *Motion for Turnover of Property of the Estate,*

4   *and (2) Order Compelling Debtor to Comply with Bankruptcy Rule 1019 and Local Bankruptcy*

5   *Rules 2015-2(c) and 3020-1(d)* [Doc. #991] (the "Turnover Motion"), pursuant to which he sought

6   entry of a Court order directing turnover of the Henderson Sale Proceeds, rent proceeds from the

7   Camarillo and Carmel Property, and other relief.

8          13.     The Debtor contested the Turnover Motion, and also filed a motion to dismiss the

9   bankruptcy case [Doc. #989] (the "Motion to Dismiss").  After additional briefing and two hearings,[2]

10  on August 30, 2019, the Court entered its *Interim Order Directing Turnover of Property of the*

11  *Estate* [Doc. #1057] (the "Interim Turnover Order"), pursuant to which the Court ordered (a) that the

12  Camarillo Property, the Carmel Property and the Calabasas Property constitute property of the

13  bankruptcy estate, and (b) that the Debtor shall turnover the aforementioned properties and all rents

14  and proceeds derived from the Camarillo Property and the Carmel Property to the Trustee, including

15  those sums then held by the Debtor's attorneys.

16         14.     The Interim Turnover Order only partially addressed turnover of the Henderson Sale

17  Proceeds; specifically, it ordered turnover of $59,511.12 of the Henderson Sale Proceeds.

18         15.     In connection with briefing the Turnover Motion, the Trustee produced evidence that

19  the Debtor received $315,078.12 from the sale of the Henderson Property on or about March 26,

20  2019. Trustee's supplemental brief re: Turnover Motion [Doc. #1032], Exhibit E and Declaration of

21  David Seror appended thereto, ¶ 13. The Debtor did not dispute this evidence and withdrew her

22  initial objection to the same.  *See* Doc. #1100.

23         16.     The Trustee lodged proposed findings of fact and conclusions of law regarding the

24  Turnover Motion (and on the Debtor's motion to dismiss) on September 13, 2019.  *See* Doc. #1069.

25  Counsel for the Debtor and Trustee disputed certain provisions of the proposed turnover findings,

26  most of which have been resolved in subsequent briefing.  *See, e.g.,* Doc. ##1100 (filed Nov. 1,

27

28

---

[2]  On August 29, 2019, the Court orally granted the Turnover Motion and denied the Debtor's
motion to dismiss the bankruptcy case.  A formal order on either motion has not yet been entered.

5

2019); 1108 (filed Nov. 20, 2019).  To date, the Court has not entered the proposed order or findings related to the Turnover Motion.  Thus the Trustee does not yet have an order declaring the remainder of the Henderson Sale Proceeds (or approximately $255,567) to be property of the Estate and directing turnover of same.

17.    Separately, on December 9, 2019, the Court entered its *Order Granting the Trustee's Motion for Order Authorizing Trustee to Operate Real Property Effective September 19,2019* [Doc. #1110] (the "Operate Order"), pursuant to which the Court ordered that (a) the Trustee is authorized to operate the Camarillo Property and the Carmel Property (collectively, the "Rental Properties") effective September 9, 2019 through September 9, 2020, (b) in accordance with such operation, the Trustee is authorized to collect rents directly from the tenants of the Rental Properties, pay expenses including but not limited to homeowners' association dues and assessments and gardening services, and (c) the Trustee is authorized to make periodic mortgage and property tax payments if, in his business judgment, it is appropriate to do so.  The Operate Order is a final order.

**C.    The Rental Lender Claims and Related Litigation**

18.    In accordance with his duties under 11 U.S.C. § 704(a)(1) to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest," the Trustee has been diligently attempting to resolve all disputes with the creditors whose claims are and/or were secured by the Real Properties.

19.    The following chart describes the three Rental Lenders who are Parties to the proposed settlement, their respective claims, and respective collateral:

| **Lender** | **Collateral** | **Claim Description** | **Current Estimated Collateral Value** |
|---|---|---|---|
| Wells Fargo | 2240 Village Walk Drive Unit 2311, Henderson, NV 89052 | Proof of Claim 7 asserts: Secured claim of $839,944.84 (as of 7/16/19)<br><br>Est. Current Amount of Claim: **$839,944.84 (unsecured as the secured portion of the claim has been paid)** | $0 |

2257484

| Lender | Collateral | Claim Description | Current Estimated Collateral Value |
|---|---|---|---|
| Nationstar | 3435 Rio Road, Carmel, CA 93921 | Proof of Claim 9 asserts: Secured claim of $1,480,705.83 (as of 9/17/12)<br><br>Est. Current Amount of Claim: $1,774,010.95 (secured) $44,211.78 (admin claim for property taxes) $323,707.48 (unsecured claim for attorneys' fees)[3]<br><br>**TOTAL: $2,141,930.21** | $1,800,000; without agreement with Nationstar, property without equity (Seror Decl.) |
| BoNYM | 5390 Plata Rosa Court, Camarillo, CA 93012 | Proof of Claim 10 asserts: Secured claim of $1,401,460.91 (as of 9/17/12)<br><br>Est. Current Amount of Claim: $1,402,147.92 (secured) $161,952.20 (unsecured claim for attorneys' fees)[4]<br><br>**TOTAL: $1,564,100.12** | $1,440,000; without agreement with BoNYM, property without equity (Seror Decl.) |

20.    As noted above, the Debtor commenced most of the Lender Litigation back in 2013, and litigated with each secured creditor over the course of the last six years regarding the validity of their respective secured claims (with respect to BoNYM, in two separate adversary proceedings).  It is indisputable that the claims involved in the Lender Litigation are prepetition claims, brought originally by the debtor in possession to challenge the secured status of the claims against her various Real Properties.  Now that the case is in chapter 7, the Trustee is the sole real party in interest with authority to litigate and resolve these claims.  *See* 11 U.S.C. § 541(a)(1); *U.S. v. Whiting Pools, Inc.* 462 U.S. 198, 204-05 (1983) (property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case).  "The scope of § 541 is broad and includes intangible property such as a cause of action." *In re Moore*, 110 B.R.

---

[3] This Court has previously indicated it would consider postpetition attorneys' fees to be an unsecured claim, not included in the total secured claim of the lender. Alternatively, these attorneys' fees would be added to the balance on the secured claim.

[4] *See supra* note 2.

2257484

1  924, 926 (Bankr. C.D. Cal. 1990) (citing *Sierra Switchboard Co. v. Westinghouse Electric Corp.*,

2  789 F.2d 705, 707 (9th Cir. 1986)); Fed. R. Bankr. P. 6009.

3       21.    The status of each action is as follows:

4       • *Baroni v. Nationstar Mortgage LLC*, Adv. No 1:13-ap-01069-MB (the

5  "Nationstar Adversary Proceeding"): trial was held before the Court in this matter in October 2018

6  and a ruling has not yet been issued.  There is a post-trial status conference scheduled for March 5,

7  2020.

8       • *Baroni v. The Bank of New York Mellon FKA The Bank OF New York, As*

9  *Successor Trustee, Etc.*, Adv. No. 1:13-ap-01072-MB (the "BoNYM Adversary Proceeding"): this

10 Court granted BoNYM summary judgment on January 20, 2016, which the Debtor appealed.  The

11 BAP and Ninth Circuit both affirmed the summary judgment.  The two-page opinion of the Ninth

12 Circuit states, "The undisputed evidence establishes BNYM possesses Baroni's promissory note

13 indorsed in blank.  As the 'holder of the instrument,' BNYM may 'enforce' it in this bankruptcy

14 action."  Ninth Circuit Memorandum, entered Feb. 27, 2018 [Doc. #160, Adv. No. 1:13-ap-01072-

15 MB].  The Debtor filed a writ of certiorari with the United States Supreme Court, which was denied

16 on October 9, 2018.  The mandate has been returned to this Court.

17      • *Baroni v. Wells Fargo Bank, N.A., as Trustee, etc.*, Adv. No. 1:13-ap-01071-

18 MB (the "Wells Fargo Adversary Proceeding"): this Court granted Wells Fargo summary judgment

19 on December 5, 2014, which the Debtor appealed.  Separately, the Court granted Wells Fargo

20 recovery of attorneys' fees and costs.  The BAP and Ninth Circuit affirmed.  The Ninth Circuit

21 stated, "The undisputed facts in the record established that Wells Fargo possessed Baroni's

22 promissory note indorsed in blank. As the holder of a negotiable instrument, Wells Fargo is entitled

23 to enforce the note in Baroni's bankruptcy case."  Ninth Circuit Memorandum, entered Oct. 5, 2017

24 [Doc. #203, Adv. No. 1:13-ap-01071-MB].  The mandate has been returned to this Court.

25      • *Baroni v. Specialized Loan Servicing, et al*, Adv. No. 1:19-ap-01037-MB (the

26 "Second BoNYM Adversary Proceeding"):  on April 9, 2019, the Debtor filed this new adversary

27 proceeding against Specialized Loan Servicing, Nationstar, Wells Fargo, and BoNYM, seeking

28 disallowance of Proof of Claim No. 10, notwithstanding the fact that the Court already ruled in

2257484

BoNYM's favor in the original BoNYM Adversary Proceeding.  It is indisputable that the claims asserted in this adversary are prepetition claims that belong to the Estate.  The Trustee and BoNYM stipulated to stay this adversary proceeding [Adv. Doc. #22], which was approved by the Court [Adv. Doc. #23].  A status conference is presently scheduled for March 19, 2020 at 1:30 p.m., however the parties to this action contemplate further continuances to accommodate the Court's consideration of this Motion.

22.     Both Nationstar and BoNYM have made demands to the Trustee for recovery of their respective interests in the Disputed Funds.

23.     The Trustee disputes the amounts claimed by each of the Rental Lenders in their respective proofs of claim, which claims now include significant attorneys' fees and costs incurred in the Lender Litigation, among other things.  The Trustee also disputes the demands of the Rental Lenders to the Disputed Funds, and contends that the Estate has an interest in those funds as well.

24.     The Trustee has engaged, through counsel, in extended settlement negotiations with these Rental Lenders in an attempt to reach agreement on the amount of their claims and the interests of the Parties in and to the Disputed Funds, which negotiations ultimately resulted in the Agreement. *See* **Exhibit 1.**

## III.    SALIENT TERMS OF THE AGREEMENT

The salient terms of the Agreement are set forth below.  To the extent this description conflicts with the Agreement, the terms of the Agreement, **Exhibit 1**, shall control.

1.     **Effective Date.**  The effective date (the "Effective Date") of the Agreement shall be upon: (a) the full execution and delivery of the Agreement; and (b) entry of an order pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Approval Order") by the Bankruptcy Court thereby approving the terms and conditions of the Agreement.

2.     **Treatment of Nationstar.**  Upon the Effective Date, Nationstar and its claim shall have the following treatment:

a.     Claim: Nationstar shall have a fully allowed claim with a secured portion in the amount of $1,400,000.00 and an unsecured amount of $363,971.98.  The secured portion of the claim shall accrue interest in the amount of 3.5% as of the petition

2257484

date of February 1, 2012.  Within 14 days of the Effective Date, Nationstar will amend its proof of claim accordingly.

    b.  <u>Administrative Claim</u>: Nationstar shall have a fully allowed administrative claim in the amount of $44,211.75, representing post-petition, pre-conversion property tax advances (the "Nationstar Admin Claim").

    c.  <u>Payment of Disputed Funds</u>: The Trustee shall pay $73,854.10 of the Disputed Funds to Nationstar, which first shall be used to satisfy the Nationstar Admin Claim in full and then shall be applied to Nationstar's secured claim.

    d.  <u>Consent to Sale of Carmel Property</u>: The Trustee shall seek approval for the sale of the Carmel Property, and Nationstar shall consent to the Trustee's sale of the Carmel Property even if the sale price is insufficient to satisfy Nationstar in full. Furthermore, in the event the sale price is insufficient to net $75,000 for the benefit of the Estate, Nationstar agrees to a carve-out of its secured claim in an amount sufficient to provide the Estate with a net recovery of at least $75,000.

    e.  <u>Marketing of Carmel Property</u>: The Trustee shall market the Carmel Property for sale, using Heidi Robinson of Heidi Robinson Real Estate as the Estate's broker. The Trustee has already filed an application to employ Ms. Robinson [Doc. #1116].

    f.  <u>Nationstar Adversary Proceeding</u>: The Trustee will stipulate to judgment in the Nationstar Adversary Proceeding in Nationstar's favor.

    3.    **<u>Treatment of BoNYM</u>.** Upon the Effective Date, BoNYM and its claim shall have the following treatment:

    a.  <u>Claim</u>:  BoNYM shall have a fully allowed claim with a secured portion in the amount of $1,145,000.00 and an unsecured amount of $403,359.65.  The secured portion of the claim shall accrue interest in the amount of 3.5% as of the petition date of February 1, 2012.  Within 14 days of the Effective Date, BoNYM will amend its proof of claim accordingly.

10

b.  <u>Administrative Claim</u>:  BoNYM shall have a fully allowed administrative claim in the amount of $41,150.67, representing post-petition, pre-conversion property tax advances (the "BoNYM Admin Claim").

c.  <u>Payment of Disputed Funds</u>:  The Trustee shall pay $60,652.55 of the Disputed Funds to BoNYM, which first shall be used to satisfy the BoNYM Admin Claim in full and then shall be applied to BoNYM's secured claim.

d.  <u>Consent to Sale of Camarillo Property</u>:  The Trustee shall seek approval for the sale of the Camarillo Property, and BoNYM shall consent to the Trustee's sale of the Camarillo Property even if the sale price is insufficient to satisfy BoNYM in full.  Furthermore, in the event the sale price is insufficient to net $75,000 for the benefit of the Estate, BoNYM agrees to a carve-out of its secured claim in an amount sufficient to provide the Estate with a net recovery of at least $75,000.

e.  <u>Marketing of Camarillo Property</u>:  The Trustee shall market the Camarillo Property for sale, using a broker of his choice subject only to the consent of BoNYM.

f.  <u>Second BoNYM Adversary Proceeding</u>:  The Trustee will dismiss the Second BoNYM Adversary Proceeding with prejudice.  BoNYM will not be entitled to fees or costs, except as provided in its amended claim.

4.  **Treatment of Wells Fargo.** Upon the Effective Date, Wells Fargo shall have a fully allowed unsecured claim in the amount of $450,000.  Within 14 days of the Effective Date, Wells Fargo will amend its proof of claim accordingly.

5.  **Trustee Assignment of Claims to Respective Rental Lenders.**  In exchange for the concessions provided by each Rental Lender, the Trustee agrees to assign any and all claims of the Estate against each Rental Lender and all of the respective affiliates, whether known or unknown, arising out of the Rental Lenders' proofs of claim, the Rental Properties, or the Lender Litigation, and such assignment is made in good faith pursuant to 11 U.S.C. § 363(m) (collectively, the "Assignment").  Agreement, ¶¶ 4(f) (Nationstar); 5(e) (BoNYM); and 6(b) (Wells Fargo).

2257484

6.    **Mutual and General Releases.**  The Parties agree to mutual and general releases, including a waiver under California Civil Code § 1542, described fully in the Agreement.

For the reasons set forth herein, the Trustee respectfully requests that the Court grant this Motion and approve the Agreement as in the best interests of the Estate.

## IV.    THE COURT SHOULD APPROVE THE AGREEMENT PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

For the reasons discussed herein, the Trustee respectfully submits that the Agreement should be approved as in the best interests of the Estate and its creditors.

### A.    Legal Standard for Approval

Federal Rule of Bankruptcy Procedure 9019 provides that on motion by a Trustee, the Court may approve a compromise or settlement.  Fed. R. Bankr. P. 9019(a).  The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case.  *In re Walsh Construction, Inc.,* 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Woodson,* 839 F.2d 610, 620 (9th Cir. 1988); *In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986), *cert. denied*, 479 U.S. 854, 107 S. Ct. 189 (1986).

More specifically, a Court should review the following factors in considering whether to approve a proposed settlement: (a) The probability of success in the litigation; (b) the difficulty, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interests of the creditors and a proper deference to their reasonable views in the premises.  *Woodson, supra*, 839 F.2d at 620 (quoting *A&C Properties, supra*, 784 F.2d at 1381).  A settlement negotiated by a trustee, as a representative of the estate, is entitled to deference.  *In re Morrison*, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987).

The Court need not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised.  *In re Walsh Construction, Inc., supra*, 669 F.2d at 1328.  In fact, the Court need not decide the questions of law and fact raised in the controversies sought to be settled and need not determine whether the settlement presented is the best one that could possibly have been achieved.  Instead, the Court's responsibility is only to "canvass the issues

12

1  to see 'whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re*

2  *W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983), *cert. denied*, 464 U.S. 822 (1984) (quoting

3  *Newman v. Stein*, 464 F.2d 689, 698 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)).

4          The Trustee has the right to exercise reasonable business judgment in an effort to maximize

5  the value of the assets of the Estate.  So long as a proposed compromise results in a recovery above

6  the lowest point in the range of reasonable compromises, the Trustee should be authorized to

7  proceed with such compromise.  In light of the facts and circumstances in this case, the application

8  of the *A&C Properties* factors shows that the compromise set forth in the Agreement is fair and

9  equitable, is in the best interests of the Estate, and is well above the lowest point in the range of

10  reasonableness.

11          **B.**          **Application of the *A&C Properties* Factors Demonstrates that the Agreement**

12                          **Should be Approved**

13          The Trustee has sufficiently evaluated the Agreement and has compared the benefits of

14  entering into the Agreement as opposed to engaging in further litigation with the Parties. In

15  evaluating the Agreement, the Trustee has reviewed the numerous documents and information

16  available to him in this bankruptcy case, including all records of the Debtor turned over to date and

17  information received from the Parties, including the claims involved in the litigation. Based on his

18  evaluation, the Trustee has determined that entering into the Agreement is in the best interests of the

19  Estate because the Agreement is fair and equitable, is a reasonable and appropriate exercise of the

20  Trustee's business judgment, and will avoid the time, expense, and risk inherent in continued

21  litigation with the Parties on these issues.

22          The Trustee has evaluated the *A&C Properties* factors in exercising his business judgment as

23  to whether to enter into the Agreement and has concluded that under these factors, the Agreement

24  should be approved.

25                  1.  Probability of Success on the Merits

26          In this case, the relevant inquiry on the "probability of success" factor is twofold: (1) whether

27  the Trustee has legally cognizable grounds to object to the Rental Lenders' respective proofs of

28  claim or any portion thereof, and (2) whether Nationstar and BoNYM are truly owed the entirety of

2257484

1  the Disputed Funds or, whether by virtue of the conversion, the Estate has an interest in certain or all

2  of the Disputed Funds.  With regard to the proposed Assignment, the Court should also consider the

3  likelihood the Trustee would succeed on any affirmative claims against the Rental Lenders.  As

4  discussed below, the Trustee is not aware of any such affirmative claims.

5          As an initial matter, the Trustee and the Rental Lenders disagreed as to whether or not the

6  bifurcation of claims under the Plan survived the conversion of the case to chapter 7.  The Rental

7  Lenders asserted that it did not, and thus they had entirely secured claims.  The Trustee asserted that

8  the bifurcation of the Rental Lenders' claims survived conversion.  The treatment of the Rental

9  Lenders' claims in this case is dependent upon whether or not the bifurcation survived conversion of

10  the case and the Debtor's failure to consummate the Plan.  The Trustee believes that this issue alone

11  could involve extensive and expensive litigation as there is a paucity of case law on the issue.  In

12  exchange for the concessions made by the Trustee in the Agreement, the Rental Lenders agreed that,

13  as part of the settlement framework, the bifurcation of claims would continue post-conversion.  This

14  concession provides a significant net benefit to the Estate as it significantly reduces the secured

15  claims on the Rental Properties.

16          With respect to the validity of the proofs of claim, there is no question that, at one point in

17  time prepetition, the Debtor borrowed money to purchase the Henderson, Carmel, and Camarillo

18  Properties, and thereafter, the various original lenders sold the notes to other institutions, now in the

19  hands of the respective Rental Lenders.  On that basis, the Trustee sees no basis to reduce the

20  secured portion of the Rental Lenders proofs of claim (except as to Wells Fargo where the secured

21  portion of the claim has been satisfied).

22          The promissory notes contain provisions that allow the Rental Lenders to, among other

23  things, recover late fees, penalties, interest, and attorneys' fees for the Debtor's multitude of failures

24  to timely pay under the notes.  This Court ruled that, as to the Wells Fargo claim, upon prevailing in

25  litigation, the fees and costs incurred by Wells Fargo are properly included as part the unsecured

26  claim.  *In re Baroni*, 558 B.R. 916, 930 (Bankr. C.D. Cal. 2016), *aff'd* 558 B.R. 916, 930 (Bankr.

27  C.D. Cal. 2016).  The Agreement thus calls for these attorneys' fees and costs to be included with

28  the Rental Lenders' unsecured claims.  The Trustee does not believe continuing litigation with the

1    Rental Lenders to quibble over the amount of penalties, interest, and attorneys' fees is an appropriate

2    use of Court resources, Estate resources, or anyone else's resources for that matter, especially

3    considering the favorable result to the Estate if the Agreement is approved.

4            The Debtor spent years litigating against BoNYM and Wells Fargo, and did not prevail.  As

5    the Court is aware, even though BoNYM prevailed at trial in the BoNYM Adversary Proceeding,

6    and also prevailed at the BAP and at the Ninth Circuit, the Debtor filed the Second BoNYM

7    Adversary Proceeding on April 9, 2019 (the day this Court orally ordered her case converted) to

8    attempt to challenge the BoNYM Claim under a purported "different" legal theory having to do with

9    the bank's issuance of tax Form 1099.

10           This Court summed up the propriety of the Second BoNYM Adversary Proceeding during

11   the hearing on the Debtor's motion for reconsideration of the Conversion Order held on June 11,

12   2019.  In discussing why the Debtor's failure to make payments to BoNYM was nothing but a

13   material default under her Plan, the Court explained as follows:

14                    And I took note of the fact that [the Debtor], you know,
15           refused to comply with the terms of her own plan for close to six
             months [after the Supreme Court denied certiorari in the original
16           BoNYM Adversary Proceeding], during which time she never
             sought relief from this Court. . . .  Instead, she blew off her
17           obligation and so I was displeased, and I'm sure that's clear in the
             record, I reread it.
18
19                   But, part of my displeasure was that this was not the first
             time [the Debtor] has taken a position like that.  In my tentative
20           ruling from October 9, 2018, the first time this happened with a
             different creditor, it was a different excuse, I found that the failure
21           to timely remit the amounts due under the plan was a material
             breach.  So, yes, what was frustrating to me is that [the Debtor],
22           after having been through this once before, it had to be made clear
             that she is under a legal obligation, the plan creates legal
23           obligations under the risk of dismissal or conversion, that she did it
             again. . . .
24
25                   In retrospect, I probably should have converted the case
             then because the conduct justified it.  But, hope springs eternal and
26           I thought that would be the end of it.

27                   It happened again.  But, again, I carefully considered the
28           1099 issue and did not believe that that substantially justified her
             refusal to pay.  There was an issue with the IRS, an issue about,
             you know, what the extent of the discharge was. You know, abide

1
2
3

by your obligation under the plan and litigate later. But, instead, she and her prior lawyer I think were playing games. And I say playing games because, again, I found the 1099 explanation without any merit.

4   Transcript of Hearing on Debtor's *Motion for Reconsideration Pursuant to FRCP 60(b) and Motion*

5   *for New Trial Pursuant to FRCP 59(a) of Court's Order Converting Case to Chapter 7*, June 11,

6   2019 [Doc. #1013], pp. 13-17.

7          While this Court has not entered judgment in the Nationstar Adversary Proceeding, the

8   Trustee, having reviewed the filings and post-trial briefs in the case, believes, in his reasonable

9   judgment, that there is a high probability that the same result will occur in that action as well.

10  However, in order to account for the risk of litigation, the Trustee negotiated a 10% discount with

11  Nationstar on the amount of its unsecured claim (from $404,413.31 to $363,971.98).

12         Finally, as to the Wells Fargo proof of claim, Wells Fargo has asserted that it has, including

13  its accrued attorneys' fees and costs, an unsecured claim of $839,944.84. Wells Fargo asserts that

14  the pre-petition sale of the Henderson Property and satisfaction of the secured portion of the claim

15  did not release the unsecured claim because Wells Fargo's claim was bifurcated under the Plan. The

16  Trustee has negotiated a reduction of this claim by nearly 50%, to $450,000.00. The Trustee

17  believes this reduction fairly represents the risk of litigation to both the Trustee and Wells Fargo.

18         In other words, the Trustee is not confident that this Court will set aside any of the Rental

19  Lenders' claims under any legal theory. As the Ninth Circuit explained (cited above), these lending

20  institutions held the notes as of the petition date, and are thus entitled to enforce them in this

21  bankruptcy case.

22         Turning to the Disputed Funds, the Trustee recognizes that the Debtor set up reserve

23  accounts pursuant to the Plan, and paid money into those reserve accounts for the benefit of the

24  Rental Lenders. The Rental Lenders allege that under the Plan, and as of the date of conversion, the

25  Debtor owed $295,416.43 to Nationstar under the Nationstar POC and $242,610.18 to BoNYM

26  under the BoNYM POC, and that they are entitled to payment of these arrears from the Disputed

27  Funds. The Rental Lenders assert that the Disputed Funds are trust funds that are exempt from the

28  Estate under 11 U.S.C. § 541(d) as the Plan provides that the funds were to be "held in trust for the

16

1  allowed claim holder." *See*, Section X.c of the Plan. Therefore, the Rental Lenders claim entitlement

2  to the entirety of the Disputed Funds.  The Debtor provided little to no tracing of the Disputed Funds

3  when she turned over the funds to the Trustee, thus the Trustee is not certain whether the entirety of

4  those funds in fact belong to the Rental Lenders.  However, as part of their consideration under the

5  Agreement, the Rental Lenders have agreed to release their claims to all but 25% of the Disputed

6  Funds turned over to the Trustee.  By the Agreement, the Estate retains $398,800.97 of the

7  $533,307.62 in Disputed Funds, which will be used for the benefit of unsecured creditors.

8  Given this large concession to the Estate, it does not appear prudent to litigate with the

9  Rental Lenders over tracing of the Disputed Funds, given that, even if the Estate were truly entitled

10  to a portion of the Disputed Funds, in the meantime litigation related to the Rental Lenders'

11  respective claims would continue to accrue interest and penalties, thus reducing any net benefit to

12  the Estate.  Further, there is substantial risk that the Rental Lenders would prevail in their argument

13  and, in doing so, deprive the Estate of $398,800.97 of cash on hand.  Thus, litigation over the tracing

14  of Dispute Funds is unlikely to result in a higher recovery to the Estate than the Agreement already

15  provides.

16      2.  <u>Difficulty in Collection</u>

17  Although the Trustee is not aware of any difficulties in collection with respect to the

18  proposed Assignment of Estate claims to the respective Rental Lenders, the Trustee is also not aware

19  of any claims the Estate holds against any of the Rental Lenders.

20  The Trustee does not believe collectability is a factor the Court should consider in approving

21  the remainder of the Agreement.  The issue before the Court is treatment of secured, unsecured, and

22  postpetition administrative claims, and allocation of funds in the Trustee's possession (*i.e.*, the

23  Disputed Funds).

24      3.  <u>Complexity, Expense, and Inconvenience of Litigation</u>

25  The complexity, expense, and inconvenience of continuing litigation with the Rental Lenders

26  weighs in favor of approving the Agreement.  In potentially litigating with the Rental Lenders over

27  the ultimate amounts of their respective secured claims, and challenging the validity of the various

28  penalties, interest, attorneys' fees, and other charges, the Trustee anticipates that discovery will be

2257484

inconvenient when compared to the benefits the Agreement provides to the Estate.  While the factual issues presented here are not particularly complex, the Estate would bear the cost of such litigation without any guaranteed benefit.

If the Rental Lenders each prevail in establishing the validity of their entire claims, liquidation of the Rental Properties would not provide any value to the Estate and would likely be foreclosed upon by the Rental Lenders (except for the Henderson Property, which the Debtor already sold), rendering this essentially a no-asset case.  Thus, the expense and inconvenience of litigation factored into the Trustee's decision to enter in to the Agreement as opposed to continuing to litigate with any of the Rental Lenders.

### 4.   Paramount Interests of Creditors

The Trustee believes that approval of the Agreement is in the best interests of creditors because it provides for, among other things, significant discounts on the respective secured claims of the Rental Lenders, which enables the Trustee to realize benefit for the Estate from the sale of the Rental Properties.  The carve-outs from Nationstar and BoNYM ensure the Estate will receive a minimum of $150,000 directly from the sales of the Carmel and Camarillo Properties, and the Estate will likely receive significantly more than that given the concessions made on the secured portions of Nationstar's and BoNYM's claims.

With respect to Wells Fargo, given that Wells Fargo is consenting to be treated as an unsecured creditor in this case, the Trustee is entitled to retain the entirety of the Henderson Sale Proceeds ($315,078.12, of which the Trustee currently holds $59,511.12 subject to entry of an order on the Turnover Motion) for the benefit of the Estate.

In addition, the Agreement provides that the Trustee shall retain the majority of the Disputed Funds for the benefit of the Estate (just under $400,000).  If the Agreement were not approved and the Trustee was forced to litigate over the Disputed Funds, there is a risk that all of the Disputed Funds would be paid to the respective Rental Lenders, with nothing left for the Estate or its creditors.

Finally, as noted above the Trustee submits that approval of the global Agreement now provides greater benefit to the Estate than forcing the Trustee to separately negotiate with each

2257484

Rental Lender over the course of this chapter 7 case.  Unless this Agreement is approved, the Trustee

cannot liquidate the Rental Properties for the benefit of this Estate.  With respect to the Carmel

Property, the tenants recently vacated, thus the Trustee is presently faced with either re-letting the

Carmel Property or selling the Carmel Property to avoid further increases to the secured obligation

owed to Nationstar. The Camarillo Property is still rented to the current tenants, however approval of

the Agreement ensures that the Trustee will also be able to sell the Camarillo Property (defined

below) at the appropriate time and allow for net proceeds to remain with the Trustee for the benefit

of the Estate.  In short, the Agreement provides certainty that the Trustee will be able to make a

meaningful distribution to creditors in this case.

## V.   **The Court Should Approve the Assignment and Grant the Rental Lenders**

   **Protection Under 11 U.S.C. § 363(m)**

As consideration for the concessions given by each Rental Lender with respect to the Lender

Litigation, the Agreement provides an assignment of any and all claims the Estate may have against

each respective Rental Lender, which Assignment is intended to be as broad as possible, and binds

the Estate, the Debtor, and any successors thereto, and provides a good faith finding under section

363(m) to each Rental Lender and its affiliates.  *See* Agreement, ¶¶ 4(f) (Nationstar);

5(e) (BoNYM); and 6(b) (Wells Fargo).  The proposed Assignment is a material term of the

Agreement, and the Trustee submits it is appropriate under the circumstances of this case, in order to

maximize value of the Estate's real property assets.

Although the Bankruptcy Code does not define "good faith," courts have provided guidance

as to the appropriate factors to consider.  *See, In re Pine Coast Enterprises, Ltd*., 147 B.R. 30, 33

(Bankr. N.D. Ill. 1992) ("The requirements that a purchaser act in good faith speaks to the integrity

of its conduct in the course of the sale proceeding."); *Kham and Nate's Shoes No.2 v. First Bank*,

908 F.2d 1351, 1355 (7th Cir. 1990) (The purpose of § 363(m) is to disable courts from backtracking

on promises with respect to bankruptcy sales in the absence of bad faith).  *In re T.C. Investors, et al.*

*v. Joseph, et al. (In re M Capital Corp.)*, 290 B.R. 743 (9th Cir. BAP 2003), the Bankruptcy

Appellate Panel held that a bankruptcy court may not make a finding of good faith in the absence of

evidence, but may make such a finding if appropriate evidence is presented.  290 B.R at 746-747.

2257484

While assignments are most often considered in the context of 363 sales, where, as here, the proposed Assignment amounts to an acquisition of causes of action by the potential target defendants (*i.e.*, each of the Rental Lenders), the Court should treat such Assignment as a compromise of controversy under Rule 9019 of the Federal Rules of Bankruptcy Procedure. *See In re Fitzgerald*, 428 B.R. 872, 884 (9th Cir. BAP 2010) ("when a sale amounts to an acquisition of causes of action by a potential defendant, it must also be analyzed as a compromise for which the court has an independent duty to determine whether it is 'fair and equitable'") (citing *In re Lahijani,* 325 B.R. 282, 290 (9th Cir. BAP 2005)).

Here, the Trustee is not aware of any affirmative claims against the Rental Lenders, and submits that while the Debtor may disagree, there is no evidence any of the Rental Lenders have behaved in bad faith in this bankruptcy case. The Trustee, through counsel, engaged in good faith and arms' length negotiations with each of the Rental Lenders, which negotiations ultimately resulted in the terms of the Agreement. The Trustee believes the proposed Assignment is fair consideration for the discounts provided on the Rental Lenders' secured claims, and for the releases provided to the Estate by the Rental Lenders, including with respect to the remaining Disputed Funds. It is certainly well above the lowest range of reasonable outcomes, and is thus a proper exercise of the Trustee's business judgment. Accordingly, and for the reasons discussed above in the Trustee's analysis of the *A&C Properties* factors regarding the entirety of the Agreement, the Trustee respectfully submits that the proposed Assignment is a proper term of the Agreement that should be granted, and the Rental Lenders should each be afforded protection under 11 U.S.C. § 363(m).

## VI.    CONCLUSION

Based on the foregoing, the Trustee respectfully requests that the Court enter an order granting the Motion and:

1.    Approving the Agreement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure;

2.    Approving the Assignment and providing good faith findings to Nationstar, BoNYM, and Wells Fargo pursuant to 11 U.S.C. § 363(m);

2257484

1        3.     Authorizing the Trustee to execute any documents or take any actions reasonably

2 necessary to effectuate the terms of the Agreement; and

3        4.     Granting such other and further relief as this Court may deem just and proper.

4 Dated: February 21, 2020             BRUTZKUS GUBNER

5

6                                          By:   /s/ Susan K. Seflin

7                                            Susan K. Seflin

8                                            Attorneys for David Seror, Chapter 7 Trustee

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID SEROR

I, David Seror, declare:

1.    I am the duly appointed and acting Chapter 7 Trustee for the bankruptcy estate ("Estate") of Allana Baroni (the "Debtor").  Unless indicated otherwise, I have personal knowledge of the facts contained herein, or have gained such knowledge from my review of records I normally maintain as Trustee, and if called as a witness, I could and would competently testify to these facts under oath.

2.    I make this declaration in support of the motion (the "Motion") to which it is appended.  Any capitalized terms used but not defined in this declaration shall have the same meaning ascribed to them in the Motion.

3.    The Motion seeks entry of an order approving that certain Rental Lenders Settlement Agreement and Release (the "Agreement") substantially in the form as attached hereto as **Exhibit 1**. While I do not believe that there will be any additional changes to the Agreement, since it has not yet been executed by all Parties, it is possible that there may be minor changes to the Agreement.  To the extent there are any changes to the Agreement after the filing of the Motion but before the hearing on the Motion, I will file such revised Agreement.

4.    On June 19, 2019, the Debtor turned over to me $533,307.62 in funds she alleges were segregated under the Plan for Nationstar and BoNYM (the "Disputed Funds"). I was informed by the Debtor that the Disputed Funds consist of $294,377.66 owed by the Debtor to Nationstar on the Carmel Property and $238,929.96 owed by the Debtor to BoNYM on the Camarillo Property. The Rental Lenders have informed me that as of the date of conversion, the Debtor owed $295,416.43 to Nationstar and $242,610.18 to BoNYM, and that they are entitled to payment of these arrears from the Disputed Funds (even though the Disputed Funds are less than the total amount the Rental Lenders allege that they are owed).

5.    The Henderson Property was listed on the Debtor's Schedule A [Doc. #19] as an asset of this Estate.  Post-conversion, the Debtor testified at the initial 341(a) meeting that she sold the Henderson Property to an unrelated party for $550,000 in March of 2019 (*i.e.,* at the same time BoNYM's Motion to Convert was pending, but prior to entry of the Conversion Order).  The Debtor

2257484

further testified at the 341(a) meeting that there was approximately $350,000 in proceeds from the sale of the Henderson Property (the "Henderson Sale Proceeds") which were being held in her husband's bank account.  Thereafter the Debtor testified that she spent certain of the Henderson Sale Proceeds on various personal and living expenses.

6.    On June 26, 2019, I filed my *Motion for (1) Turnover of Property of the Estate, and (2) Order Compelling Debtor to Comply with Bankruptcy Rule 1019 and Local Bankruptcy Rules 2015-2(c) and 3020-1(d)* [Doc. #991] (the "Turnover Motion"), pursuant to which I sought entry of a Court order directing turnover of the Henderson Sale Proceeds, rent proceeds from the Camarillo and Carmel Property, and other relief.

7.    The Debtor contested the Turnover Motion, and also filed a motion to dismiss the bankruptcy case [Doc. #989] (the "Motion to Dismiss").  After additional briefing and two hearings, on August 30, 2019, the Court entered its *Interim Order Directing Turnover of Property of the Estate* [Doc. #1057] (the "Interim Turnover Order"), pursuant to which the Court ordered (a) that the Camarillo Property, the Carmel Property and the Calabasas Property constitute property of the bankruptcy estate, and (b) that the Debtor shall turnover the aforementioned properties and all rents and proceeds derived from the Camarillo Property and the Carmel Property to me, including those sums then held by the Debtor's attorneys.

8.    The Interim Turnover Order only partially addressed turnover of the Henderson Sale Proceeds; specifically, it ordered turnover of $59,511.12 of the Henderson Sale Proceeds.

9.    In connection with subsequent briefing, I produced evidence that the Debtor received $315,078.12 from the sale of the Henderson Property on or about March 26, 2019. The Debtor did not dispute this evidence and withdrew her initial objection to the same. *See* Doc. #1100.

10.    I caused proposed findings of fact and conclusions of law regarding the Turnover Motion (and on the Debtor's motion to dismiss) to be lodged on September 13, 2019. *See* Doc. #1069.  Counsel for the Debtor and my counsel disputed certain provisions of the proposed turnover findings, most of which have been resolved in subsequent briefing. *See, e.g.,* Doc. ##1100 (filed Nov. 1, 2019); 1108 (filed Nov. 20, 2019).  To date, the Court has not entered the proposed order or findings related to the Turnover Motion.  Thus, I do not yet have an order declaring the remainder of

23

2257484

the Henderson Sale Proceeds (or approximately $255,567) to be property of the Estate and directing

turnover of same.

11.    On December 9, 2019, the Court entered its *Order Granting the Trustee's Motion for Order Authorizing Trustee to Operate Real Property Effective September 19,2019* [Doc. #1110] (the "Operate Order"), pursuant to which the Court ordered that (a) I am authorized to operate the Camarillo Property and the Carmel Property (collectively, the "Rental Properties") effective September 9, 2019 through September 9, 2020, (b) in accordance with such operation, I am authorized to collect rents directly from the tenants of the Rental Properties, pay expenses including but not limited to homeowners' association dues and assessments and gardening services, and (c) I am authorized to make periodic mortgage and property tax payments if, in his business judgment, it is appropriate to do so.  The Operate Order is a final order.

12.    In accordance with my duties under 11 U.S.C. § 704(a)(1) to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest," I have been diligently attempting to resolve all disputes with the creditors whose claims are and/or were secured by the Real Properties.

13.    It is my understanding that the Debtor commenced most of the Lender Litigation in 2013, and litigated with each secured creditor over the course of the last six years regarding the validity of their respective secured claims (with respect to BoNYM, in two separate adversary proceedings).  It is my understanding that the claims involved in the Lender Litigation are prepetition claims, brought originally by the Debtor in her chapter 11 case in an attempt to challenge the secured status of the claims against her various Real Properties.  Now that the case is in chapter 7, I am the sole real party in interest with authority to litigate and resolve these claims.

14.    The status of each action is as follows:

    a.    The Nationstar Adversary Proceeding: trial was held before the Court in this matter in October 2018 and a ruling has not yet been issued.  There is a post-trial status conference scheduled for March 5, 2020;

    b.    The BoNYM Adversary Proceeding: this Court granted BoNYM summary judgment on January 20, 2016, which the Debtor appealed.  The BAP and Ninth Circuit both

2257484

affirmed the summary judgment.  The Debtor filed a writ of certiorari with the United

States Supreme Court, which was denied on October 9, 2018.  The mandate has been

returned to this Court;

c.  The Wells Fargo Adversary Proceeding: this Court granted Wells Fargo summary

judgment on December 5, 2014, which the Debtor appealed.  Separately, the Court

granted Wells Fargo recovery of attorneys' fees and costs.  The BAP and Ninth

Circuit affirmed.  The mandate has been returned to this Court; and

d.  The Second BoNYM Adversary Proceeding:  on April 9, 2019, the Debtor filed this

new adversary proceeding against Specialized Loan Servicing, Nationstar, Wells

Fargo, and BoNYM, seeking disallowance of Proof of Claim No. 10, notwithstanding

the fact that the Court already ruled in BoNYM's favor in the original BoNYM

Adversary Proceeding.  I believe that the claims asserted in this adversary are

prepetition claims that belong to the Estate.  BoNYM and I stipulated to stay this

adversary proceeding [Adv. Doc. #22], which was approved by the Court [Adv. Doc.

#23].  A status conference is presently scheduled for March 19, 2020 at 1:30 p.m.

15.    Both Nationstar and BoNYM have made demands to me for payment of their

respective interests in the Disputed Funds.  I dispute the amounts claimed by each of the Rental

Lenders in their respective proofs of claim, which now include significant attorneys' fees and costs

incurred in the Lender Litigation, among other things.  I also dispute the demands of the Rental

Lenders to the Disputed Funds, and contends that the Estate has an interest in those funds as well.

16.    I have engaged, through counsel, in extended settlement negotiations with the Rental

Lenders in an attempt to reach agreement on the amount of their claims and the interests of the

Parties in and to the Disputed Funds, which negotiations ultimately resulted in the Agreement.  *See*

**Exhibit 1.**

17.    The Agreement, if approved by the Court, resolves all pending disputes and litigation

existing among the Parties, which includes the four pending adversary proceedings before this Court.

In addition to resolving substantial pending litigation, the Agreement also provides for discounts on

the secured claims of each Rental Lender, which discounts inure to the benefit of the Estate as a

2257484

1   whole, and facilitates the liquidation of the Estate's real property assets.  The Agreement further

2   provides for the Estate to retain approximately 75% of the Disputed Funds.

3       18.      The Agreement provides a mechanism that not only allows me to liquidate Estate

4   assets for the benefit of the Estate in an expeditious manner but it also resolves the Lender Litigation

5   without the expenditure of Estate funds.  Approval of the Agreement enables me to settle

6   simultaneously with all three Rental Lenders, as opposed to settling in a piecemeal manner

7   throughout the bankruptcy case which would undoubtedly lead to increased fees and costs in this

8   case.

9       19.      The Agreement is the product of arm's length negotiations and my analysis of the

10  various pending disputes regarding the validity of the secured claims.

11      20.      In analyzing the reasonableness of the Agreement, I considered the four factors

12  established by the Ninth Circuit in the *A & C Properties* case, including: (1) probability of success in

13  litigation; (2) the difficulties, if any, to be encountered in the matter of collection; (3) the complexity

14  of the litigation and the expense, inconvenience and delay attending it; and (4) the paramount

15  interests of creditors. My analysis in this regard follows in the paragraphs below.

16      21.      <u>Probability of Success on the Merits.</u>  As set forth in detail in the Motion, at this point

17  in this case with respect to (a) whether bifurcation of the Rental Lenders' claims survived

18  conversion, (b) ownership of the Disputed Funds and whether or not they were "trust funds"

19  pursuant to the Plan, (c) the validity of the Rental Lenders' claims and (d) the merits of the Lender

20  Litigation, the probability of success on the merits is complicated and unclear.  The amount of

21  extensive and expensive litigation that would need to occur in order to come to a resolution of all the

22  disputes between the Parties would likely be a huge burden on this Estate as the Rental Lenders'

23  costs of litigation is likely to become additional liabilities of this Estate.  The promissory notes

24  contain provisions that allow the Rental Lenders to, among other things, recover late fees, penalties,

25  interest, and attorneys' fees for the Debtor's multitude of failures to timely pay under the notes. I do

26  not believe that continuing litigation with the Rental Lenders is an appropriate use of Court

27  resources, Estate resources, or anyone else's resources for that matter, especially considering the

28  favorable result to the Estate if the Agreement is approved.  Furthermore, while the Rental Lenders

2257484

claim entitlement to the entirety of the Disputed Funds, by the Agreement, the Estate retains

$398,800.97 of the $533,307.62 in Disputed Funds, which will be used for the benefit of unsecured

creditors.  I believe that there is substantial risk that the Rental Lenders could prevail in their

argument with respect to the Disputed Funds and, in doing so, deprive the Estate of $398,800.97 of

cash on hand.  Based on my business judgment, I believe that the risks associated with further

litigation are greatly outweighed by the numerous benefits provided to the Estate by the Agreement.

22.    <u>Difficulty in Collection</u>.  I am not aware of any difficulties in collecting as I am in

possession of the Disputed Funds, and I am not aware of any claims that the Estate holds against any

of the Rental Lenders (other than those previously alleged and litigated unsuccessfully by the

Debtor).

23.    <u>Complexity, Expense, and Inconvenience of Litigation</u>.  The issues regarding (a)

whether bifurcation of the Rental Lenders' claims survived conversion, (b) ownership of the

Disputed Funds and whether or not they were "trust funds" pursuant to the Plan, (c) the validity of

the Rental Lenders' claims and (d) the merits of the Lender Litigation are factually and legally

complex.  I believe that continued litigation of these matters will undoubtedly be extremely costly to

the Estate.  The Estate may likely end up bearing all costs associated with continued litigation

including depositions, expert witnesses, discovery and trial preparation.

24.    <u>Paramount Interests of Creditors.</u>  The Estate will bear the costs associated with the

continued litigation of these matters.  The Parties have been negotiating for months and finally were

able to settle as set forth in the Agreement.  If all of the matters at issue herein were litigated, the

amount expended in legal fees and Estate resources, coupled with the considerable risks associated

with litigation, would be significant.  I believe that that approval of the Agreement is in the best

interests of creditors because it provides for, among other things, significant discounts on the

respective secured claims of the Rental Lenders, which enables the Estate to realize benefit from the

sale of the Rental Properties.  The carve-outs from Nationstar and BoNYM ensure the Estate will

receive a minimum of $150,000 directly from the sales of the Carmel and Camarillo Properties, and

the Estate will likely receive significantly more than that given the concessions made on the secured

portions of Nationstar's and BoNYM's claims.  In addition, the Agreement provides that the Estate

1  shall retain the majority of the Disputed Funds (just under $400,000). If the Agreement were not

2  approved and I was forced to litigate over the Disputed Funds, there is a risk that all of the Disputed

3  Funds would be paid to the respective Rental Lenders, with nothing left for the Estate or its

4  creditors.

5      25.    The Agreement is the product of arms-length negotiations between disinterested

6  parties. Based on the foregoing, it is my opinion that the Agreement is fair, reasonable, in the best

7  interests of the Estate and creditors, and should be approved.

8      26.    For these reasons, I respectfully request that the Court approve the Agreement as in

9  the best interests of the Estate.

10     I declare under penalty of perjury under the laws of the United States of America that the

11  foregoing is true and correct.

12     Executed this 21st day of February, 2020, at Woodland Hills, California.

13

14     _____

15                 David Seror

16

17

18

19

20

21

22

23

24

25

26

27

28

28

### RENTAL LENDERS SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into by Nationstar Mortgage LLC dba Mr. Cooper ("Nationstar"), The Bank Of New York Mellon F/K/A The Bank Of New York Successor Trustee To JPMorgan Chase Bank, N.A., As Trustee For The Structured Asset Mortgage Investments II Trust, Mortgage Pass-Through Certificates, Series 2006-AR6 ("BoNYM"), Wells Fargo Bank, N.A. As Trustee For Structured Adjustable Rate Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-17 ("Wells Fargo"), (collectively, the "Rental Lenders"), and David Seror, Chapter 7 Trustee ("Trustee").  Nationstar, Wells Fargo, BoNYM, and Trustee are collectively referred to as "Parties" and may be referred to individually as "Party."

### RECITALS

A.    On February 1, 2012, Allana Baroni ("Debtor") filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Central District of California as case no. 1:12-bk-10986-MB (the "Bankruptcy Case").   The case was converted to one under Chapter 11 on February 29, 2012.

B.    Nationstar is the claimant for proof of claim 9 in the Bankruptcy Case (the "Nationstar POC",) which represents a mortgage loan secured by the real property located at 3435 Rio Road, Carmel, CA 93921 (the "Carmel Property").  Nationstar acts as servicer of this claim on behalf of U.S. Bank National Association, not in its individual capacity but solely as Trustee of NRZ Pass-Through Trust X ("U.S Bank").

C.    BoNYM is the claimant for proof of claim 10 in the Bankruptcy Case (the "BoNYM POC"), which represents a mortgage loan secured by the real property located at 5390 Plata Rosa Court, Camarillo, CA (the "Camarillo Property").  This loan is currently serviced by Nationstar.

D.    Wells Fargo is the claimant for proof of claim 7 in the bankruptcy case (the "Wells Fargo POC"), which represents a mortgage loan that was secured by the real property located at 2240 Village Walk Dr., Unit 2311, Henderson NV 89052 (the "Henderson Property"). This loan is currently serviced by Nationstar.

E.    On April 15, 2013, Debtor confirmed her Chapter 11 plan (the "Plan").  Under the Plan, the Debtor disputed certain claims, including those of creditors holding secured claims against four parcels of real properties.  The Plan provided that the Debtor would make payments into a reserve account (the "Reserve Account Payments") pending litigation with the disputed secured creditors.

F.    On April 3, 2013, Debtor filed an adversary proceeding against Nationstar, entitled *Allana Baroni v. Nationstar Mortgage LLC*, as case number 1:13-ap-01069-MB (the "Nationstar Adversary Proceeding").  The Nationstar Adversary Proceeding remains active and has not yet been resolved.

**Exhibit 1_001**

G.      On April 3, 2013, Debtor filed an adversary proceeding against BoNYM, entitled *Allana Baroni v. The Bank of New York Mellon FKA The Bank of New York, As Successor Trustee, etc.*, as case number 1:13-ap-01072-MB (the "First BoNYM Adversary Proceeding"). On January 20, 2016, the Bankruptcy Court entered summary judgment in favor of BoNYM and against Debtor as to each cause of action brought in the adversary proceeding.  All appeals raised by Debtor have been finally resolved in BoNYM's favor.

H.      On April 3, 2013, Debtor filed an adversary proceeding against Wells Fargo, entitled *Allana Baroni v. Wells Fargo Bank, N.A., as Trustee, etc.*, as case number 1:13-ap-01071-MB (the "Wells Fargo Adversary Proceeding").  On December 5, 2014, the Bankruptcy Court entered summary judgment in favor of Wells Fargo and against Debtor as to each cause of action brought in the adversary proceeding.  All appeals raised by Debtor have been finally resolved in Wells Fargo's favor.

I.      On April 9, 2019, Debtor filed another adversary proceeding against BoNYM, Specialized Loan Servicing, LLC, Wells Fargo Bank, N.A., and Nationstar, entitled *Allana Baroni v. Specialized Loan Servicing, et al*, as case number 1:19-ap-01037-MB (the "Second BoNYM Adversary Proceeding").  The matter was stayed until February 14, 2020 with a status conference scheduled for March 19, 2020, with the deadline to respond to the complaint 30 days from lifting of the stay.

J.      On April 29, 2019, the Bankruptcy Court entered an order converting the Bankruptcy Case to one under Chapter 7.

K.      On April 30, 2019, Trustee was appointed as representative of the Chapter 7 bankruptcy estate of Debtor (the "Estate").

L.      Subsequent to conversion of the case, Debtor turned over $533,307.62 (the "Disputed Funds") to Trustee which Debtor alleges represent the Reserve Account Payments that she reserved with respect to the secured creditors on the Carmel Property and the Camarillo Property under the Plan.  The Trustee is informed by the Debtor that the funds consist of $294,377.66 owed by the Debtor to Nationstar on the Carmel Property and $238,929.96 owed by the Debtor to BoNYM on the Camarillo Property.  The Rental Lenders allege that under the Plan, and as of the date of conversation, Debtor owed $295,416.43 to Nationstar under the Nationstar POC and $242,610.18 to BoNYM under the BoNYM POC, and that they are entitled to payment of these arrears from the Disputed Funds.

M.      On November 15, 2019, the Trustee filed a Notice of Asset Case.

N.      Trustee disputes the amounts claimed by each of the Rental Lenders in their respective proofs of claim, the demands of the Rental Lenders to the Disputed Funds, and the liability of the Rental Lenders in the respective adversary proceedings.

O.      Notwithstanding, the Parties wish to resolve this dispute in a timely and cost-effective manner, and wish to avoid the time, expense, uncertainty and burden of litigation.

NOW, THEREFORE, in consideration of the mutual promises and covenants set forth below, the Parties hereby agree as follows:

**Exhibit 1_002**

## **AGREEMENT**

1.  Incorporation of Recitals.
     Each of the above recitals is incorporated herein and deemed to be the agreement of the Parties and is relied upon by each Party in agreeing to the terms of this Agreement.

2.  No Admission of Liability.
     This Agreement does not constitute any admission of liability or concession of the merit of any claim by any Party, but is entered into by and between the Parties solely for the purpose of settling disputed claims and to avoid the expense and uncertainty of further litigation.  The Parties to this Agreement believe it is in their respective best interests to settle their differences, without acknowledging the validity of the claims made, or otherwise, in an effort to avoid the additional expense of litigation.  This Agreement shall not be construed as, or be deemed evidence of, a waiver of any applicable statute of limitations, defense, or plea in abatement.

3.  Approval by Bankruptcy Court.

     This Agreement shall not be effective until an order is entered by the Bankruptcy Court approving the Agreement.  Trustee shall promptly seek such approval.  While any motion or application for approval is pending, the Parties shall take no act inconsistent with this Agreement.

4.  Treatment of Nationstar

     a.    Nationstar shall have a fully allowed claim with a secured portion in the amount of $1,400,000.00 and an unsecured amount of $363,971.98.  The secured portion of the claim shall accrue interest in the amount of 3.5% as of the petition date of February 1, 2012.  Nationstar will amend the Nationstar POC reflecting these terms within 14 days of the latter of: (i) full execution of this Agreement; and (ii) entry of an order by the Bankruptcy Court approving the terms of this Agreement.

     b.    Nationstar shall have, upon entry of an order by the Bankruptcy Court approving this Agreement, a fully allowed administrative claim in the amount of $44,211.75, representing post-petition, pre-conversion property tax advances.  This Administrative Claim is without prejudice to an additional or increased administrative claim for future property taxes and/or other appropriate administrative expenses paid by or for Nationstar in connection with the Carmel Property, whether before or after application of the Disputed Funds as provided immediately below.

     c.    Trustee shall turn over $73,854.10 of the Disputed Funds to Nationstar, which Nationstar shall apply first to its administrative claim, with the rest applied to its secured claim.  Nationstar shall release any claim of legal or equitable title to the remainder of the Disputed Funds, but said release shall not extend to any right to distribution of the Disputed Funds as Estate property under 11 U.S.C. § 726.

**Exhibit 1_003**

d.  Trustee shall market and sell the Carmel Property in a section 363 sale, free and clear of liens, for the best and highest commercially reasonable offer. Nationstar shall consent to the sale in the event the sale price is not sufficient to fully satisfy Nationstar's secured claim.  In the event that the sale price, after payment of costs and liens, is insufficient to net the Trustee $75,000.00, Nationstar will agree to a carve-out of its secured claim in an amount sufficient to provide a net recovery of $75,000.00 to the Trustee.

e.  Trustee shall retain Heidi Robinson of Heidi Robinson Real Estate as the realtor for the sale of the Carmel Property.  In the event that Ms. Robinson will not agree to act as realtor for the Carmel Property, or the Bankruptcy Court does not approve her employment, then Nationstar and Trustee shall jointly select an alternative realtor for the Carmel Property.  Nationstar shall have the right to receive independent reports from Ms. Robinson, or any alternate realtor, regarding her efforts to market and sell the Carmel Property.

f.  In consideration for the concessions made by Nationstar in this Agreement, Trustee will assign to Nationstar all claims, actions, causes of action, offsets or liabilities, whether known or unknown, suspected or unsuspected, contingent or matured, held by the Estate against Nationstar, U.S. Bank (both in it is individual and representative capacity), New Residential Investment Corp., and each parent, subsidiary, affiliate, predecessor, successor, officer, director, insurer, employee, agent, nominee, representative, and attorney of each, along with any claims whatsoever, against any individual or entity, arising out of or relating to the Nationstar POC, the loan out of which the Nationstar POC arises, the Carmel Property, and the Nationstar Adversary Proceeding (the "Nationstar Claims").  Trustee will seek, in the motion for approval of this Agreement, a determination by the Bankruptcy Court that this sale via assignment of the Nationstar Claims was made in good faith as defined by 11 U.S.C. § 363(m).  To the extent any of the Nationstar Claims cannot legally be assigned, Trustee releases those Nationstar Claims such that they are extinguished with no further recourse.  It is the intent of the Parties that the assignment and release of the Nationstar Claims in this paragraph be construed as broadly as possible such that all disputes arising out of the Nationstar POC or the underlying loan are fully resolved and the Nationstar Claims may not later be raised by Debtor or any successor in interest of Debtor.

g.  Trustee will stipulate to judgment in the Nationstar Adversary Proceeding in Nationstar's favor and otherwise take any necessary steps to have the Nationstar Adversary Proceeding fully resolved on terms consistent with this settlement.  Nationstar shall not be entitled to, upon entry of judgment, fees and costs except as already provided for in the amended Nationstar POC.

**Exhibit 1_004**

5.      Treatment of BoNYM

   a.      BoNYM shall have a fully allowed claim with a secured portion in the
           amount of $1,145,000.00 and an unsecured amount of $403,359.65.  The
           secured portion of the claim shall accrue interest in the amount of 3.5% as of
           the petition date of February 1, 2012.  BoNYM will amend the BoNYM POC
           reflecting these terms within 14 days of the latter of: (i) full execution of this
           Agreement; and (ii) entry of an order by the Bankruptcy Court approving the
           terms of this Agreement.

   b.      BoNYM shall have, upon entry of an order by the Bankruptcy Court
           approving this Agreement, a fully allowed administrative claim in the amount
           of $41,150.67, representing pre-conversion property tax advances.  This
           Administrative Claim is without prejudice to an additional or increased
           administrative claim for future property taxes and/or other appropriate
           administrative expenses paid by or for BoNYM in connection with the
           Camarillo Property, whether before or after application of the Disputed Funds
           as provided immediately below.

   c.      Trustee shall turn over $60,652.55 of the Disputed Funds to BoNYM , which
           BoNYM shall apply first to its administrative claim, with the rest applied to
           its secured claim.  BoNYM shall release any claim of legal or equitable title
           to the remainder of the Disputed Funds, but said release shall not extend to
           any right to distribution of the Disputed Funds as Estate property under 11
           U.S.C. § 726.

   d.      Trustee shall market and sell the Camarillo Property in a section 363 sale, free
           and clear of liens, for the best and highest commercially reasonable offer.
           BoNYM shall consent to the sale in the event that the sale price is not
           sufficient to fully satisfy BoNYM's secured claim.  In the event that the sale
           price, after payment of costs and liens, is insufficient to net the Trustee
           $75,000.00, BoNYM will agree to a carve-out of its secured claim in an
           amount sufficient to provide a net recovery of $75,000.00 to the Trustee.
           Trustee may retain a realtor of his choosing, subject only to the consent of
           BoNYM.

   e.      In consideration for the concessions made by BoNYM in this Agreement,
           Trustee will assign to BoNYM all claims, actions, causes of action, offsets or
           liabilities, whether known or unknown, suspected or unsuspected, contingent
           or matured, held by the Estate against BoNYM (both in it is individual and
           representative capacity), Nationstar, and each parent, subsidiary, affiliate,
           predecessor, successor, officer, director, insurer, employee, agent, nominee,
           representative, and attorney of each, along with any claims whatsoever,
           against any individual or entity, arising out of or relating to the BoNYM POC,
           the loan out of which the BoNYM POC arises, the Camarillo Property, the
           First BoNYM Adversary Proceeding and the Second BoNYM Adversary
           Proceeding (the "BoNYM Claims").  Trustee will seek, in the motion for

**Exhibit 1_005**

approval of this Agreement, a determination by the Bankruptcy Court that this sale via assignment of the BoNYM Claims was made in good faith as defined by 11 U.S.C. § 363(m).  To the extent any of the BoNYM Claims cannot legally be assigned, Trustee releases those BoNYM Claims such that they are extinguished with no further recourse.  It is the intent of the Parties that the assignment and release of the BoNYM Claims in this paragraph be construed as broadly as possible such that all disputes arising out of the BoNYM POC or the underlying loan are fully resolved and that the BoNYM Claims may not later be raised by Debtor or any successor in interest of Debtor.

f.    Trustee will dismiss the Second BoNYM Adversary Proceeding, with prejudice.  BoNYM shall not be entitled to, upon entry of dismissal, fees and costs except as already provided for in the amended BoNYM POC.

6.    <u>Treatment of Wells Fargo</u>

a.    Wells Fargo shall have a fully allowed unsecured claim in the amount of $450,000.00.  Wells Fargo will amend the Wells Fargo POC reflecting these terms within 14 days of the latter of: (i) full execution of this Agreement; and (ii) entry of an order by the Bankruptcy Court approving the terms of this Agreement.

b.    In consideration for the concessions made by Wells Fargo in this Agreement, Trustee will assign to Wells Fargo all claims, actions, causes of action, offsets or liabilities, whether known or unknown, suspected or unsuspected, contingent or matured, held by the Estate against Wells Fargo (both in it is individual and representative capacity), Nationstar, and each parent, subsidiary, affiliate, predecessor, successor, officer, director, insurer, employee, agent, nominee, representative, and attorney of each, along with any claims whatsoever, against any individual or entity, arising out of or relating to the Wells Fargo POC, the loan out of which the Wells Fargo POC arises, the Henderson Property, and the Wells Fargo Adversary Proceeding (the "Wells Fargo Claims").  Trustee will seek, in the motion for approval of this Agreement, a determination by the Bankruptcy Court that this sale via assignment of the Wells Fargo Claims was made in good faith as defined by 11 U.S.C. § 363(m).  To the extent any of the Wells Fargo cannot legally be assigned, Trustee releases those Wells Fargo such that they are extinguished with no further recourse.  It is the intent of the Parties that the assignment and release of the Wells Fargo Claims in this paragraph be construed as broadly as possible such that all disputes arising out of the Wells Fargo POC or the underlying loan are fully resolved and that, upon revestment of the Estate, the Wells Fargo Claims may not later be raised by Debtor or any successor in interest of Debtor.

c.    With respect to the proceeds from the sale of the Henderson Property that Debtor turned over to Trustee, Wells Fargo does not assert any interest (other than as a general unsecured creditor) against those turned over funds.

**Exhibit 1_006**

7.    <u>Waiver of Section 1542.</u>

It is the intent of Trustee that the assignment and/or release of claims included in this Agreement includes all claims of any type, contingent or disputed, known or unknown, such that Trustee may not bring any action of any type against the other Party for any acts or omissions that have occurred up to the Effective Date.

The Parties acknowledge and agree that they have been informed of the provisions of Section 1542 of the Civil Code of the State of California, and do hereby expressly waive and relinquish all rights and benefits that they have or may have had under said section, arising out of or relating to any assignment or release of claim, or transaction with the Parties up until, and including the date of this Agreement, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

8.    <u>Authority</u>.

The signatories to this Agreement warrant and represent that they have the right, power, and authority to bind the Parties they represent.

9.    <u>No Representations</u>

Each party hereto acknowledges that they have relied wholly upon their own judgment, belief, and knowledge of the existence, nature and extent of each claim, demand or cause of action against them or that they may have against the other parties hereto which is hereby released and that they have not been influenced to any extent in entering into this Agreement by any representations or statements regarding any such claim, demand or cause of action made by the other Parties or any attorney not their own.

10.    <u>No Assignment</u>.

Trustee represents that Trustee has not, and will not in the future assign, transfer or otherwise convey to any person or entity not a party to this Agreement, in any manner or by any means, all or part of their claims or their rights or any other matter assigned and/or released by this Agreement.

11.    <u>Binding Effect</u>.

This Agreement shall be binding upon, and shall inure to the benefit of, the undersigned Parties and their respective predecessors, successors, assigns, heirs, executors, administrators, trustees, attorneys, agents, members and representatives. To the fullest extent allowed by law, this Agreement shall be binding on Debtor and Debtors' successors in interest.

12.    <u>Construction</u>.

**Exhibit 1_007**

This Agreement shall not be construed against the Party preparing it, but shall be construed as if all Parties jointly prepared this Agreement and any uncertainty and ambiguity shall not be interpreted against any one Party.

13.     Tax Consequences.
Each Party is solely responsible for the payment of their or its own taxes, and the tax consequences relating in any way to this Agreement.

14.     Governing Law.
This Agreement shall be deemed executed in the state of California and all matters pertaining to the validity, construction, interpretation and effect of this Agreement shall be governed by the laws of the state of California.

15.     Modification of Agreement.
This Agreement shall not be modified by any Party by oral representation made before or after the execution of this Agreement.  All modifications must be in writing and signed by the Parties affected by such modifications.

16.     Further Assurances.
The Parties covenant and agree to execute any and all documents that may be necessary to implement the terms of this Agreement.

17.     Severability.
In the event that any portion of this Agreement is held to be void, voidable or unenforceable, the remaining portions shall remain in full force and effect.

18.     Counterparts.
This Agreement may be signed in counterparts.  Signatures accurately duplicated from an original signature to this Agreement by any reliable mechanical business machine including, but not limited to, facsimile machines, copy machines, and computer scanners may be treated by all Parties as if they were original signatures for the Agreement.

19.     Advice of Counsel.
The Parties to this Agreement acknowledge they have consulted with and received the advice of an attorney of their choice, and they execute this Agreement relying upon the advice of counsel and their own, independent investigation of the facts and analysis of the terms of this Agreement.

20.     Prevailing Party
If any action in law or equity is brought to enforce or interpret the provisions of this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees, costs, and expenses from the opposing party(ies).  To the fullest extent allowed by law, this provision shall be binding on Debtor and Debtors' successors in interest.

**\*\*\* SIGNATURES ON NEXT PAGE \*\*\***

**Exhibit 1_008**

DATE: _____          **David Seror, Chapter 7 Trustee**

                                   By_____
                                          David Seror


DATE: _____          **Nationstar Mortgage LLC**

                                   By_____
                                   Name: _____
                                   Title: _____


DATE: _____          **The Bank Of New York Mellon F/K/A The Bank
                                   Of New York Successor Trustee To JPMorgan
                                   Chase Bank, N.A., As Trustee For The
                                   Structured Asset Mortgage Investments Ii Trust,
                                   Mortgage Pass-Through Certificates, Series
                                   2006-AR6**

                                   By_____
                                   Name: _____
                                   Title: _____


DATE: _____          **Wells Fargo Bank, N.A. As Trustee For
                                   Structured Adjustable Rate Mortgage Loan
                                   Trust Mortgage Pass-Through Certificates,
                                   Series 2005-17**

                                   By_____
                                   Name: _____
                                   Title: _____

**Exhibit 1_009**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA  91367**.

A true and correct copy of the foregoing document entitled: **CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL OF COMPROMISE WITH CERTAIN PREPETITION LENDERS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AND SECTION 363(m) OF THE BANKRUPTCY CODE; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID SEROR IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **February 21, 2020**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒   Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:  On **February 21, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Debtor</u>
Allana Baroni
3339 Via Verde Court
Calabasas, CA  91302

☐   Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **February 21, 2020,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**BY PERSONAL DELIVERY**

Honorable Martin R. Barash
United States Bankruptcy Court
Central District of California
21041 Burbank Blvd., Bin on First Floor
Woodland Hills, CA 91367

☐   Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 21, 2020 | MELA ZEPEDA | /s/ Mela Zepeda |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                     **F 9013-3.1.PROOF.SERVICE**

## VIA NOTICE OF ELECTRONIC FILING (NEF)

- Richard L Antognini    , rlalawyer@yahoo.com
- Richard L Antognini    rlalawyer@yahoo.com, rlalawyer@yahoo.com
- Jessica L Bagdanov    jbagdanov@bg.law, ecf@bg.law
- Justin D Balser    justin.balser@akerman.com, toni.domres@akerman.com;den-cf@akerman.com;parisa.jassim@akerman.com;preston.ascherin@akerman.com;amanda.herrera@akerman.com;suzanne.jimenez@akerman.com
- Adam N Barasch    anb@severson.com, cas@severson.com;nye@severson.com
- Adam N Barasch    anb@severson.com, cas@severson.com;nye@severson.com
- Eric Bensamochan    eric@eblawfirm.us, G63723@notify.cincompass.com
- Justin C Bentley    jbentley@lkfirm.com, mslattery@lkfirm.com,mabner@lkfirm.com,caguilar@lkfirm.com
- Linda M Blank    linda@lmblank.com, lindablank.lb@gmail.com
- Theron S Covey    tcovey@rasflaw.com
- Michael Daniels    BkECFnotifications@nationstarmail.com
- Louis J Esbin    Louis@Esbinlaw.com
- Richard W Esterkin    richard.esterkin@morganlewis.com
- Oscar Estrada    oestrada@ttc.lacounty.gov
- Christopher R Fredrich    cfredrich@stroock.com, lacalendar@stroock.com
- Steven T Gubner    sgubner@bg.law, ecf@bg.law
- M. Jonathan Hayes    jhayes@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com
- Gregory K Jones    GJones@dykema.com, CAguilar@dykema.com;DocketLA@dykema.com
- Kelly M Kaufmann    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- Bernard J Kornberg    bjk@severson.com, elw@severson.com
- Andrew Kussmaul    Andrew.Kussmaul@Bonialpc.com
- Lewis R Landau    Lew@Landaunet.com
- Jeannette Marsala    jmarsala@marsalalawfirm.com, jmarsala@marsalalawfirm.com
- Thomas E McCurnin    tmccurnin@bkolaw.com, aduran@bkolaw.com;kescano@bkolaw.com
- John Rafferty    john.rafferty@bonialpc.com
- Robert Reganyan    reganyanlawfirm@gmail.com
- Robert Reganyan    reganyanlawfirm@gmail.com
- Matthew D. Resnik    matt@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com
- J. Alexandra Rhim    arhim@hrhlaw.com
- Cassandra J Richey    cdcaecf@bdfgroup.com
- Michael S Riley    mriley8@aol.com, 10986aa@gmail.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Stefanie A Schiff    stefanie.schiff@akerman.com, preston.ascherin@akerman.com;Melissa.cizmorris@akerman.com;Suzanne.jimenez@akerman.com
- Susan K Seflin    sseflin@bg.law
- David Seror (TR)    aquijano@bg.law, C133@ecfcbis.com
- Mark M Sharf    msharf00@gmail.com, 2180473420@filings.docketbird.com;mark_091@ecf.courtdrive.com
- James K Snyder    ksnyder@dykema.com, cacossano@dykema.com
- Lukas Sosnicki    lsosnicki@dykema.com, edraper@dykema.com;lspencer@dykema.com;docketla@dykema.com
- Bill Taylor    ecfnotices@4stechnologies.com
- Edward A Treder    cdcaecf@bdfFragroup.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Kristin A Zilberstein    bknotifications@ghidottiberger.com;gbadmin@ecf.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**