1    STEVEN T. GUBNER – Bar No. 156593
     SUSAN K. SEFLIN – Bar No. 213865
2    JESSICA L. BAGDANOV – Bar No. 281020
     BRUTZKUS GUBNER
3    21650 Oxnard Street, Suite 500
     Woodland Hills, CA 91367
4    Telephone:  (818) 827-9000
     Facsimile:   (818) 827-9099
5    Email:       sgubner@bg.law
                  sseflin@bg.law
6                 jbagdanov@bg.law

7    Attorneys for David Seror, Chapter 7 Trustee

8                        UNITED STATES BANKRUPTCY COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10                       SAN FERNANDO VALLEY DIVISION

11   In re                                  Case No. 1:12-bk-10986-MB

12   ALLANA BARONI,                         Chapter 7

13              Debtor.                     **TRUSTEE'S OPPOSITION TO:**

14                                          **MOTION OF DEBTOR ALLANA
                                            BARONI, MOVING THE BANKRUPTCY
15                                          COURT FOR AN ORDER REMOVING
                                            CHAPTER 7 TRUSTEE DAVID SEROR
16                                          FOR CAUSE, PURSUANT TO 11 U.S.C. §
                                            324(b); AND MOVING COURT TO MAKE
17                                          CRIMINAL REFERRALS OF WELLS
                                            FARGO BANK, OF BANK'S ATTORNEY
18                                          BERNARD KORNBERG, AND OF
                                            SEROR, AS SPECIFIED IN THE
19                                          ATTACHED NOTICE OF MOTION AND
                                            MOTION;**

20                                          **DECLARATION OF DAVID SEROR IN
                                            SUPPORT THEREOF**
21

22                                          *Motion to Strike Filed Concurrently Herewith*

23                                          Hearing:

24                                          Date:  December 8, 2021
                                            Time: 3:00 p.m.
25                                          Place: Courtroom 303 Via ZoomGov

26

27   ─────────────────────────────

28

2734433

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .............................................................................................1

II.    THE MOTION SHOULD BE DENIED OUTRIGHT ......................................2

    A.    Debtor's Various Complaints about the Trustee are Lacking in Factual and
Legal Support.............................................................................................3

    B.    The Debtor and Her Counsel Should be Sanctioned for Wrongly Accusing the
Trustee, Wells Fargo and its Counsel of Bankruptcy Crimes................................11

III.    CONCLUSION................................................................................................13

DECLARATION OF DAVID SEROR .......................................................................14

1

<strong><u>TABLE OF AUTHORITIES</u></strong>

<u>Page</u>

2

3

<strong><u>CASES</u></strong>

4

*Chambers v. NASCO, Inc.,*
    501 U.S. 32 (1991).............................................................................................12

5

*In re De Jesus Gomez,*
    592 B.R. 698 (9th Cir. BAP 2018)....................................................................12

6

7

*In re DeVille,*
    280 B.R. 483 (9th Cir. BAP 2002)....................................................................12

8

<strong><u>STATUTES</u></strong>

9

10

11 U.S.C.

    Section 721...........................................................................................................6

11

12

<strong><u>RULES</u></strong>

13

Local Bankruptcy Rule

14

    2070-1(a)..............................................................................................................7

15

    2070-1(b)..............................................................................................................7

16

17

18

19

20

21

22

23

24

25

26

27

28

2734433

1    David Seror, Chapter 7 Trustee (the "Trustee") for the bankruptcy estate of Allana Baroni

2  (the "Debtor"), hereby opposes (the "Opposition") the *Motion of Debtor Allana Baroni, Moving the*

3  *Bankruptcy Court for an Order Removing Chapter 7 Trustee David Seror for Cause, Pursuant to 11*

4  *U.S.C. § 324(b); and Moving Court to Make Criminal Referrals of Wells Fargo Bank, of Bank's*

5  *Attorney Bernard Kornberg, and of Seror, as Specified in the Attached Notice of Motion and Motion*

6  [Doc. #1378] (the "Motion"), filed by the Debtor Allana Baroni. In support of his Opposition, the

7  Trustee respectfully represents as follows:

8  **I.    INTRODUCTION**

9    The instant Motion must be viewed in context. For over two years—since conversion of this

10  case because of the Debtor's failure to abide by the terms of her confirmed chapter 11 plan—the

11  Debtor has aggressively attempted to interfere with the Trustee's administration of this estate and

12  impugn the Trustee by accusing him repeatedly with a laundry list of ills, all of which are repeated in

13  this Motion despite this Court previously having dispensed with all of them (as has the Bankruptcy

14  Appellate Panel and District Court as to certain issues). This Court has reviewed each accusation

15  before, and found them wanting. This Motion is nothing more than the Debtor's next attempt to

16  collaterally attack prior rulings of this Court and to further interfere with the administration of this

17  estate, and the Court must put an end to it. The Motion must be denied, and the Debtor and her new

18  counsel should be admonished for this continued harassing conduct – which conduct accomplishes

19  nothing more than running up unnecessary fees of this estate.

20    The only arguably "new" aspect to the Debtor's Motion (*i.e.*, an allegation that this Court has

21  not yet dispensed with in its rulings after review of the evidence submitted) is that the Trustee has

22  allegedly committed bankruptcy <u>crimes</u> for various wrongs, including relying on an alleged

23  fraudulent proof of claim submitted by Wells Fargo in reaching the settlement agreement with

24  multiple of the Debtor's lenders on the rental properties (*i.e.*, the "Rental Lender Settlement

25  Agreement"). Debtor's counsel even testifies under penalty of perjury that the Trustee has

26  committed bankruptcy crimes. Indeed, these are serious allegations leveled against the Trustee by

27  not only the Debtor, but a fellow member of the California State Bar.  Their theory essentially asks

28  this Court to find that the Trustee and Wells Fargo conspired and succeeded in pulling the wool over

1   the Court's eye's (and the BAP's), even though the Debtor has made these complaints about the

2   Wells Fargo proof of claim numerous times, in multiple courts with no success. The unsubstantiated

3   allegations made in the Motion are absurd and in no way tethered to reality.

4          The Motion is replete with misrepresentations, inaccuracies, misstatements of law and

5   fantastical conspiracy theories.  But for the Debtor's intentional interference with the Trustee's

6   administration of this estate, this chapter 7 case could have been administered and closed within a

7   year of conversion.  If the Debtor accepted that her failure to comply with the terms of her chapter

8   11 plan resulted in the conversion of her case to chapter 7 and was willing to work with the Trustee,

9   then this case likely could and would have been administered with a surplus to the Debtor and/or at

10  least with her being able to retain her home.  Instead, she has unnecessarily opposed, objected to,

11  sought inappropriate relief and filed meritless appeals for years – resulting in increased costs to this

12  estate and increasing claims against this estate since all secured creditors in this case are entitled to

13  at least an unsecured claim and in certain circumstances a secured claim against this estate for

14  attorneys' fees related to this unnecessary litigation.

15         Until the Trustee requested that the Debtor be required to pay the mortgage on her residence

16  from the District Court, the Debtor failed to pay the $7,562.09 mortgage on her residence from July

17  2019 until the District Court's order earlier this year.  I.e., after her case was converted to chapter 7,

18  she lived rent free in her residence for almost two years.  The Debtor has learned how to "game" the

19  system and instead of accepting responsibility, paying her creditors and moving on, the Debtor has

20  and continues to litigate every step of the way – and her allegations are becoming more and more

21  outlandish.  Her actions and behavior should not be countenanced by this Court.

22         Although the Trustee believes that the meritless and defamatory accusations in the Motion

23  are absurd on their face, he has done his best to (again) respond to such allegations, below. In short,

24  there is no cause to remove the Trustee from this case or any case, and the Motion must be denied.

25  **II.      THE MOTION SHOULD BE DENIED OUTRIGHT**

26         With regard to the various complaints raised by the Debtor, the Trustee responds to each

27  below.  There is no basis in fact or law for the Debtor to have brought this Motion, and indeed it

28  should be denied.

2734433

A.    **Debtor's Various Complaints about the Trustee are Lacking in Factual and Legal Support**

As set forth below, each of the complaints made by the Debtor regarding various alleged wrongdoing by the Trustee are simply false, and are premised on either ignorance or reckless disregard of the law and the facts.

1.    ***Complaint that Counsel for the Trustee made an "illegal" ex parte appearance before the Court and "lied" to the Court.***  On February 6, 2020, Jessica Bagdanov, a well-respected partner at the law firm of Brutzkus Gubner, bankruptcy counsel to the Trustee, was in Court for another matter when she realized that the Debtor was recording her.  First, the Debtor is not permitted to video record on the third floor where the Bankruptcy Courts are located absent written permission of an authorized official.  Any parties accessing the third floor of the Federal Building where the Bankruptcy Courts are located has to provide identification and pass through security.  The third floor is not a "public" place and does not fall under any exception to the rules and regulations governing conduct on federal property. Second, upon recommendation by the security guard, Ms. Bagdanov advised the Court of the Debtor's conduct, and this Court issued its *Notice of Ex Parte Communication and Order Setting Deadline for Any Response Thereto* [Doc. #1118] (the "Ex Parte Order") pursuant to which the Court disclosed what happened in detail and ordered that "Any party that wants to address the Court in response to the above-referenced statements of Jessica Bagdanov may do so by filing a written statement in response thereto, on the docket of the above-referenced chapter 7 case, no later than February 28, 2020." Ex Pate Order ¶1.  The Debtor filed a declaration in response thereto [Doc. #1127] and the Trustee filed a copy of the incident report [Doc. #1126] which was taken by the United States Marshals Service and which is consistent with the Ex Parte Order. No further action was taken by this Court.

2.    Subsequently, the Debtor filed complaints against Ms. Bagdanov and Mr. Seror with the State Bar of California, which complaints Ms. Bagdanov and Mr. Seror responded to and which complaints were resolved in Ms. Bagdanov's and Mr. Seror's favor.  Specifically, the State Bar concluded that, after review of the Debtor's allegations of professional misconduct, the matters did not warrant any further action, and the matters were closed. *See* Declaration of David Seror ("Seror

Decl."). Apparently dissatisfied that her strategy to harm Ms. Bagdanov's and Mr. Seror's livelihood and careers by reporting them to the State Bar failed, the Debtor has now brought this resolved matter to this Court. Ms. Bagdanov was rightly upset at someone illegally video recording her. Ms. Bagdanov did not lie. The Debtor has been incredibly hostile to the Trustee and his agents repeatedly through the years. The Debtor has no idea whether or not Ms. Bagdanov felt fear at the Debtor's illegal recording of her. This issue is a red herring as it has been investigated by the State Bar of California and did not result in any violations.

3. ***Ms. Seflin's Email to Mr. Baroni dated February 5, 2020 is true and includes no false statements.*** Contrary to the Debtor's misrepresentations in the Motion, the Trustee notified counsel for the Debtor in writing that he intended to list the Carmel Property for sale and that the broker that he intended on employing had been to the Carmel Property. Also, in the Declaration of April Hess attached to the Motion, Ms. Hess represents that the Trustee informed her on January 8, 2020 that he had decided to list the Carmel Property for sale and to list it with Heidi Robinson. Motion, ¶ 7 of page 46 of 271. Despite the fact that the Debtor's counsel was informed of the upcoming sale and of the Trustee's pending employment of a real estate broker and that April Hess (the then-tenant) had actual knowledge of who Ms. Robinson was, the Debtor alleges in the Motion that Mr. Baroni had no reason to know that the Trustee retained a real estate broker (which is nonsensical at best). As can be seen by Mr. Baroni's email to Ms. Robinson on February 5, 2020 (Exhibit G to Baroni Decl.), Mr. Baroni wrongly asserted that he had control over the Carmel Property despite the fact that the Court already found that the Carmel Property was property of the estate over which the Trustee had sole dominion and control and over which only the Trustee could operate. *See, Order Granting Motion for Order Authorizing Trustee to Operate Real Property Effective September 9, 2019* [Doc. #1110] ("The Trustee is authorized to operate the estate's real property located at 3435 Rio Road, Carmel, California …"), which was entered on December 9, 2019; and *Interim Order Directing Turnover of Property of the Estate* [Doc. #1057] entered on August 30, 2019 ("[U]pon entry of this Order, the Debtor is immediately directed to turn over to the Trustee the following property as it constitutes property of the bankruptcy estate: (1) That certain real property located at 3435 Rio Road, Carmel, California 92321 …"). Therefore, Ms. Seflin's email to Mr. Baroni dated February 5,

2734433

2020 is correct and it does not include any false statements. The Trustee can only assume that the Debtor's counsel who filed the Motion failed to read this Court's orders as it is explicitly clear that the Trustee had the sole authority to control and operate the Property. It is the Debtor's counsel who should be sanctioned for making such a blatant misrepresentation to this Court.

4.  ***The Trustee did not make false statements to this Court.*** The Debtor lists five alleged false statements contained in declarations filed by the Trustee in Section III.A.2 of the Motion.

a.  The first alleged false allegation referenced in this section is an email from Ms. Seflin to the Debtor's counsel pursuant to which she set forth that the sale of the Henderson Property was a default under the plan (including case law cites which also involve a confirmed chapter 11 plan and which support this statement). Mr. Seror did not make this statement to the Court – Ms. Seflin made this representation to the Debtor's counsel and included local bankruptcy rule cites and multiple case cites. This is not a false statement.

b.  The Debtor next asserts that the Trustee's statement that "to the best of the Trustee's knowledge, no Secured Creditor has yet received the treatment that the Plan provided for it" is false – when it is in fact a true statement. In this Court's *Findings of Fact and Conclusions of Law Regarding Order Denying Debtor's Motion to Dismiss Chapter 7 Case* [Doc. #1144] (the "Motion to Dismiss FFCL"), this Court specifically found that "With respect to the Debtor's arguments that all creditors required to be paid under the Plan have been paid under the Plan, the Court did not find the Debtor's evidence credible, specifically the declarations of the Debtor filed in support of the Motion to Dismiss [Doc. #989] and the *Declaration of Allana Baroni Re Supplement to Amended Rule 1019 Report* [Doc. #1042], as well as the statements and arguments made in the moving papers themselves." The Court also found that, "Additionally, BONYM provided evidence in support of its motion to convert the case to chapter 7, that its claim became due and payable upon denial of certiorari from the U.S. Supreme Court on October 9, 2018, yet the Debtor failed to make any payments as required under the Plan. [Doc. 949-1, ¶ 8]; Hrg. Tr. pp. 44:13-45:6; 68:25-69:5. Thus the Debtor's statement that she made all required Plan payments is not credible." Furthermore, the argument under this allegation with respect to the Debtor's alleged payments to Wells Fargo on the Henderson Property loan are irrelevant as the definition of "Secured Creditors" in connection

5

1  with the Turnover Motion did not include Wells Fargo (since Wells Fargo was not a secured creditor

2  on the conversion date).

3       c.    The third alleged false representation asserts that the Trustee wrongly stated

4  that "The Trustee was not provided any accounting relating to these funds."  The portion cited to in

5  the Motion to Dismiss [Doc. #989] with respect to the alleged accounting provided by the Debtor is

6  ridiculous and is not an accounting of funds paid.  This statement of the Trustee's is not false.

7       d.    The fourth alleged false representation asserts that the Trustee's statement that

8  the Debtor failed to pay Nationstar in connection with the Carmel Property is false – but the

9  statement is correct.  To this date, other than the amount turned over by the Trustee to Nationstar on

10  behalf of its claim, Nationstar has not received any money on behalf of its Class 6 claim.  The

11  Debtor rented the Carmel Property for years and actually received rent on it and yet failed to ever

12  pay Nationstar one dollar for the Class 6 claim.

13       e.    This section of III.A.2 references Section III.D of the Motion regarding the

14  Trustee's reliance on an actual proof of claim filed by Nationstar in this case on behalf of the

15  Henderson Property (even though he did not rely on the claim – he merely settled a dispute related to

16  it).  The Trustee made no false statements related to this.

17       5.    ***The Debtor's complaints relating to the Trustee's ability to take action prior to entry***

18  ***of an order.***  This section makes no sense.  Upon the Trustee's appointment, he immediately made

19  demand for turnover of property of the estate.  The Debtor then alleged that the assets from her

20  chapter 11 case that were dealt with in her plan were not property of the bankruptcy estate.

21  Consequently, the Trustee filed his Turnover Motion [Doc. #991] on June 26, 2019, which was

22  entered on an interim basis on August 30, 2019 [Doc. #1057] (the "Interim Turnover Order").

23  Pursuant to the Interim Turnover Order, the Court found that the Carmel Property was property of

24  the bankruptcy estate and that all rents and proceeds derived therefrom from the conversion date are

25  property of the estate.  Upon entry of the Interim Turnover Order and the finding that the Carmel

26  Property was property of the estate, the Debtor was immediately divested of all authority to operate

27  the Carmel Property.  Section 721 of the Bankruptcy Code states that "the court may authorize the

28  Trustee to operate the business of the debtor for a limited period, if such operation is in the best

6

2734433

1   interest of the estate and consistent with the orderly liquidation of the estate."  Local Bankruptcy

2   Rule 2070-1 (a) specifically provides that "For a period not exceeding 30 days from the date of the

3   trustee's appointment, a trustee may operate the business of a chapter 7 debtor and pay any actual

4   and necessary expenses … <u>without a court order.</u>" (emphasis added).  Local Bankruptcy Rule 2070-1

5   (b) specifically provides "to operate the business beyond such 30-day period, the trustee must, prior

6   to expiration of the 30 day period, file and serve a motion for authorization to operate the debtor's

7   business …".  I.e., the Trustee did exactly what the Local Bankruptcy Rules authorize him to do.  He

8   filed a motion to operate on October 9, 2021 [Doc. #1086], which sought authority to approve his

9   operation of, among other things, the Carmel Property effective as of September 9, 2021.  Therefore,

10  effective as of September 9, 2021, the Trustee was authorized to operate the Carmel Property (and

11  the fact the order was not entered yet is irrelevant), and he was the only party authorized to collect

12  rent pursuant to the Interim Turnover Order entered on August 30, 2019.  The Debtor's

13  misrepresentations in this section are egregious and sanctionable, and illustrate that her new counsel

14  did little to no diligence prior to filing the Motion.  In this section, the Debtor also makes the

15  argument that the Trustee's real estate broker, Heidi Robinson, was not able to act on his behalf prior

16  to entry of a Court order approving her employment.  This is false and illustrates a complete

17  misunderstanding of the rules regarding employment of a professional.  The Trustee is authorized to

18  retain any broker that he determines is appropriate to retain in his business judgment.  To ensure that

19  such professional can be compensated, the Trustee must file an application to employ such

20  professional.  A professional can begin doing work for an estate prior to entry of an order and it is

21  nonsensical for the Debtor to argue otherwise.

22          6.    ***April and Hans Hess and their notice to vacate the Carmel Property.***  On December

23  10, 2019, Hans Hess sent an email to the Trustee informing the Trustee that he and his wife were

24  ending their tenancy and moving out on Sunday, January 19th, 2020 by 5:00 p.m. (or 40 days from

25  the date the email was sent). In that email, Mr. Hess writes "We plan on having the house and

26  carpets cleaned before leaving on the 19th.  If you have an agent who would like to inspect the house

27  with us and to whom we can give the keys on the 19th, just let us know."  See, **Exhibit 4** to the

28  annexed Declaration of David Seror (the "Seror Declaration").  Mr. Hess voluntarily informed the

2734433

1    Trustee of his intent to vacate the Carmel Property.

2        7.    ***Complaint that the Trustee left the Carmel Property vacant for over a year:*** As

3    explained above, the prior tenants of the Carmel Property voluntarily left on January 19, 2020,

4    immediately before the COVID Pandemic. **Exhibit 4.** After that time, in consultation with the real

5    estate broker, and given the condition of the Property (which was very poor), the Trustee decided to

6    market and sell the Carmel Property instead. The sale of the Carmel Property was approved on

7    December 16, 2020, and escrow would have closed by the end of December, 2020 had the Debtor

8    not appealed the Sale Order. Escrow remains pending, and the buyers intend to close escrow once

9    able to do so. Once the District Court stayed the sale of the Carmel Property, the Trustee

10   immediately paid to renovate the Carmel Property so that it could be occupied, including but not

11   limited to mold remediation, replacing the roof, repairing a sewer line required by the city of

12   Carmel, replacing the garage door, etc.

13       8.    ***Complaint about the current lease of the Carmel Property.*** In the Motion, the Debtor

14   alleges that the Trustee has not provided a copy of the current lease to counsel for the Debtor. This

15   is correct. The Trustee did not want to disclose the Captain's personal information or their

16   children's names to the Debtor given her and her husband's history of interfering with the Trustee's

17   operation of the Carmel Property. The Debtor's assertion that she cannot figure out the rent amount

18   for the Carmel Property is ridiculous as it is disclosed on the monthly operating reports filed by the

19   Trustee (which is $5,000 a month).

20       9.    ***Complaint about insurance.*** The Debtor alleges that the Trustee allowed the insurance

21   she had on the Carmel Property and the Camarillo Property to lapse. This is a misrepresentation of

22   the facts. Instead of timely forwarding invoices to the Trustee, the Debtor's counsel would send

23   them the date the premiums were due and this was during COVID when the Trustee was rarely

24   going to the office. Therefore, he would have to have to adjust his schedule and go to the office to

25   immediately write a check. The Trustee requested multiple times that the Debtor timely forward the

26   invoices – which she failed to do. Accordingly, the Trustee obtained separate insurance. Thus, any

27   losses related hereto arise out of the Debtor's failure to timely forward invoices to the Trustee. At

28   no relevant time herein have either the Carmel Property or the Camarillo Property been without

2734433

1    adequate insurance and the Debtor's arguments relating to this issue are inane.

2        10.    ***Complaint that the Trustee allowed a home warranty to lapse on the Carmel***

3    ***Property.***   The Debtor never disclosed the existence of the home warranty to the Trustee and once he

4    learned of it, he made multiple requests for a copy of the warranty. However, the Trustee was not

5    provided with a copy of the warranty until September 14, 2021 (or after it had already lapsed).  The

6    Trustee provided the Debtor with the information set forth in this paragraph in connection with his

7    reply [Doc. #1346] to the Debtor's opposition to the Trustee's third motion to operate but will repeat

8    that same information here (excluding exhibits which are attached to Doc. #1346].  On September

9    14, 2021, the Debtor provided the Trustee with a copy of the warranty for the first time, as well as a

10    copy of an email she apparently received on January 8, 2020 regarding the warranty's expiration set

11    to occur on February 5, 2020. Setting aside the question of whether or not the repairs paid for by the

12    Trustee would even be covered under this warranty, the Debtor never forwarded this email to the

13    Trustee, and the Trustee did not know about the warranty until June 2021, long after it had

14    apparently expired.  The Debtor never informed the Trustee of the warranty's existence and also

15    failed to schedule the warranty on her Schedule B.  There is no way the Trustee could have ensured

16    that a warranty that the Debtor failed to disclose to him would not lapse.  Neither the Trustee nor his

17    counsel are mind readers.  Therefore, all damages alleged by the Debtor in her Motion relating to the

18    fact that the warranty lapsed are damages caused to the estate by the Debtor and her failure to

19    preserve an estate asset, her failure to schedule an estate asset and her failure to inform the Trustee

20    of an estate asset.  The Trustee is again perplexed why the Debtor keeps raising this argument that

21    illustrates how her own actions harmed the estate.  Furthermore, even assuming a warranty was in

22    place, per the terms of the warranty, the coverage was limited as follows: (i) Garage door

23    replacement – Not covered; and (ii) Water heater replacement – Limited to $1,500 per contract term.

24        11.    ***Complaint about the roof repair on the Carmel Property.***   The Trustee replaced the

25    roof on the Carmel Property.  The Trustee has no idea why the Debtor is persisting in insisting she

26    could have replaced the roof for $10,800 when she has not been in control of the Carmel Property

27    Since September of 2019.

28    / / /

2734433

12. ***Complaint that the Trustee pays bank fees in a non-interest bearing account***.  On December 7, 2010, the U.S. Trustee sent an email to all chapter 7 trustees advising that, effective January 1, 2011, major banks would no longer offer interest bearing bankruptcy estate accounts, and thus, the provision in the Trustee Handbook requiring trustees to deposit funds in interest bearing accounts would be waived. A true and correct copy of this email is attached hereto as **Exhibit 1.** The email notes that the change will only be in effect through December 31, 2012.  However, the change never expired, and it is still in effect. Seror Decl.

13.    With respect to the bank fees issue complained of by the Debtor, General Order 11-02 entered July 26, 2011, specifically provides that chapter 7 trustees "are authorized to incur and pay any actual, necessary expense . . . for bank fees and charges directly related to the administration of estate accounts."  A true and correct copy of General Order 11-02 is attached hereto as **Exhibit 2.** Therefore, the Debtor's arguments related to this are incorrect.

14. ***Complaint about allegations made by former tenants.***  The former tenants of the Carmel Property, the Hess family, submitted a complaint to the United States Trustee in April of 2021 (or 7 months ago).  The Trustee spent considerable time and energy attempting to resolve the issue with the Hess' with the assistance of the UST. As noted in connection with the briefing on the Trustee's most recent motion to continue operating the rental properties, the Trustee does not believe this issue is properly before this Court.  Since the Debtor again attaches a copy of the Hess' letter to the UST and includes the Hess Declaration attached to her Motion, the Trustee simply notes for this Court that he has refunded the Hess family for the water bill dispute, and that the Trustee was under no legal obligation to return any amount of the Hess deposit because the Debtor failed to turn over the Hess deposit to the Trustee.  Therefore, the Hess' recourse should have been to file an unsecured claim in this case for their deposit; however, the Trustee used his discretion under the order on the motion to operate to use estate funds to pay the Hess family their deposit.  Had the Trustee not used his business judgment discretion to pay the deposit to the Hess family out of estate funds, then it appears that much of the animosity shown towards the Trustee could have been avoided.  If the Court would like a copy of the Trustee's substantive response to the April 2021 Hess letter, then he will file it with the Court.

2734433

15. ***The District Court did not show "significant disapproval of the Trustee's undervaluation of the Carmel Property."***  The Debtor's argument in Section III.B.1 of the Motion is delusional and misrepresents the District Court findings. The Debtor outrageously attempts to represent that the District Court found that the sale price undervalued the Carmel Property. This is not true.  The District Court states in its *Order Denying Appellant's Emergency Motion to Stay* [District Court Doc. #53 in Case No. CV 20-4338 MWF] (the "Stay Order") what the Debtor "contends" and makes no finding whatsoever that the Trustee's sale of the property was inappropriate or undervalued. In fact, the District Court affirmed the Turnover Order [District Court Doc. #40 in Case No. CV 20-4338 MWF"].  The Debtor conveniently fails to inform this Court that the BAP stated, in its order affirming the sale order of the Carmel Property, that "The District Court's stay order notes that the bankruptcy court had approved a sale of the Carmel property and found that, <u>although Debtor was unlikely to prevail on appeal</u>, Debtor would be irreparably harmed by that sale, <u>despite evidence that the Carmel property was seriously overencumbered and was not Debtor's residence</u>."  BAP Memorandum, No. 20-1278 & 20-1279, pp. 6-7, FN 5, entered July 13, 2021 [Bk. Doc. #1325] (emphasis added).  See also, Stay Order, p. 8 ("<u>the [District Court] is hesitant to conclude that Appellant has a substantial case for relief on the merits</u> … it seems unlikely that the Ninth Circuit will decide that the Local Bankruptcy Rule 3020-1(d) 'abridge[s], enlarge[s], or modif[ies] any substantive right.' … While Appellant has demonstrated that her appeal raises important questions in need of resolution, <u>she ultimately falls short of showing that she has a substantial case for relief on the merits</u>." (emphasis added).

**B.**     **<u>The Debtor and Her Counsel Should be Sanctioned for Wrongly Accusing the Trustee, Wells Fargo and its Counsel of Bankruptcy Crimes</u>**

The arguments contained in Section III.D.1 of the Motion are simply bad faith.  For the Debtor and her new counsel, a fellow member of the California State Bar, to testify under penalty of perjury that the Trustee committed a bankruptcy crime is inappropriate, defamatory per se, and outright sanctionable.

As this Court is well aware, in her plan, the Debtor stripped part of the Wells Fargo lien on the Henderson Property and pursuant to the plan, Wells Fargo had both a secured claim (of

2734433

1   $196,000) and an unsecured claim (of $605,712.98).  See, Debtor's plan [Doc. #376], page 26 of 44,

2   class five treatment.  No matter what Wells Fargo may have written with respect to its secured claim

3   being paid in full (which Wells Fargo has more than adequately addressed in its own opposition to

4   the Motion), Wells Fargo retained its unsecured claim of $605,712.98 under the plan. Furthermore,

5   the Debtor did not consummate her plan and did not obtain a discharge (i.e., all unsecured claims

6   under the plan are still unsecured claims against the estate minus the de minimis amount she

7   allegedly paid on them).  Assuming Wells Fargo did not obtain Court orders approving its attorneys'

8   fees as an unsecured claim, by the Debtor's own admissions in her plan, Wells Fargo still has a

9   $600,000 general unsecured claim.  Additionally, Wells Fargo filed a proof of claim asserting a

10  claim of $839,944.84.

11          As found by both this Court and the BAP in approving the settlement motion and then

12  affirming it, the settlement with the rental lenders was fair and equitable and in the best interests of

13  the estate and entering into the agreement was a proper exercise of the Trustee's business judgment.

14  The Debtor's preposterous argument that the Trustee somehow committed a crime by settling a

15  disputed claim is not only ludicrous but it is also an improper collateral attack of this Court's

16  settlement order [Doc. #1273] and the BAP's order affirming the settlement order [Doc. #1325 and

17  BAP Doc. #25 in Case No. 20-1278 and No. 20-1279].  At a minimum, this Court's approval of the

18  settlement of the Wells Fargo proof of claim is res judicata as to these issues, and the Trustee joins in

19  the arguments of Wells Fargo in this regard.

20          The Trustee respectfully submits that the Debtor and her counsel should be sanctioned for

21  bringing this Motion in the first place.  As to Ms. March in particular, there is simply no basis for

22  any of the statements made in her declaration. See Trustee's evidentiary objections and request to

23  strike, filed concurrently herewith.  The filing of this outrageous Motion has increased

24  administrative expenses even further. *See In re De Jesus Gomez*, 592 B.R. 698, 708 (9th Cir. BAP

25  2018) (affirming sanctions where "this recklessness [of the conduct] appears coupled with

26  frivouslous arguments and actions."); *In re DeVille,* 280 B.R. 483, 495 (9th Cir. BAP 2002) (quoting

27  *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-6 (1991)) ("To impose inherent power sanctions, a court

28  must find that a party acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'"), *aff'd,*

2734433

1  361 F.3d 539 (9th Cir. 2004). Accordingly, the Trustee respectfully requests that the Court issue

2  sanctions in the amount of $12,390, which amount represents the approximate amount of fees

3  incurred by the Trustee in having to respond to this Motion—or at a minimum, requiring the Debtor

4  and Kathleen March to appear and show cause for why such sanctions should not be imposed.

5  **III.      CONCLUSION**

6        The Trustee and his counsel attempted to administer this case as quickly as possible and, but

7  for the Debtor's own actions interfering with the administration of this estate, this case would have

8  likely been closed within one year of conversion.  As set forth above, it is the Debtor's own actions

9  (or lack thereof) that have caused significant damage to this estate.  The Motion was yet another

10  attempt by the Debtor to collaterally attack orders that she does not like and to malign the Trustee

11  and his counsel (and needlessly increase administrative expenses even further).

12        Based on the foregoing, the Trustee respectfully requests that the Court (i) deny the Motion

13  in its entirety, (ii) sanction the Debtor and her counsel for the filing of the frivolous motion under its

14  inherent authority, (iii) admonish the Debtor and her counsel against making future frivolous filings

15  that accomplish nothing more than increasing administrative and secured/unsecured claims against

16  this estate, and (iv) grant to the Trustee such other and further relief as the Court deems just as

17  proper under the circumstances.

18  Dated:  November 24, 2021                    BRUTZKUS GUBNER

19

20

21                                           By: /s/ Jessica L. Bagdanov
                                                 Susan K. Seflin
22                                               Jessica L. Bagdanov
                                                 Attorneys for David Seror, Chapter 7 Trustee

23

24

25

26

27

28

## **DECLARATION OF DAVID SEROR**

I, David Seror, declare:

1.      I am the duly appointed and acting Chapter 7 Trustee for this bankruptcy estate.  I have personal knowledge of the facts contained in this declaration or have gained such knowledge from information I customarily review in connection with my duties as Trustee, and if called as a witness, would and could competently testify to these facts under oath.

2.      I make this declaration in support of my opposition to the Debtor's motion seeking my removal and criminal referral.  All initial capitalized terms used but not defined herein have the same meanings ascribed to them in the Motion and Reply.

3.      I disagree with almost everything written in the Debtor's Motion and have attempted to address all of her complaints in the preceding opposition. I also address certain of them here in further detail.

### *Bank Fees and Interest Bearing Accounts*

4.      On December 7, 2010, I (and other trustees) received an email from the U.S. Trustee advising that, effective January 1, 2011, major banks would no longer offer interest bearing bankruptcy estate accounts, and thus, the provision in the Trustee Handbook requiring trustees to deposit funds in interest bearing accounts would be waived. A true and correct copy of this email is attached hereto as **Exhibit 1.** The email notes that the change will only be in effect through December 31, 2012. However, I am informed and believe that this change never expired, and it is still in effect.

5.      With respect to the bank fees issue complained of by the Debtor, General Order 11-02 entered July 26, 2011, specifically provides that chapter 7 trustees "are authorized to incur and pay any actual, necessary expense . . . for bank fees and charges directly related to the administration of estate accounts." A true and correct copy of General Order 11-02 is attached hereto as **Exhibit 2.**

### *The Carmel Property*

6.      After I began operating the rental properties, including the Carmel Property, I sent a letter to Hans and April Hess on October 3, 2019. A true and correct copy of that letter is attached hereto as **Exhibit 3.**

2734433

7.      On December 10, 2019, I received an email from Hans Hess advising me that he and April Hess intended to end their tenancy at the Carmel Property as of January 19, 2020. A true and correct copy of that email is attached hereto as **Exhibit 4.**

8.      After the tenants informed me of their departure, in consultation with the employed real estate broker, and given the condition of the Property I decided to market and sell the Carmel Property instead of re-letting it.  The sale of the Carmel Property was approved on December 16, 2020, and escrow would have closed by the end of December, 2020 had the Debtor not appealed the Sale Order.  Escrow remains pending, and the buyers intend to close escrow once able to do so.

9.      Once the District Court stayed the sale of the Carmel Property, however, I immediately paid to renovate the Carmel Property so that it could be occupied. I negotiated with the buyers of the Carmel Property to rent the property (thus increasing estate funds) prior to escrow closing.  The renovation needed to render the Carmel Property in habitable condition included mold remediation, replacement of the roof, repair of a sewer line required by the city of Carmel, replacement of the garage door, etc. These repairs were only made necessary by the state of disrepair of this property (which disrepair existed at the time the Trustee was appointed upon conversion of the case). If this property had been sold as authorized by this Court in December 2020, no repairs would have been necessary and there would be no issue. Escrow would have closed on this "as is, where is" sale. However, in light of the Debtor's repetitive appeals and the stay order, it was necessary to repair the property in order to obtain a tenant.

### ***Insurance Issues***

10.      With regard to the Debtor's claims that I allowed insurance to lapse on Carmel and Camarillo Properties, they are simply untrue. The Carmel and Camarillo Properties have adequate insurance. Initially, I requested that the Debtor send me insurance invoices. However I would never receive the invoices until the date premiums were due. During COVID, I was not regularly in the office, but upon receiving these last-minute notices I had to readjust my schedule to go to the office to write a check that same day, which I did. Ultimately, I obtained separate insurance to make sure the properties were fully protected.

2734433

### *The Debtor's Expired Home Warranty*

11.     As I explained in connection with my most recent motion to operate, I never received a copy of the Debtor's home warranty policy until September 14, 2021. I never even knew about the warranty until June of 2021, long after it had apparently expired and after the repairs to the Carmel Property had been completed.

### *Hess Complaint to U.S. Trustee*

12.     With regard to the Hess' complaint made to the U.S. Trustee, I do not believe the issue is properly before the Court. The Debtor is not a party to that matter, and it has not been concluded by the U.S. Trustee. Even though the Debtor included the Hess' letter to the U.S. Trustee in her opposition to my most recent motion to operate (which she opposed and this Court overruled the opposition), the Debtor again attaches a copy of the Hess' letter and includes the Hess Declaration attached to her Motion.

13.     Again, I have refunded the Hess family for the water bill dispute and returned their deposit (even though the Debtor never turned over the Hess deposit to me). If the Court would like a copy of my substantive response to the April 2021 Hess letter, I will file it with the Court.

### *Baroni's Videotaping of My Counsel at Court*

14.     In approximately July 2020, after this Court issued its Ex Parte Order, I was notified that the Debtor reported Ms. Bagdanov and me to the State Bar alleging professional misconduct related to Ms. Bagdanov's appearance before this Court on February 6, 2020. Ms. Bagdanov and I timely responded to the State Bar, and the State Bar notified me that the matters were closed without further action needed in October 2020.

15.     I respectfully request that the Court deny the Debtor's Motion in its entirety. The Debtor offers no "cause" to remove me from this case, or from any other pending case for which I serve as trustee. The Motion is replete with false and unfounded arguments, including by a new attorney to this case who has no personal or institutional knowledge regarding this case. I have done my best to perform my duties as trustee in this case as expeditiously as possible under the circumstances, and will continue to do so until the case is closed.

2734433

1      16.   In responding to the Debtor's Motion, the estate has incurred approximately $12,390

2 in legal fees billed by Brutzkus Gubner. I respectfully request that the Court issue sanctions against

3 the Debtor and Ms. March accordingly, or at a minimum, set an OSC why such sanctions should not

4 be imposed.

5      I declare under penalty of perjury under the laws of the United States of America that the

6 foregoing is true and correct.

7      Executed this 24th day of November, 2021, at Woodland Hills, California.

10                  David Seror

17

EXHIBIT "1"

**From:** Osborne-Raineri, Carol (USTP)
**Sent:** Tuesday, December 7, 2010 8:58 AM
**To:** ktacpa@msn.com; cbarclay@lecg.com; sandra.bendon@att.net; trustee.bui@shbllp.com; tomcasey@tomcaseylaw.com; ljchutrustee@sbcglobal.net; arturo@mclaw.org; Cohen, Amrane <amrane@ch13ac.com>; Nancycurry13@aol.com; cdaff@epiqtrustee.com; rod@rodan13.com; Rdiamond@dgdk.com; kdockery@CH13LA.com; rdurkin@durkinforensic.com; cdye@cadye.com; hehrenberg@sulmeyerlaw.com; dyfarmer@farmerandready.com; hfrazer@aalrr.com; taftrustee@lnbyb.com; dag@dgdk.com; jgolden@wgllp.com; goldman@lbbslaw.com; rossgonzalez@earthlink.net; bob@RLGoodrichlaw.com; david.gottlieb@crowehorwath.com; hbgtrustee@crowehorwath.com; drh@forbankruptcy.com; dhahn@hahnfife.com; lidopacmgt@aol.com; normhanover@yahoo.com; mjoncich@emailcma.org; Jjoseph@dgdk.com; wkosmala@kosmalalaw.com; Krasnoff@lbbslaw.com; hkurtz@hkurtzco.com; Rlaski@WilshireLLC.com; Trustee@Trusteeleslie.com; rmarshack@marshackhays.com; smcbeth@mcbethlegal.com; jmenchaca@menchacacpa.com; emiller@sulmeyerlaw.com; bmoldo@ecjlaw.com; jnambaepiq@earthlink.net; knaylor@Burd-Naylor.com; tneilson@lecg.com; alexander.pilmer@kirkland.com; jpringle@rpmlaw.com; dlr@srblaw.com; LRojas@CH13WLA.COM; jrund@srlawyers.com; ges@dgdk.com; dseror@ecjlaw.com; al.siegel@crowehorwath.com; sspeier@ASRmanagement.com; apstahl@earthlink.net; dcw@dcweillaw.com; rswtrustee@yahoo.com; jackwolfe@sbcglobal.net; emw@lnbrb.com; tjy@lnbrb.com; Zamora3@aol.com; PJZimmzimm@aol.com
**Cc:** Region 16 <Region16@UST.DOJ.GOV>
**Subject:** Interest Bearing Bankruptcy Estate Accounts - Policy Change

We recently received the following information from our Executive Office:

Several major banks that hold bankruptcy estate funds have advised the Executive Office that, effective January 1, 2011, they will no longer offer interest bearing bankruptcy estate accounts.  On that date, such estate accounts will be converted to non-interest bearing checking accounts (or DDA accounts) eligible for unlimited FDIC insurance. The banks making this change will announce it to their customers in December.  This change will be in effect through December 31, 2012, when the provision for unlimited FDIC insurance for non-interest bearing transaction accounts is set to expire.


The *Handbook for Chapter 7 Trustee* provisions requiring trustees to invest estate funds in interest bearing accounts will be temporarily suspended.  This includes the provision that trustees must place estate funds in interest bearing accounts until ready to distribute funds to creditors (Handbook pages 8-37 to 8-38) and the provisions on interest bearing and investment accounts (Handbook pages 9-2 to 9-3).   UST Field Exams, CPA audit reports, and Trustee Interim Report review memos issued during this period should not include findings related to a trustee's failure to invest estate funds during 2011 and 2012.

Carol O. Raineri, Regional Analyst
U.S. Department of Justice/Office of the U.S. Trustee

725 S. Figueroa St., 26th Floor
Los Angeles, CA 90017
carol.raineri@usdoj.gov
Phone: (213) 894-4201

EXHIBIT "2"

```
                                    ┌─────────────────────────────┐
                                    │           FILED             │
                                    │   ┌─────────────────────┐   │
                                    │   │                     │   │
                                    │   │  JUL 26  2011       │   │
                                    │   │                     │   │
                                    │   └─────────────────────┘   │
                                    │   CLERK U.S. BANKRUPTCY COURT│
                                    │  CENTRAL DISTRICT OF CALIFORNIA│
                                    │       BY DEPUTY CLERK       │
                                    └─────────────────────────────┘
```

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| In re: | ) |
| | ) |
| **ORDER AUTHORIZING TRUSTEES** | )     **GENERAL ORDER 11-02** |
| **TO PAY BANK SERVICE CHARGES** | ) |
| **AND FEES INCURRED BY ESTATES** | ) |
| **ACCOUNTS** | ) |
| | ) |

    The court, having been advised by the United States Trustee for Region 16 that its authorized depositories are no longer willing to waiver fees and service charges incurred by chapter 7 trustees on money of estates on deposit with such institutions, it is

    ORDERED that trustees administering cases under chapter 7 of the Bankruptcy Code in the Central District of California are authorized to incur and pay any actual, necessary expense as contemplated by 11 U.S.C. § 330 for bank fees and charges directly related to the administration of estate accounts; and it is further

    ORDERED that the court shall retain authority to review and approve such expenses during the administration of the case.

    This General Order is effective for all chapter 7 cases pending on or after July 26, 2011, and it shall remain in effect until further order of this court.

DATED: July 26, 2011

                                     PETER H. CARROLL
                                     Chief Judge, United States Bankruptcy Court

22

EXHIBIT "3"

## DAVID SEROR,
## TRUSTEE
**21650 Oxnard Street, Suite 500**
**Woodland Hills, California 91367**
**Telephone (818) 827-9200**
**Facsimile  (818) 936-0624**

October 3, 2019

Hans K. Hess
April Hess
3435 Rio Road
Carmel CA 93923


    **Re:  Baroni, Allana 12-10986MB**


Dear Mr. and Mrs. Hess:

This letter is to advise you that the Chapter 11 Bankruptcy Case of Allana Baroni was recently converted to a Chapter 7 case, and I have been appointed Chapter 7 Trustee.  The property you occupy at the above address pursuant to a month-to-month rental agreement is property of this bankruptcy estate and is subject to my sole administration.

I have your rental payment for September in the amount of $5,000.  It has been explained to me that the monthly rent is $5,150, less $150 per month for gardening expense.

Effective immediately, please send all rent payments, correspondence and any other documents concerning this property to me at the above address.  Please also provide me with a copy of a receipt or other evidence of payments to the gardener which are deducted from the rent payment.

Thank you for your anticipated cooperation and please call with any questions.

Very truly yours,

DAVID SEROR

DS/d

2192269.DOCX

24

EXHIBIT "4"

From: Hans Hess [mailto:hanshess@me.com]
Sent: Tuesday, December 10, 2019 11:44 AM
To: David Seror <dseror@bg.law>
Cc: aprilahess@gmail.com
Subject: Notice

CAUTION: This email originated from an external source.

Dear David,

This email serves as written notice that we will be ending our tenancy and moving out of 3435 Rio Road
on Sunday, January 19th, 2020 by 5pm, 40 (forty) days from today.

We intend to make the final, pro-rated payment of $3,123.28 for 19 days of January on the normal due
date. Please confirm that you agree with my calculation of the prorated amount. (19x$5,000x12/365)

We plan on having the house and carpets cleaned before leaving on the 19th. If you have an agent who
would like to inspect the house with us and to whom we can give the keys on the 19th or after, just let
us know.

Please forward the balance of the $5,000.00 security deposit we made at the time of leasing to:

April Hess
PO BOX 4406
Carmel, CA 93921

Sincerely,
Hans Hess

26

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: **21650 Oxnard Street, Suite 500, Woodland Hills, CA  91367**.

A true and correct copy of the foregoing document entitled: **TRUSTEE'S OPPOSITION TO: MOTION OF DEBTOR ALLANA BARONI, MOVING THE BANKRUPTCY COURT FOR AN ORDER REMOVING CHAPTER 7 TRUSTEE DAVID SEROR FOR CAUSE, PURSUANT TO 11 U.S.C. §324(b); AND MOVING COURT TO MAKE CRIMINAL REFERRALS OF WELLS FARGO BANK, OF BANK'S ATTORNEY BERNARD KORNBERG, AND OF SEROR, AS SPECIFIED IN THE ATTACHED NOTICE OF MOTION AND MOTION; DECLARATION OF DAVID SEROR IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document.  On **November 24, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

 

☒    Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐    Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 24, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA OVERNIGHT DELIVERY**

Honorable Martin R. Barash
United States Bankruptcy Court
21041 Burbank Blvd., Suite 345
Woodland Hills, CA  91367

<u>Debtor</u>
Allana Baroni
3339 Via Verde Court
Calabasas, CA 91302

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| November 24, 2021 | JESSICA STUDLEY | /s/ Jessica Studley |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                  **F 9013-3.1.PROOF.SERVICE**

### VIA NOTICE OF ELECTRONIC FILING (NEF)

- **Richard L Antognini**    rlalawyer@yahoo.com, rlalawyer@yahoo.com
- **Jessica L Bagdanov**    jbagdanov@bg.law, ecf@bg.law
- **Justin D Balser**    parisa.jassim@akerman.com; joseph.yoon@akerman.com; Amanda.herrera@akerman.com; Suzanne.jimenez@akerman.com;joanna.seiner@akerman.com;jenny.barker@akerman.com; den-cf@akerman.com; abigail.dewitt@akerman.com;masterdocketc
- **Adam N Barasch**    anb@severson.com, cas@severson.com;nye@severson.com
- **Adam N Barasch**    anb@severson.com, cas@severson.com;nye@severson.com
- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Justin C Bentley**    justinbentley@yahoo.com, mslattery@lkfirm.com,mabner@lkfirm.com,caguilar@lkfirm.com
- **Linda M Blank**    lindablank@lmblank.com, lindablank.lb@gmail.com
- **Theron S Covey**    theroncovey@hotmail.com, sferry@raslg.com
- **Ryan Coy**    ecf@bg.law, rcoy@bg.law
- **Michael Daniels**    BkECFnotifications@nationstarmail.com
- **Louis J Esbin**    Louis@Esbinlaw.com
- **Richard W Esterkin**    richard.esterkin@morganlewis.com
- **Oscar Estrada**    oestrada@ttc.lacounty.gov
- **Christopher R Fredrich**    cfredrich@stroock.com, lacalendar@stroock.com
- **Daniel K Fujimoto**    wdk@wolffirm.com
- **Steven T Gubner**    sgubner@bg.law, ecf@bg.law
- **M. Jonathan Hayes**    jhayes@rhmfirm.com, roksana@rhmfirm.com; matt@rhmfirm.com; rosario@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;david@rhmfirm.com;sloan@rhmfirm.com;boshra @rhmfirm.com;rosario@rhmfirm.com
- **Gregory K Jones**    gjones@stradlinglaw.com, smjohnson@sycr.com;smjohnson@stradlinglaw.com
- **Jeff Katofsky**    jeff@oremowlz.com, jgroves@propertymanagers.biz
- **Kelly M Kaufmann**    bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com
- **Bernard J Kornberg**    bjk@severson.com, elw@severson.com
- **Andrew Kussmaul**    Andrew.Kussmaul@Bonialpc.com
- **Lewis R Landau**    Lew@Landaunet.com
- **Kathleen P March**    kmarch@bkylawfirm.com, kmarch3@sbcglobal.net
- **Jeannette Marsala**    jmarsala@marsalalawfirm.com, jmarsala@marsalalawfirm.com
- **Thomas E McCurnin**    tmccurnin@bkolaw.com, aduran@bkolaw.com;kescano@bkolaw.com
- **John Rafferty**    john.rafferty@bonialpc.com
- **Robert Reganyan**    reganyanlawfirm@gmail.com
- **Robert Reganyan**    reganyanlawfirm@gmail.com
- **Matthew D. Resnik**    matt@rhmfirm.com, roksana@rhmfirm.com; rosario@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com;david @rhmfirm.com;sloan@rhmfirm.com
- **J. Alexandra Rhim**    arhim@hrhlaw.com
- **Cassandra J Richey**    cdcaecf@bdfgroup.com
- **Michael S Riley**    mriley8@aol.com, 10986aa@gmail.com
- **S Margaux Ross**    margaux.ross@usdoj.gov, Kate.Bunker@UST.DOJ.GOV
- **Stefanie A Schiff**    stefanie.schiff@akerman.com, preston.ascherin@akerman.com;Melissa.cizmorris@akerman.com;Suzanne.jimenez@akerman.com
- **Susan K Seflin**    sseflin@bg.law, ecf@bg.law
- **David Seror (TR)**    aquijano@bg.law, C133@ecfcbis.com;mgalvan@bg.law
- **Mark M Sharf**    msharf00@gmail.com, 2180473420@filings.docketbird.com;mark_091@ecf.courtdrive.com
- **Wayne A Silver**    ws@waynesilverlaw.com, w_silver@sbcglobal.net
- **James K Snyder**    ksnyder@dykema.com, cacossano@dykema.com
- **Lukas Sosnicki**    lsosnicki@thompsoncoburn.com, bgutierrez@thompsoncoburn.com
- **Bill Taylor**    ecfnotices@4stechnologies.com
- **Edward A Treder**    cdcaecf@bdfgroup.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Kristin A Zilberstein**    Kris.Zilberstein@Padgettlawgroup.com, BKecf@padgettlawgroup.com;Kris.Zilberstein@ecf.courtdrive.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                              **F 9013-3.1.PROOF.SERVICE**