FILED & ENTERED

JAN 28 2026

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>ALLANA BARONI,<br><br>        Debtor. | Case No.: 1:12-bk-10986-MB<br><br>Chapter 7<br>(converted from chapter 11)<br><br>**ORDER DENYING RELIEF REQUESTED IN THE OMNIBUS MOTION RELATED TO THE MAIN BANKRUPTCY CASE [CASE DKT. 2101]** |

1

**ORDER DENYING OMNIBUS MOTION**

On November 6, 2025, debtor Allana Baroni (the "Debtor"), her non-debtor spouse James Baroni, her counsel of record, Richard L. Antognini, Esq. ("Antognini") and Anthony Mordente, Esq. ("Mordente" and, collectively, the "Debtor Parties") filed their *Omnibus Motion pursuant to FRBP 9024, FRCP 60(b)(6), and 28 U.S.C. §455 [FRBP 5004] for Relief from the February 10, 2023 Order on David Seror's Motion for a Protective Order and for Monetary Sanctions [Main Case Doc. 1751]; and Relief from the October 23, 2025, Order Granting Defendants' Motion for Monetary Sanctions [Adv. Proc. Doc. 223]; Request for Reassignment; and for a Stay of Enforcement Pending Disposition of this Motion Pursuant to Fed. R. Civ. P. 62(b), Fed. R. Bankr. P. 7062 and 9014(c)* (the "Motion"). Case Dkt. 2101. The Debtor Parties filed their Motion in both the main case and in the adversary proceeding *Baroni et al. v. Seror, et al.,* 2:25-ap-01326-NB, in which the Debtor and James Baroni seek to invalidate nearly every significant order entered in this bankruptcy case since 2019, on the basis that the Court was without jurisdiction to enter such orders (the "Adversary"). As detailed below, following the entry of this judicial officer's recusal order, Judge Neil W. Bason has presided over the Adversary. The Debtor Parties filed their Motion after Judge Bason dismissed the Baronis' complaint without leave to amend in September 2025, and after entry of a sanctions order in the amount of $159,958.67, for which the Debtor Parties are jointly and severally liable. 2:25-ap-01326-NB Dkt. 215, 218, 219, 222, 264. As such, the majority of the relief requested in the Motion relates to the Adversary and has been disposed of by Judge Bason's order denying the Motion. 2:25-ap-01326-NB Dkt. 287. This Order only addresses the Debtor Parties' request for relief in the main case, which seeks:

    (i)    an order disqualifying this judicial officer from presiding over the main case;

    (ii)    an order vacating a sanctions order entered in 2023 against the Debtor, James Baroni and Antognini (the "2023 Sanctions Order") pursuant to either Rule 60(b)(4) or 60(b)(6); and

    (iii)    an order staying enforcement of the 2023 Sanctions Order.

The relief sought in the main case is denied in its entirety for the reasons detailed below.

**ORDER DENYING OMNIBUS MOTION**

# I.

## PROCEDURAL BACKGROUND

The Debtor filed this case in 2012 as a chapter 13 case, and, after a secured lender moved to dismiss the case, voluntarily converted to chapter 11. Case Dkt. 1, 7, 10. The Debtor confirmed her chapter 11 plan (the "Plan") in 2013, and filed five adversary proceedings against various lenders holding claims secured by the Debtor's four real properties. Case Dkt. 412, 413, 414, 415, 423, 517. Following the retirement of Judge Alan M. Ahart, the main case and all related adversary proceedings were reassigned to this judicial officer. Case Dkt. 670. Following multiple material defaults by the Debtor under her Plan, the Court granted a creditor's motion to convert or dismiss, and, on April 29, 2019, converted the case to chapter 7 and ordered the Debtor to turn over various real properties and cash to the chapter 7 bankruptcy estate. Case Dkt. 967, 1148. David Seror was appointed as the chapter 7 trustee (the "Trustee") for this case. Case Dkt. 968. The Debtor appealed from the conversion order and the turnover order, which ultimately were affirmed by both the District Court and the Ninth Circuit. *In re Baroni*, 36 F.4th 958, 970 (9th Cir. 2022) *cert. denied sub nom. Baroni v. Seror*, 143 S.Ct. 424 (2022).

### A. The First Recusal Motion

The Motion is the third motion filed by the Debtor seeking recusal of this judicial officer. On November 30, 2022, the Debtor and Antognini jointly moved for recusal following: (i) the Ninth Circuit's June 8, 2022, decision affirming conversion of the case and the turnover order, (ii) the Court's August 9, 2022, denial of the Debtor's motion to have the Trustee removed and referred for criminal prosecution, and (iii) the September 12, 2022, denial of her motion for a stay of the Trustee's efforts to sell her Calabasas residence and her Camarillo rental property (the "First Recusal Motion"). Case Dkt. 1522, 1547, 1647. The First Recusal Motion was assigned to Judge Maureen A. Tighe. Case Dkt. 1654. Although the Debtor and Antognini offered a variety of complaints, the core argument was their disagreement with conversion of the case to chapter 7. In a detailed *Memorandum of Decision Denying Motion for Judicial Reassignment or Recusal*, Judge

**ORDER DENYING OMNIBUS MOTION**

Tighe denied the First Recusal Motion. Case Dkt. 1730. Neither the Debtor nor Antognini appealed, and that order is now final.

### B.  The 2023 Sanctions Order Against the Debtor, James Baroni and Antognini

On October 18, 2022, the Trustee moved for approval of a settlement he reached with CIT Bank, N.A. ("CIT"), the lender whose claim was secured by a deed of trust on the Calabasas residence of the Debtor and James Baroni. Case Dkt. 1577. Over the following two weeks, the Debtor, James Baroni and Antognini jointly propounded a barrage of discovery (ostensibly related to the CIT settlement) on the Trustee, CIT, current or former officers of CIT, the loan servicer and former tenants of the Debtor's rental property located in Carmel. See Case Dkt. 1601 at 82-136; Case Dkt. 1609 at 5-14; Case Dkt. 1624 at 5-59. The Trustee moved for a protective order and Rule 37 sanctions. Case Dkt. 1601. Following two hearings, and after requiring supplemental briefing on the issue of whether James Baroni or Antognini had standing to oppose the CIT settlement, the Court ultimately determined that the Debtor, James Baroni and Antognini each lacked standing to oppose the settlement and therefore lacked standing to propound discovery in support of such an opposition. Case Dkt. 1697 (supplemental briefing order); Hearing Transcript for January 25, 2023, Case Dkt. 1734 at 27:15-32:19.[1] The Court also determined that the propounded discovery was excessive, inordinate and irrelevant, and granted a protective order as to all of the discovery propounded. *Id*. at 32:19-33:24. The Court entered the 2023 Sanctions Order on February 10, 2023, which sanctioned the Debtor, James Baroni and Antognini $26,325, jointly and severally, and required them to pay the sanctions to the Trustee no later than April 11, 2023. Case Dkt. 1751.[2]

The Debtor, James Baroni and Antognini jointly appealed from the 2023 Sanctions Order. Case Dkt. 1773. When they failed to file their opening brief, the District Court issued an order to show cause why the appeal should not be dismissed. CACD Case No. 2:23-cv-01812-MWF, Dkt.

---

[1] References to transcripts herein refer to the .pdf page number assigned by CM/ECF upon the filing of the document (and electronically stamped at the top thereof). In some cases that page number differs from the original, internal page number shown in the transcript.

[2]  Abstracts of judgment on the 2023 Sanctions Order were issued on June 14, 2023. Case Dkt. 1900, 1901, 1902, 1903, 1904, 1905.

**ORDER DENYING OMNIBUS MOTION**

12. Their response, which admitted their failure to file an opening brief was a litigation tactic, ultimately resulted in the District Court dismissing the appeal as a sanction for bad faith:

> Counsel's declaration does not justify the failure to timely file the Opening Brief without first requesting an extension and utterly fails to provide a good-faith basis for further extending the deadline. The Ninth Circuit has specifically warned that courts must not allow "an unethical attorney to abuse the judicial process by creating a protracted delay without any real threat of penalty" and that "[s]uch a delay strategy could be particularly attractive in bankruptcy proceedings because . . . it would give leverage in settlement proceedings to losers." *In re Fitzsimmons,* 920 F.2d 1468, 1474 (9th Cir. 1990). The declaration filed in response to the OSC in this action illuminates the very concerns expressed *In re Fizsimmons*. Counsel asks the Court to further extend the already-missed deadline to file an Opening Brief so that Appellants do not have to actually do the work involved with this appeal but can instead use the appeal's existence (and promise of voluntary dismissal) as leverage in future settlement discussions concerning unrelated matters and motions. In other words, counsel admits that he has delayed intentionally and in bad faith. The Court continues to be troubled by counsel's conduct in the various proceedings before this Court.
>
> Further, the Court notes that because bankruptcy appeals may only be taken on final orders there is absolutely no reason why this appeal should turn on the outcome of three other motions currently pending before the Bankruptcy Court. Therefore, the reasoning given by counsel is either disingenuous or yet another substantive reason to dismiss this appeal as frivolous.

**ORDER DENYING OMNIBUS MOTION**

* * *

Given the long delay, the unacceptable reason for the delay, and this Court's warning that failure to adequately justify an extension request would result in dismissal, the Court has little trouble concluding that Appellants' and counsel's behavior constitutes bad faith and warrants dismissal.

Further, the Court has considered alternative sanctions by issuing the OSC and allowing Appellants the opportunity to justify an extension. Because the reason Appellants seek an extension would undeniably prejudice the Trustee's future settlement position, providing an extension is clearly not an appropriate alternative in this circumstance. Moreover, this Court has also already imposed monetary sanctions on the same Appellant (James Baroni) and the same counsel in a different appeal. See *In re Allana Baroni et. al.*, CV 23-1818-MWF, Sanctions Order (Docket No. 25). Therefore, dismissal seems to be the only reasonable sanction that can adequately deter Appellants' and their counsel's vexatious litigation tactics stemming from the Baroni Bankruptcy.

Accordingly, this appeal is DISMISSED for failure to prosecute.

CACD Case No. 2:23-cv-01812-MWF, Dkt. 18. Neither the Debtor nor James Baroni nor Antognini appealed from the District Court's dismissal order, and the 2023 Sanctions Order has been a final order since August 20, 2023.

**ORDER DENYING OMNIBUS MOTION**

### C. The Second Recusal Motion

Following conversion of the case to chapter 7, the Debtor, James Baroni, Antognini (or some combination of these three) have appealed from 21 orders entered by this Court.[3] In every instance, the decisions were affirmed or the appeals were dismissed. Having exhausted their appellate remedies, on November 4, 2024, the Debtor and James Baroni – represented by Antognini and Mordente – filed the complaint in the Adversary against the Trustee and his counsel, a creditor and its counsel and several insurance companies (the "Adversary Complaint") alleging the defendants were liable for contempt for violations of the Plan and confirmation order and other various torts. Adv. Proc. 1:24-ap-1059 Dkt. 1.[4] The gravamen of the Adversary Complaint is that virtually all of the orders entered in the case following conversion were entered without subject matter jurisdiction and therefore were void, entitling the Debtor and James Baroni to damages from defendants for their actions in connection with the "void orders." The Adversary Complaint is a collateral attack on all the Court's post-conversion orders, which the Debtor and James Baroni filed only after they failed to prevail on any of their 21 appeals from those orders.

On April 17, 2025, the Debtor and James Baroni moved for this judicial officer to recuse himself from the Adversary (the "Second Recusal Motion").[5] Adv. Proc. 1:24-ap-1059 Dkt. 138.

---

[3] See Case 1:12-bk-10986-MB Dkt. 1029, 1156, 1230, 1291, 1292, 1448, 1529, 1555, 1556, 1779, 1773, 1799, 1814, 1928, 1948, 2001; Adv. Proc. 1:19-ap-01037-MB Dkt. 43; 1:19-ap-01134-MB Dkt. 65; 1:13-ap-01069-MB Dkt. 451; 1:23-ap-01004-MB Dkt. 54, 95.

[4] The Adversary was filed in the San Fernando Valley Division and originally was assigned case number 1:24-ap-01059-MB. Following the entry of the May 1, 2025, recusal order, the Adversary was reassigned to Judge Bason in the Los Angeles Division. Thereafter, following the entry of the July 28, 2025, transfer order, the Adversary was re-numbered as 2:25-ap-01326-NB. 2:25-ap-01326 Dkt. 185, 187.

[5] The Debtor and James Baroni, through Antognini, initially filed this recusal motion on February 24, 2025, while Antognini was suspended from the practice of law by the State Bar of California. Adv. Proc. 1:24-ap-1059 Dkt. 91. Several of the defendants in the Adversary moved to strike the nine pleadings filed in the Adversary by Antognini during his suspension. Adv. Proc. 1:24-ap-1059 Dkt. 91. Because only Antognini, and not Mordente, had signed and filed the nine pleadings, the Court ordered all of the pleadings, including the recusal motion, stricken. Adv. Proc. 1:24-ap-1059 Dkt. 146. Thereafter, Antognini returned to active status with the State Bar of California and on April 17, 2025, filed the Second Recusal Motion. Adv. Proc. 1:24-ap-1059 Dkt. 138.

**ORDER DENYING OMNIBUS MOTION**

The Second Recusal Motion expressly requested that a judge outside of the San Fernando Valley Division rule on the motion. *Id.* at 13-14. On May 1, 2025, this judicial officer granted the Second Recusal Motion as to the Adversary, expressly finding that:

> [B]ecause the adversary seeks to review and invalidate nearly every significant order entered in the last five years in this chapter 7 case on the basis that the Court was without jurisdiction to enter such orders, notwithstanding the undersigned's prior explicit or implicit determinations that jurisdiction existed to do so, the impartiality of the undersigned might reasonably be questioned.

Adv. Proc. 1:24-ap-1059 Dkt. 147 (the "Recusal Order") at 2:7-11. This judicial officer notified the Clerk of the Court about the Recusal Order and about the Debtor and James Baroni's request for reassignment outside of the San Fernando Valley Division. The Clerk's Office randomly reassigned the Adversary to Judge Bason in the Los Angeles Division. *See* May 1, 2025, docket entry ("Judge Neil W. Bason added to adversary only. Terminated Judge Martin R. Barash from adversary case per Order, see docket entry no [147]").

## II.

## LEGAL ANALYSIS

### A. The Court Is Duty-Bound Not to Recuse from the Main Case or the Other Related Adversary Proceedings

#### 1. Legal Standards Applicable to Recusal of Bankruptcy Judges

"Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The Ninth Circuit has interpreted this rule as establishing an objective standard, requiring "recusal 'where a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned.'" *In re Creech*, 119 F.4th 1114, 1121 (9th Cir. 2024) (quoting *United States v. Carey*, 929 F.3d 1092, 1104 (9th Cir. 2019) (citations and quotation marks omitted)). The reasonable person is not someone who is hypersensitive or unduly suspicious,

but rather is a well-informed, thoughtful observer." *United States v. Mikhel*, 889 F.3d 1003, 1027 (9th Cir. 2018). "Judicial impartiality is presumed." *First Interstate Bank of Arizona, N.A. v. Murphy, Weir & Butler*, 210 F.3d 983, 987 (9th Cir. 2000). As such, "factual allegations do not have to be taken as true" and recusal cannot be based "on unsupported, irrational, or highly tenuous speculation." *Nazemi v. Wells Fargo Bank N.A. (In re Nazemi)*, 2025 WL 863216, *6 (B.A.P. 9th Cir. Mar. 19, 2025) (quoting *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1501 (10th Cir. 1994)); *see also Hamid v. Price Waterhouse*, 51 F.3d 1411, 1416 (9th Cir. 1995) ("It is to filter out fantastic suggestions like this [as a basis for recusal] that the word 'reasonable' is part of the recusal test"); *Martin v. Monumental Life Ins. Co.,* 240 F.3d 223, 237 (3d Cir. 2001) (recusal "should be supported by substantial justification, not fanciful illusion").

"[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality recusal motion." *Liteky v. United States*, 510 U.S. 540, 541 (1994); *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1220 (9th Cir. 2014); *In re Goodwin*, 194 B.R. 214, 224 (B.A.P. 9th Cir. 1996). "Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky*, 510 U.S. at 555. "[E]ven if [the judge] erred, that does not constitute bias. A judge may be wrong without being prejudiced." *In re Goodwin*, 194 B.R. at 224. Similarly, clashes between court and counsel are not grounds for recusal based on bias. *U.S. v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006). Nor are expressions of frustration or anger during proceedings, as such comments "might also be reasonably seen as the product of [the judge's] frustration with [a party's] behavior throughout the litigation." *In re Marshall*, 721 F.3d 1032, 1043 (9th Cir. 2013). The Supreme Court has set a high standard for such remarks before recusal is warranted:

> [J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They may do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

**ORDER DENYING OMNIBUS MOTION**

*Liteky*, 510 U.S. at 555.

In the Ninth Circuit, recusal motions must be filed timely and parties cannot utilize such a motion to get a second bite at the apple after losing the case:

> [It] does not necessarily follow that a party having information that raises a possible ground for disqualification can wait until after an unfavorable judgment before bringing the information to the court's attention. . . 'The absence of such a requirement would result in . . . a heightened risk that litigants would use recusal motions for strategic purposes.' *Preston v. United States,* 923 F.2d 731, 733 (9th Cir. 1991). . . In this case . . . Judge Coyle received the case in November of 1988 and ruled for the Winery in June of 1980. Joseph raised the disqualification issue for the first time in his motion for a new trial. This was not timely. To hold otherwise would encourage parties to withhold recusal motions, pending a resolution of their dispute on the merits and then if necessary invoke section 455 in order to get a second bite at the apple.

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992); *see also United States v. Rogers*, 119 F.3d 1377, 1382 (9th Cir. 1997) (untimely when made 18 months after becoming aware of grounds for recusal); *In re Anwiler*, 958 F.2d 925, 930 (9th Cir. 1992) (untimely when made nine months after becoming aware of grounds for recusal of bankruptcy judge); *Sanders v. Wong*, 2009 WL 10692804, *3 (C.D. Cal. Oct. 20, 2009) (untimely when made five months after becoming aware of grounds for recusal).

Finally, a judge has "as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." *Clemens v. U.S. Dist. Court for Cent. Dist. of Cal.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (*per curiam*); *Clark v. Pratt*, 2023 WL 5505817, *2 (C.D. Cal. Jul. 6, 2023) (same); *Hayden v. Western Steel, Inc. (In re Hayden),* 2025 WL 1420905,

**ORDER DENYING OMNIBUS MOTION**

*7 (B.A.P. 9th Cir. May 16, 2025) ("A judge has a duty to sit when there is no legitimate reason to recuse").

### 2. There Is No Legitimate Basis for Recusal

The Debtor Parties offer three reasons why recusal of this judicial officer in the main case is necessary. First, they assert that at the April 9, 2019, hearing on whether the case should be converted to chapter 7, this judicial officer stated: "[W]ith the case converting, you know, those deals, that restructuring goes away." Motion at 6:12, 15:18-19. They contend this amounted to revocation of the order confirming the Debtor's Plan and signaled a lack of impartiality. Second, they allege this Court's 2025 Recusal Order concedes this Court is not impartial in matters involving the Debtor. Finally, they insist that this judicial officer hand-selected Judge Bason to preside over the Adversary and consulted with Judge Bason throughout his consideration of the Adversary. Each of these arguments is without merit.

2019 Conversion Hearing. Both the Debtor and Antognini were present at the 2019 hearing. Their First Recusal Motion, filed in 2022, failed to allege that this comment indicates a lack of impartiality, or to even mention this comment. More importantly, the current Motion filed in 2025 regarding the Court's comments at a hearing *six years earlier* is profoundly untimely, and fails on that ground alone, under *E. & J. Gallo* and its progeny. Moreover, even if the Motion were timely, on its face, the Court's comment does not express any partiality, bias or animus. The Debtor Parties contend it is a legally incorrect statement of law, but that would not be grounds for recusal, only an appeal. *Liteky*, 510 U.S. at 555 ("[J]udicial rulings . . . [a]lmost invariably . . . are proper grounds for appeal, not for recusal"). Here, the Debtor did appeal from the Court's rulings at the April 9, 2019, conversion hearing (and the subsequently entered conversion order) and the Ninth Circuit affirmed the conversion in its entirety. *In re Baroni*, 36 F.4th 958, 970 (9th Cir. 2022) *cert. denied sub nom. Baroni v. Seror*, 143 S.Ct. 424 (2022). The 2019 comments are not a basis for recusal.

The 2022 Recusal Order. The Court's 2022 Recusal Order applies only to the Adversary, not the main case or any of the other related adversary proceedings. The Debtor Parties attempt to characterize the Recusal Order as an admission that this judicial officer cannot be impartial in

**ORDER DENYING OMNIBUS MOTION**

matters involving the Debtor Parties. Motion at 8:26-27, 19:23-24.  That is not the case. The Recusal Order expressly addresses the reasons for recusal:

> [B]ecause the adversary seeks to review and invalidate nearly every significant order entered in the last five years in this chapter 7 case on the basis that the Court was without jurisdiction to enter such orders, notwithstanding the undersigned's prior explicit or implicit determinations that jurisdiction existed to do so, the impartiality of the undersigned might reasonably be questioned.

Adv. Proc. 1:24-ap-1059 Dkt. 147 at 2:7-11.

The recusal in the Adversary had nothing to do with the Debtor, James Baroni or Antognini, but rather the specific nature of the claims asserted by the Debtor and James Baroni in the Adversary Complaint — that this Court lacked subject matter jurisdiction to enter all of the post-conversion orders between 2019 and 2024.  As addressed in the Recusal Order, because the post-conversion orders implicitly, and often explicitly, found that the Court had jurisdiction over each dispute, this judicial officer had already necessarily ruled on the core issues raised in the Adversary Complaint. The Recusal Order was not a determination or admission that the undersigned is unable to preside over the main case or any other proceedings involving the Debtor Parties. Under the circumstances, the undersigned determined in his discretion to recuse himself because (i) he could reasonably be expected to reach the same conclusion on these issues, (ii) the scope of the relief sought to undo approximately five years of judicial decision-making and (iii) he concluded that justice would be better served by having a different judicial officer consider whether granting such relief was legally appropriate.

<u>Reassignment to Judge Bason.</u> The Debtor Parties go to great lengths to describe a scenario in which this judicial officer hand-selected Judge Bason to preside over the Adversary and then hovered over the case, continuously discussing and consulting with Judge Bason throughout. Motion at 7-15. This narrative has no basis in fact. The Court entered the Recusal Order on May 1, 2025, and informed the Clerk's Office that the Debtor Parties believed a judge in a different

**ORDER DENYING OMNIBUS MOTION**

division should be assigned. The Clerk's Office then randomly reassigned the Adversary to a judge in the Los Angeles Division. This judicial officer learned the Adversary had been reassigned to Judge Bason from the Clerk's Office's May 1, 2025, notation on the public docket. Shortly thereafter, in an effort to facilitate a smooth transition, the undersigned spoke with Judge Bason to provide background on the main case (then-pending for over 13 years and comprising over 2,000 docket entries), the nine other adversaries filed in the case, and the latest Adversary, which had now been assigned to Judge Bason. Thereafter, with one exception,[6] the two judges did not speak about the case until after Judge Bason had entered orders dismissing the Adversary and awarding sanctions against the Debtor Parties. At no time did the undersigned direct or advise Judge Bason how he should rule in the Adversary. The Debtor Parties' innuendo and conjecture are insufficient to justify recusal.

Because there are no legitimate reasons for recusal from the main case, or any of the other related adversary proceedings, the Court has a duty not to recuse and therefore must deny the Motion to the extent it seeks such relief. *Clemens*, 428 F.3d at 1179.

**B.     The Debtor Parties' Rule 60(b) Request Is Untimely and Without Merit**

**1.     Rule 60(b)(4) and (b)(6) Standards**

The Motion also seeks relief under Federal Rule of Civil Procedure 60(b), which is made applicable in bankruptcy by Federal Rule of Bankruptcy Procedure 9024. Federal Rule of Civil Procedure 60(b) provides relief where there was (1) mistake, inadvertence, surprise, or excusable

---

[6] Nearly three months after entry of the Recusal Order, on July 28, 2025, Judge Bason entered the *Order Transferring Adversary Proceeding from San Fernando Valley Division to Los Angeles Division* (the "Transfer Order"), apparently after having discovered that orders lodged electronically in the Adversary were not being routed by the Clerk's Office Calendaring Information and Order program ("CIAO") into Judge Bason's order queue. Adv. Proc. 1:24-ap-01059-NB / 2:25-ap-01326-NB Dkt. 185. The Transfer Order references a "consultation among Judge Barash and Judge Bason and the Clerk's Office regarding the need for this order to be issued," which involved Judge Bason asking the undersigned whether he objected to the Clerk's Office changing the case number assigned to the Adversary. The undersigned remembers being advised that the order was needed for administrative reasons and expressing no objection to its entry; this conversation was extremely brief and did not involve any discussion of the merits of the Adversary.

**ORDER DENYING OMNIBUS MOTION**

neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct; (4) a void judgment; (5) a satisfied, released, or discharged judgment; or (6) or any other reason that justifies relief. Fed. R. Civ. P. 60(b). Rule 60(b)(4) governs requests for relief from allegedly void judgments. *Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. __, 2026 WL 135998, *2 (U.S. Jan. 20, 2026). Rule 60(b)(6) "provides only grounds for relief not already covered by the preceding five paragraphs" and can "only be applied in 'extraordinary circumstances.'" *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211, 212 (2025).

Rule 60(b)(4) motions and Rule 60(b)(6) motions must be brought within a "reasonable time." Fed. R. Civ. P. 60(c)(1); *Coney Island Auto Parts Unlimited, Inc.,* 607 U.S. __, 2026 WL 135998, at *2-*4 ("[W]e cannot divine any principle requiring courts to keep their doors perpetually open to allegations of voidness. Giving a party a 'reasonable' time to seek relief from an allegedly void judgment may well be all that due process demands"); *Kemp v. United States*, 596 U.S. 528, 531 (2022) ("Rule 60(b)(6) permits reopening for 'any other reason that justifies relief' so long as the motion is filed 'within a reasonable time.'"). While Rule 60(c) does not define what constitutes a "reasonable time," in the Ninth Circuit, Rule 60(b) motions are untimely if brought after the time to appeal from the challenged order has run:

> Allowing motions to vacate pursuant to Rule 60(b) after a deliberate choice has been made not to appeal, would allow litigants to circumvent the appeals process and would undermine greatly the policies supporting finality of judgments. Litigants unsuccessful at trial could forego available appeals and, should subsequent decisions in other cases render their positions viable, they could move to have adverse judgments vacated. The uncertainty resulting from such a rule would be unacceptable.

*Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982). See also *In re Sattler*, 840 F. App'x 214, 215 (9th Cir. 2021) (citing *Plotkin* but noting "[w]e make an exception when the movant can "establish the existence of extraordinary circumstances which prevented or rendered

**ORDER DENYING OMNIBUS MOTION**

him unable to prosecute an appeal"); *Sandy v. Sunmoon Freight, Inc.*, 714 F. App'x 678, 680 (9th Cir. 2017) ("Litigants are not permitted to use Rule 60(b) to circumvent the appeals process. *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982)"); *Tulumis v. State of Cal.*, 83 F.3d 429 (9th Cir. 1996) ("It is well-settled that Rule 60(b) will not provide relief from conscious, calculated, or deliberate strategy decisions. See *Ackermann v. United States*, 340 U.S. 193, 198 (1950) (Rule 60(b) does not provide relief from 'free, calculated, and deliberate choices'); *Plotkin v. Pacific Telephone & Telegraph Co.*, 688 F.2d 1291, 1293 (9th Cir.1982) (calculated and deliberate choices are not to be relieved under Rule 60(b))").

### 2. The Request to Vacate Is Untimely and an Impermissible Use of Rule 60(b)

The 2023 Sanctions Order was entered on February 10, 2023, more than two and one-half years before the Debtor Parties filed this Motion. Nothing prevented the Debtor, James Baroni and Antognini from appealing from the 2023 Sanctions Order, because they actually filed a timely appeal from that order. They then pursued a deliberate, calculated strategy of neither filing their opening brief nor an extension motion, and did nothing to prosecute their appeal until the District Court issued its OSC. Ultimately, the District Court dismissed their appeal as a sanction for what it deemed bad faith litigation tactics. Rather than appeal the District Court's decision to the Ninth Circuit, they waited two and one-half years and then filed this Motion when it became apparent in hindsight they had made a mistake. Not only is the Motion an untimely request for relief under either Rule 60(b)(4) or 60(b)(6), it is precisely the sort of litigation tactic and misuse of Rule 60(b) which the Ninth Circuit prohibits.

Additionally, even if the Motion were timely, and even if the Debtor, James Baroni and Antognini had not previously appealed from the 2023 Sanctions Order, their only argument for vacating that order is that this judicial officer should have recused himself. As detailed above, their recusal argument is without merit and therefore their request to vacate the 2023 Sanctions Order necessarily fails.

**ORDER DENYING OMNIBUS MOTION**

### C. The Debtor Parties Provide No Authority for a Stay Following the Dismissal of their Appeal

The Debtor Parties request a stay of the 2023 Sanctions Order based on Federal Rule of Civil Procedure 62, but the legal authorities they cite relate to stays pending appeal. *Nken v. Holder*, 556 U.S. 418 (2009) (addressing what standard governs a request for a stay pending appeal); *Hilton v. Braunskill*, 481 U.S. 770 (1987) (addressing whether stay pending appeal standards apply to requests to release a habeas petitioner pending appeal). Here, there is no "pending appeal" from the 2023 Sanctions Order as the Debtor, James Baroni and Antognini already appealed from that order and their appeal was dismissed. The 2023 Sanctions Order has been a final, non-appealable order for more than two and one-half years. They fail to provide any legal authority that would support a stay of a final, non-appealable order. Accordingly, their request must be denied.

### D. Mordente Lacks Standing to Request Any Relief in the Main Case

The Court notes that the Motion includes Mordente as one of the listed movants. Mordente is not a creditor in this bankruptcy case and was not sanctioned by the 2023 Sanctions Order. He has no standing either to move for recusal or to move for relief from the 2023 Sanctions Order.

## III.
## CONCLUSION

Based on its consideration of the Motion and the record in this case, with good cause appearing therefor, and for the reasons set forth above, the Court hereby **DENIES** the Motion to the extent it seeks relief in the main bankruptcy case or in the other related adversaries.

Date: January 28, 2026

Martin R Barash
United States Bankruptcy Judge

**ORDER DENYING OMNIBUS MOTION**